1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**FOR THE WESTERN DISTRICT OF WASHINGTON**

10

| | |
|---|---|
| | Case No. _____ |
| MARK DALY, ELENA NACARINO, SUSAN SYLVESTER, and MICHAEL SONNENSCHEIN, individually and on behalf of all others similarly situated, | **<u>CLASS ACTION</u>** <br> **<u>COMPLAINT</u>** <br> **<u>DEMAND FOR JURY TRIAL</u>** |
| Plaintiffs, | |
| v. | |
| AMAZON.COM, INC., | |
| Defendant. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1      Plaintiffs Mark Daly, Elena Nacarino, Susan Sylvester, and Michael Sonnenschein

2  (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated

3  against Defendant Amazon.com, Inc. ("Amazon" or "Defendant").  Plaintiffs make the following

4  allegations pursuant to the investigation of their counsel and based upon information and belief,

5  except as to allegations specifically pertaining to themselves and their counsel, which are based on

6  personal knowledge.

### INTRODUCTION

7

8      1.     This is a putative class action lawsuit against Defendant for engaging in an illegal

9  "automatic renewal" scheme with respect to its subscription plans for Amazon-branded products

10  and services that are available exclusively to consumers who enroll in Defendant's auto-renewal

11  membership programs (collectively, the "Amazon Subscriptions," enumerated below) through its

12  website at https://www.amazon.com/ (the "Amazon Website") and/or its mobile application(s)

13  and/or set-top device(s) (collectively, the "Amazon Apps") (together with Amazon Website, the

14  "Amazon Platform").  Relevant to Plaintiffs' allegations, when consumers sign up for the Amazon

15  Subscriptions, Defendant actually enrolls consumers in a program that automatically renews the

16  Amazon Subscriptions from month-to-month or year-to-year and results in monthly or annual

17  charges to the consumer's credit card, debit card, or third-party payment account ("Payment

18  Method").   In doing so, Defendant fails to provide the requisite disclosures and authorizations

19  required to be made: to California consumers under California's Automatic Renewal Law (the

20  "California ARL"), Cal. Bus. Prof. Code §§ 17600, *et seq.*, in violation of California's Unfair

21  Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* (among other statutes and

22  common laws); and to Oregon consumers under Oregon's Automatic Renewal Law (the "Oregon

23  ARL"), ORS 646A.295, in violation of Oregon's Unlawful Trade Practices Act ("UTPA"), ORS

24  646.608(1)(ttt), and under Oregon's Free Offer Law ("FOL"), ORS 646.644, in violation of

25  Oregon's Unlawful Trade Practices Act ("UTPA"), ORS 646.608(1)(sss).

26

27

28

CLASS ACTION COMPLAINT                    BURSOR & FISHER, P.A.
CASE NO.                                 888 SEVENTH AVENUE
                                           NEW YORK, NY 10019

2.      Defendant is the world's largest online retailer and a prominent provider of cloud and web-based products and services, including the Amazon Subscriptions.[1]  Defendant is thus considered "one of the most influential economic and cultural forces in the world,"[2] and is one of the world's most valuable brands.[3]  Defendant also owns and operates the Amazon Platform, which is accessible via the Amazon Website or the Amazon Apps.

3.      Through the Amazon Platform, Defendant markets, advertises, and sells to consumers in California, Oregon, and throughout the United States paid memberships to the Amazon Subscriptions, among other things, including without limitation, the following automatic renewal programs: Amazon Prime[4], Amazon Prime Video[5], Amazon Prime Video Channels[6],

---

[1] *See* ZD Net, *Amazon AWS: The complete business guide to the world's leading cloud service provider* (Mar. 29, 2021), https://www.zdnet.com/article/amazon-aws-everything-you-should-know-about-the-largest-cloud-provider/ ("Amazon is the company most associated with 'the cloud,' in the minds of the general public.  It also happens to be the world's largest e-retailer.  Today, Amazon Web Services (AWS) is the world's largest provider of computing services accessible through the Web, from globally distributed servers in highly automated data centers. … Amazon Web Services, as was evident from the division's original name, enables Web sites to be hosted remotely.  Since its inception, though, AWS has grown into the world's principal provider of virtual infrastructure — the operating systems, hypervisors, service orchestrators, monitoring functions, and support systems upon which the economy of the public cloud is based.") (emphasis added).

[2] PBS, *Amazon Empire: The Rise and Reign of Jeff Bezos* (Feb. 18, 2020), https://www.pbs.org/wgbh/frontline/film/amazon-empire/.

[3] *See* Cision PR Newswire, *Accelerated Growth Sees Amazon Crowned 2019's BrandZ™ Top 100 Most Valuable Global Brand* (Jun. 11, 2019), https://www.prnewswire.com/news-releases/accelerated-growth-sees-amazon-crowned-2019s-brandz-top-100-most-valuable-global-brand-300863486.html.

[4] Amazon Prime (or "Prime") is a subscription-based automatic renewal program that provides paying subscribers in the United States with benefits otherwise unavailable to other Amazon customers without a paid Prime subscription, including Amazon Prime Video.  Currently, a standard Prime subscription costs $14.99 per month or $139 per year.  *See* https://www.amazon.com/gp/help/customer/display.html?nodeId=G34EUPKVMYFW8N2U.  Additionally, Defendant offers a discounted Amazon Prime Student membership, which currently costs $7.49 per month or $69 per year.  *See id.*; *see also* https://www.amazon.com/amazonprime?ref_=nav_cs_primelink_nonmember.

[5] Amazon Prime Video (or "Prime Video"), which is offered as a standalone subscription or as part of the Prime subscription, primarily distributes films and television series produced by Amazon Studios or licensed to Amazon, as Amazon Originals, with the service also hosting content from other providers, content add-ons, live sporting events, and video rental and purchasing services.  As a standalone subscription, Prime Video automatically renews at a standard rate of $8.99 per month.

[6] Amazon Prime Video Channels (or "Prime Video Channels") are optional content add-on subscriptions available, for an additional monthly fee, to consumers with a pre-existing Prime or Prime Video subscription.  Prime Video Channels subscriptions provide on-demand or live streaming access to TV shows, movies, and other video content from over 100 premium third-party networks and other streaming entertainment channels, such as Epix, Starz, Discovery+, Cinemax, Curiosity Stream, Tastemade, Showtime, BET+, Paramount+, CBS All Access, Cinemax, and more.  Prime Video Channel subscriptions renew on a monthly basis at various rates ranging from $3 to $29 per month, depending on the channel.

---

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

Amazon Music Unlimited[7], Amazon Prime Book Box[8], Amazon Kids+[9], Kindle Unlimited[10],

Audible[11], ComiXology Unlimited[12], Amazon Subscription Boxes[13], Blink for Home[14], and

Amazon Photos[15] (collectively, the "Amazon Subscriptions").

---

[7] Amazon Music Unlimited (or "Music Unlimited") is a premium music subscription service featuring "75 million songs and thousands of expert-programmed playlists and stations." *Amazon Music FAQs*, https://www.amazon.com/b?ie=UTF8&node=15730321011#amu (last accessed Jun. 13, 2022); *see also* https://www.amazon.com/music/unlimited/?_encoding=UTF8&ref_=sv_dmusic_1. Prime members can enroll in a Music Unlimited subscription at the renewal rate of $7.99 per month or $79 per year. *Id.* Non-Prime customers pay $9.99 per month. *Id.*

[8] Amazon Prime Book Box (or "Prime Book Box") is an automatically renewing subscription program available, for an additional monthly fee, exclusively to Amazon Prime members, which delivers a box of children's books to customers on monthly intervals. With Prime Book Box, subscribers receive a delivery of curated children's books every 1, 2, or 3 months, depending on the user's selection. *See* https://www.amazon.com/dp/B072J4QS9F/ref=insider_ar_reading_prbookboxlaunch. Each Prime Book Box costs $22.99 per box (plus tax), and contains four board books or beautiful hardcover books. *See id.*; *Introducing Amazon Prime Book Box*, https://www.amazon.com/primeinsider/reading/prime-book-box-launch.html.

[9] Amazon Kids+ (formerly "FreeTime Unlimited") is a paid subscription that provides kids aged 3 to 12 years access to age-appropriate books, movies, and TV shows. Prime members can enroll in a Music Unlimited subscription at the renewal rate of $4.99 per month or $48 per year, plus applicable taxes. *See* https://www.amazon.com/ftu/home. Non-Prime customers pay $7.99 per month plus tax. *Id.*

[10] Kindle Unlimited is an automatically renewing subscription program that provides paying subscribers access to an unlimited quantity of eBooks and audiobooks, and up to three magazine subscriptions, which the subscriber may download and retain. Kindle Unlimited costs $9.99 per month, plus applicable taxes. *See* https://www.amazon.com/Kindle-eBooks/b?ie=UTF8&node=18473854011.

[11] Audible is a subscription-based automatic renewal program that allows paid subscribers to access and stream audiobooks or other forms of spoken word content from Defendant's expansive "Plus Catalog" (*i.e.*, the library of content available to paid Audible subscribers). Audible is offered in three different tiers: Audible Plus, Audible Premium Plus, and Audible Premium Plus Annual. Currently, Audible Plus costs $7.95 per month, Audible Premium Plus costs $14.95 per month, and Audible Premium Plus Annual costs $149.50 per year. *See* https://www.amazon.com/hz/audible/mlp/compare; https://www.amazon.com/hz/audible/mlp/membership/premiumplus/prime.

[12] ComiXology Unlimited is an automatically renewing subscription program that provides paying subscribers access to a growing selection of thousands of titles, including comic books, graphic novels, and manga. *See Learn About ComiXology Unlimited*, https://www.amazon.com/gp/help/customer/display.html?nodeId=GMQTKN5RM78V9393. Currently, a Comixology Unlimited costs $5.99 per month, plus applicable tax. *See id.*; *see also* https://www.amazon.com/kindle-dbs/cu/signup/?_encoding=UTF8&ref_=sv_kstore_cmx_3.

[13] Amazon Subscription Boxes are automatically renewing subscription programs that provide paying subscribers monthly deliveries of curated products within themed product categories such as beauty, grocery & snacks, lifestyle, toys, and more. Amazon offers more than 200 different monthly subscription boxes, including those from qualified third-party sellers. *See* https://www.amazon.com/gp/browse.html?node=14498690011&ref_=amzn_nav_ftr_swa.

[14] Blink for Home (or "Blink") is an automatically renewing subscription program that provides paying subscribers with extra features and benefits to be used with Blink-branded smart home security devices. *See* https://www.amazon.com/b?ie=UTF8&node=21154643011. Blink subscription plans are only sold and managed on Amazon.com, *see* https://support.blinkforhome.com/en_US/subscriptions/purchasing-a-blink-subscription-plan-through-amazon, and are offered in two different tiers: Blink Subscription Basic and Blink Subscription Plus. *See* https://www.amazon.com/b?ie=UTF8&node=21154643011. Blink Subscription Basic covers currently costs $3 per month or $30 per year and includes 90 minutes continuous, motion detection video recording, live view recording, 60-day unlimited video history, rapid video access (whereby paying subscribers may instantly watch videos as soon as

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

4.      To sign up for Defendant's Amazon Subscriptions through the Amazon Platform, customers provide Defendant with their billing information and Defendant then automatically charges customers' Payment Method as payments are due, typically on a monthly or annual basis. Defendant is able to unilaterally charge its customers renewal fees without their consent, as Defendant is in possession of its customers' billing information.  Thus, Defendant has made the deliberate decision to charge Plaintiffs and other similarly situated customers on a monthly or yearly basis, absent their consent under the ARL, relying on consumer confusion and inertia to retain customers, combat consumer churn, and bolster its revenues.

5.      Pursuant to both the California and Oregon ARL, online retailers who offer automatically renewing subscriptions to California and Oregon consumers must: (a) provide the complete automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to the purchase, *see* Cal. Bus. & Prof. Code § 17602(a)(1); ORS 646A.295(1)(a); *see also* Cal. Bus. & Prof. Code § 17601(b)(1)-(5) (setting forth definition of "Automatic renewal offer terms" as used in Cal. Bus. & Prof. Code § 17602); ORS 646A.293(5)(a)-(e) (setting forth definition of "offer terms" as used in ORS 646A.295); (b) obtain consumers' affirmative consent to the purchase prior to charging their Payment Methods in connection with the subscriptions, *see* Cal. Bus. & Prof. Code § 17602(a)(2); ORS 646A.295(1)(b); and (c) provide an acknowledgment that includes clear and conspicuous disclosures regarding the required offer terms and identifies a cost-effective, timely, and easy-to-use mechanism for consumers to cancel their subscriptions, *see* Cal. Bus. & Prof. Code §§ 17602(a)(3), 17602(b); ORS 646A.295(1)(c), ORS 646A.295(2).

---

they are recorded), and video sharing.  *Id*.  Additionally, for paying subscribers with Blink Indoor and Outdoor cameras and/or the new Blink Video Doorbell, the Blink Subscription Basic provides photo capture, whereby images are captured periodically for more coverage.  *Id*.  Blink Subscription Plus currently costs $10 per month or $100 per year and includes all the benefits of the Basic plan, in addition to the ability to activate video recording for an unlimited number of devices per account (whereas the Basic subscription plan only covers 1 supported Blink device, an extra 10% off Blink devices at Amazon.com, and extended warranty coverage.  *Id*.

[15] Amazon Photos is a secure online subscription storage service for photos and videos.  While *all* Amazon customers get 5GB of storage, and Prime subscribers get unlimited photo storage and 5GB of video storage, Defendant also offers a range of extra storage plans at an additional monthly or annual fee to Prime subscribers who want an Amazon Photos membership with the capacity to store more than 5GB of video.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

6.      Consumers purchasing the Amazon Subscriptions do so either by choosing a free trial that automatically renews with a paid subscription at the end of the trial period, or a paid monthly or annual subscription (at either the full standard recurring rate that Defendant ordinarily charges, or at a promotional or discounted rate that remains static for a limited period of time, after which period the subscription then automatically renews at the full standard rate).  As will be discussed in detail below, the enrollment process for an Amazon Subscription on the Amazon Platform uniformly violates each of the core requirements of the California and Oregon ARL.

7.      Specifically, Defendant systematically violates the California and Oregon ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity to the request for consent to the offer, in violation of California's ARL under Section 17602(a)(1) and Oregon's ARL under Section 646A.295(1)(a); (ii) charging consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of California's ARL under Section 17602(a)(2) and Oregon's ARL under Section 646A.295(1)(b); and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of California's ARL under Section 17602(a)(3) and Oregon's ARL under Section 646A.295(1)(c).  The acknowledgment also fails to disclose a toll-free telephone number or describe another cost-effective, timely, and easy-to-use mechanism for cancellation, and in fact Defendant makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Amazon Subscriptions, in violation of California's ARL under Section 17602(b) and Oregon's ARL under Section 646A.295(2).

8.      As a result, all goods, wares, merchandise, or products sent to Plaintiffs and the Class under the automatic renewal or continuous service agreements are deemed to be "unconditional gifts" under both the California and Oregon ARL.  Cal. Bus. & Prof. Code § 17603; ORS 646A.295(5).

9.      For the foregoing reasons, Plaintiffs bring this action individually and on behalf of all similarly situated purchasers of any of Defendant's Amazon Subscriptions from the Amazon Platform who, within the applicable statute of limitations periods, up to and including the date of judgment in this action, incurred unauthorized fees for the renewal of their Amazon Subscriptions. Based on Defendant's unlawful conduct, Plaintiffs seek damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for: (i) violation of Oregon's Unlawful Trade Practices Act (the "UTPA"), ORS 646.608(1)(ttt); (ii) violation of Oregon's UTPA, ORS 646.608(1)(sss); (iii) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (iv) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (v) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (vi) conversion; (vii) unjust enrichment / restitution; (viii) negligent misrepresentation; and (ix) fraud.[16]

## THE PARTIES

10.      Plaintiff Mark Daly is a citizen of Oregon, residing in Linn County, Oregon.  In or about March 2022, Mr. Daly signed up for a free trial of Defendant's monthly Amazon Prime subscription from Defendant's website while in Oregon.  During the enrollment process but before finally consenting to Defendant's subscription offering, thereby completing the checkout process, Mr. Daly provided his debit card information directly to Defendant.  At the time Mr. Daly enrolled in his Amazon Subscription program, Defendant did not disclose to Mr. Daly all required automatic renewal offer terms associated with the subscription program or obtain Mr. Daly's affirmative consent to those terms.  For instance, at the time of enrollment, Mr. Daly was not

---

[16] As is set forth below, Plaintiffs bring these claims on behalf of an Oregon Class and Subclass, a California Class, and a Nationwide Class of similarly situated consumers.  *See infra* ¶ 177 (setting forth class definitions).  Specifically, Plaintiff Daly seeks to represent a class of all Oregon consumers who enrolled in any of the Amazon Subscriptions – and a subclass of Oregon class members who initially enrolled in a free trial to any of the Amazon Subscriptions – and who incurred fees within the one-year statutory period of limitations applicable to his Claims pursuant to the UTPA, ORS 646.608(1)(ttt) and 646.608(1)(sss).  *Id.* at Counts I-II.  Additionally, Plaintiffs Nacarino, Sylvester, and Sonnenschein seek to represent a class of all California purchasers of the Amazon Subscriptions who incurred fees within the applicable statute of limitations periods under the UCL, FAL, and CLRA.  *Id.* at Counts III-V.  Finally, all named Plaintiffs, collectively, seek to represent a nationwide class of all United States purchasers of any of the Amazon Subscriptions who incurred fees within the limitations periods applicable to Plaintiffs' common law claims for conversion, unjust enrichment / restitution, negligent misrepresentation, and fraud.  *Id.* at Counts VI-IX.

aware that, upon the expiration of Mr. Daly's free trial subscription, Defendant would automatically convert his free trial into a paid, automatically renewing subscription. Nor did Defendant adequately disclose the length of Mr. Daly's free trial or when the first charge would occur. Further, after Mr. Daly completed his initial order, Defendant sent Mr. Daly an email confirmation and receipt for his purchase of and enrollment in an Amazon Subscription (the "Acknowledgment Email"). However, the Acknowledgment Email, too, failed to provide Mr. Daly with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Mr. Daly's Amazon Subscription in a manner capable of being retained by him. Mr. Daly did not receive any other acknowledgement that contained the required information. As a result, Mr. Daly was not placed on notice of several material terms associated with his Amazon Subscription. In particular, Mr. Daly was not made aware of the fact that his Amazon Subscription would automatically renew after the initial free trial period, the length of the free trial period, or when the first charge would occur, and nor was he apprised of the complete cancellation policy associated with his Amazon Subscription, the most crucial aspects of which were missing from the Checkout Page and Acknowledgment Email. Nevertheless, in or around April 2022, approximately one month after Mr. Daly first signed up for his free trial to Amazon Prime, Defendant automatically converted Mr. Daly's free trial to a paid Amazon Subscription and charged Mr. Daly's Payment Method approximately $14.99, the full monthly standard rate then associated with Defendant's paid monthly Amazon Prime subscription. Thereafter, Defendant again automatically renewed Mr. Daly's Amazon Subscription the subsequent month, charging him another $14.99 in May of 2022, for a total of two unauthorized charges amounting to approximately $30.00 to Mr. Daly's Payment Method. Additionally, because these charges came as a total surprise to Mr. Daly, his Payment Method did not contain sufficient funds to cover the monthly cost of Prime at the time Defendant posted the renewal fees to Mr. Daly's bank account, which, in turn, caused Mr. Daly to incur overdraft fees from his bank. Promptly after learning of these subscription charges – which signaled to Mr. Daly that he had enrolled been in a Prime subscription in the first place – Mr. Daly

1  attempted to cancel his Amazon Subscription in order to avoid incurring any future charges in

2  connection with Amazon Prime.  However, Mr. Daly struggled to do so due to Defendant's

3  obscure, confusing, and time-consuming cancellation policy, the terms related to which were

4  entirely missing from the Checkout Page and Acknowledgment Email.  For instance, Mr. Daly

5  called Defendant to notify Defendant that he did not authorize – and to request a refund of – the

6  monthly charges he incurred in April and May of 2022.  However, Defendant told Mr. Daly that it

7  was unable to cancel his Prime subscription for him, and denied Mr. Daly's refund request.

8  Ultimately, Mr. Daly was only able to cancel his Prime subscription and avoid incurring further

9  renewal charges by circumventing Amazon altogether and going through his financial institution to

10  cancel the Payment Method associated with his Amazon Subscription.  But, by that point,

11  Defendant had already charged approximately $30.00 to Mr. Daly's Payment Method in monthly

12  renewal fees, which Defendant refused to refund, and Defendant's unauthorized and unexpected

13  charges also caused Mr. Daly to incur overdraft fees with his financial institution, for which he

14  was not reimbursed.  Defendant's missing and/or incomplete disclosures on the Checkout Page and

15  in the Acknowledgment Email for the Amazon Subscriptions, its failure to obtain Mr. Daly's

16  affirmative consent to the offer terms associated with the Amazon Subscriptions before charging

17  his Payment Method on a recurring basis, and its subsequent failure to issue a refund of those

18  unauthorized charges, are contrary to the ARL, which deems products provided in violation of the

19  statute to be a gift to consumers.  *See* ORS 646A.295; *see also* ORS 646.608(1)(ttt).  Further,

20  Defendant's missing and/or incomplete disclosures on the Checkout Page and its failure to obtain

21  Mr. Daly's affirmative consent to the free trial offer terms associated with the Amazon

22  Subscriptions before charging his Payment Method on a recurring basis are contrary to the FOL,

23  which is an "unlawful practice subject to enforcement and penalty under" the UTPA.  *See* ORS

24  646.644(6); *see also* ORS 646.608(1)(sss).  Had Defendant complied with the ARL and FOL, Mr.

25  Daly would have been able to read and review the auto renewal terms prior to purchase, and he

26  would have not subscribed to Amazon Prime at all or on the same terms, or he would have

27  cancelled his Amazon Subscription earlier, *i.e.*, prior to the expiration of the initial subscription

28

period and/or any subsequent renewal term.  Additionally, had Defendant complied with the ARL and FOL, Mr. Daly would have expected to incur automatic charges in connection with Amazon Prime in April and May of 2022 – and, moreover, he would have been aware of the recurring price to be charged and of the specific date that such charges would occur – and he would have made certain to transfer sufficient funds to the bank account associated with his Payment Method in advance of the payment date, in which case Mr. Daly would have avoided incurring overdraft fees with his financial institution.  Thus, as a direct result of Defendant's violations of the ARL and FOL, Mr. Daly suffered economic injury.

11.     Plaintiff Elena Nacarino is a citizen of California, residing in San Francisco, California.  Ms. Nacarino signed up for a free trial of Defendant's monthly Amazon Prime subscription from Defendant's website while in California in or around approximately late 2019 or early 2020.  During the enrollment process but before finally consenting to Defendant's subscription offering, thereby completing the checkout process, Ms. Nacarino provided her credit card billing information (her "Payment Method") directly to Defendant.  At the time Ms. Nacarino enrolled in her Amazon Subscription program, Defendant did not disclose to Ms. Nacarino all required automatic renewal offer terms associated with the subscription program or obtain Ms. Nacarino's affirmative consent to those terms.  For instance, at the time of enrollment, Ms. Nacarino was not aware that, upon the expiration of Ms. Nacarino's free trial subscription, Defendant would automatically convert her free trial into a paid, automatically renewing subscription.  Nor did Defendant adequately disclose the length of Ms. Nacarino's free trial or when the first charge would occur.  Further, after Ms. Nacarino completed her initial order, Defendant sent Ms. Nacarino an email receipt for her purchase of an Amazon Subscription (the "Acknowledgment Email").  However, the Acknowledgment Email, too, failed to provide Ms. Nacarino with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Ms. Nacarino's Amazon Subscription in a manner capable of being retained by her.  Ms. Nacarino did not receive any other acknowledgment that contained the required information.  As a result, Ms.

1   Nacarino was not placed on notice of several material terms associated with her Amazon

2   Subscription.  In particular, Ms. Nacarino was not made aware of the fact that her Amazon

3   Subscription would automatically renew after the initial free trial period, of the length of the free

4   trial period, or of when the first charge would occur, and nor was she apprised of the cancellation

5   policy associated with her Amazon Subscription, the most crucial aspects of which were missing

6   from the Checkout Page and Acknowledgment Email.  In any case, shortly after Ms. Nacarino first

7   signed up for her free trial Amazon Subscription, but prior to the end of the free trial period, Ms.

8   Nacarino attempted to cancel her Amazon Subscription through the Amazon Website in order to

9   avoid incurring any future charges in connection with Amazon Prime.  However, approximately

10  one month later, Ms. Nacarino learned upon review of her billing statements and banking history

11  that, notwithstanding her attempt to cancel her free trial Amazon Subscription the previous month,

12  Defendant automatically renewed Ms. Nacarino's Amazon Subscription upon the end expiration of

13  the free trial period and, without Ms. Nacarino's affirmative consent, charged Ms. Nacarino's

14  Payment Method in the full standard monthly rate associated with her Amazon Subscription.

15  Thus, Ms. Nacarino's attempt at cancellation one month earlier was utterly ineffective.

16  Immediately after seeing Defendant's charge to her Payment Method, Ms. Nacarino again

17  attempted to cancel her Amazon Subscription, which she struggled to do due to Defendant's

18  obscured, confusing, and time consuming cancellation policy.  Specifically, Ms. Nacarino called to

19  notify Defendant that she did not authorize – and to request a refund of – the subscription renewal

20  charges.  However, Defendant denied Ms. Nacarino's refund request and refused to cancel her

21  Amazon Subscription.  Ultimately, Ms. Nacarino was only able to affect cancellation, and thereby

22  stop Defendant from automatically charging her Payment Method, by cancelling her credit card

23  through her bank.  Defendant's missing and/or incomplete disclosures on the Checkout Page and

24  in the Acknowledgment Email, its failure to obtain Ms. Nacarino's affirmative consent before

25  charging her Payment Method on a recurring basis, and its subsequent refusal to issue a refund of

26  those unauthorized charges, are contrary to the ARL, which deems products provided in violation

27  of the statute to be a gift to consumers.  *See* Cal. Bus. & Prof. Code § 17603.  Had Defendant

28

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

10

complied with the ARL, Ms. Nacarino would have been able to read and review the auto renewal terms prior to purchase, and she would have not subscribed to Amazon Prime or she would have cancelled her Amazon Subscription earlier, *i.e.*, prior to the expiration of the initial subscription period and/or any subsequent renewal term.  As a direct result of Defendant's violations of the ARL, Ms. Nacarino suffered economic injury.

12.    Plaintiff Susan Sylvester is a citizen of California, residing in Elk Grove, California.  In or around 2019, Ms. Sylvester purchased an Amazon Kindle Paperwhite Reader (the "Kindle Device"), which included a three-month free trial to Defendant's Kindle Unlimited subscription as a gift with purchase, from Defendant's website while in California.  During the process of purchasing her Kindle Device and/or enrolling in her Kindle Unlimited subscription, but before finally unwittingly consenting to Defendant's subscription offering and thereby completing the checkout process, Ms. Sylvester provided her credit card billing information (her "Payment Method") directly to Defendant.  At the time Ms. Sylvester purchased her Kindle device and thereby enrolled in her Amazon Subscription program, Defendant did not disclose to Ms. Sylvester all required automatic renewal offer terms associated with the subscription program or obtain Ms. Sylvester's affirmative consent to those terms.  For instance, at the time of enrollment, Ms. Sylvester was not aware that, upon the expiration of Ms. Sylvester's free trial subscription, Defendant would automatically convert her free trial into a paid, automatically renewing subscription.  Nor did Defendant adequately disclose the length of Ms. Sylvester's free trial or when the first charge would occur.  Further, after Ms. Sylvester completed her initial order, Defendant sent Ms. Sylvester an email receipt for her purchase of an Amazon Subscription (the "Acknowledgment Email").  However, the Acknowledgment Email, too, failed to provide Ms. Sylvester with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Ms. Sylvester's Amazon Subscription in a manner capable of being retained by her.  Ms. Sylvester did not receive any other acknowledgment that contained the required information.  As a result, Ms. Sylvester was not placed on notice of several material terms associated with her Amazon

Subscription.  In particular, Ms. Sylvester was not made aware of the fact that her Amazon

Subscription would automatically renew after the initial free trial period, of the length of the free

trial period, or of when the first charge would occur, and nor was she apprised of the cancellation

policy associated with her Amazon Subscription, the most crucial aspects of which were missing

from the Checkout Page and Acknowledgment Email.  In any case, shortly after Ms. Sylvester first

noticed that her supposed free trial Amazon Subscription was not, in fact, free, Ms. Sylvester

attempted to cancel her Amazon Subscription by calling Amazon's Customer Service phone line in

order to avoid incurring any future charges in connection with Amazon Prime.  However,

approximately one year later, Ms. Sylvester learned upon review of her billing statements and

banking history that, notwithstanding her attempt to cancel her free trial Amazon Subscription the

previous year, Defendant automatically renewed Ms. Sylvester's Amazon Subscription upon the

end expiration of the free trial period and, without Ms. Sylvester's affirmative consent, charged

Ms. Sylvester's Payment Method in the full standard monthly rate associated with her Amazon

Subscription.  Thus, Ms. Sylvester's attempt at cancellation one year earlier was utterly

ineffective.  Immediately after seeing Defendant's charges to her Payment Method, Ms. Sylvester

again attempted to cancel her Amazon Subscription in August 2020, which she struggled to do due

to Defendant's obscured, confusing, and time-consuming cancellation policy.  Specifically, Ms.

Sylvester again called to notify Defendant that she did not authorize the continued subscription

renewal charges.  Yet again, Ms. Sylvester's call with Defendant's Customer Service team was

ineffective.  Ms. Sylvester continued to be charged until January 2022, at which point she called

Defendant again to request cancellation and a refund of the 25 months of unauthorized charges to

her Payment Method.  Ultimately, Ms. Sylvester was only able to affect cancellation, and thereby

stop Defendant from automatically charging her Payment Method, by calling to cancel her

subscription this third time, after she had been charged 25 times without her consent.  Defendant's

missing and/or incomplete disclosures on the Checkout Page and in the Acknowledgment Email,

its failure to obtain Ms. Sylvester's affirmative consent before charging her Payment Method on a

recurring basis, and its subsequent refusal to issue an adequate refund of those unauthorized

charges, are contrary to the ARL, which deems products provided in violation of the statute to be a gift to consumers. *See* Cal. Bus. & Prof. Code § 17603. Had Defendant complied with the ARL, Ms. Sylvester would have been able to read and review the auto renewal terms prior to purchase, and she would have not unintentionally subscribed to Kindle Unlimited or she would have cancelled her Amazon Subscription earlier, *i.e.*, prior to the expiration of the initial subscription period and/or any subsequent renewal term. As a direct result of Defendant's violations of the ARL, Ms. Sylvester suffered economic injury.

13.    Plaintiff Michael Sonnenschein is a citizen of California, residing in Los Angeles, California. At some point in 2017, Mr. Sonnenschein signed up for free trials of Defendant's add-on monthly Music Unlimited and Prime Video Channels subscriptions (collectively, the "Amazon Add-On Subscriptions") from Defendant's website while in California. During the enrollment process but before finally consenting to Defendant's subscription offerings, thereby completing the checkout process, Mr. Sonnenschein provided his credit card billing information (his "Payment Method") directly to Defendant. At the time Mr. Sonnenschein enrolled in his Amazon Add-On Subscriptions programs, Defendant did not disclose to Mr. Sonnenschein all required automatic renewal offer terms associated with the subscription programs or obtain Mr. Sonnenschein's affirmative consent to those terms. For instance, at the time of enrollment, Mr. Sonnenschein was not aware that, upon the expiration of Mr. Sonnenschein's free trial subscriptions, Defendant would automatically convert his free trials into paid, automatically renewing subscriptions. Nor did Defendant adequately disclose the length of Mr. Sonnenschein's free trials or when the first charges would occur. Further, after Mr. Sonnenschein completed his initial orders, Defendant sent Mr. Sonnenschein email receipts for his purchase of the Amazon Subscriptions (the "Acknowledgment Emails"). However, the Acknowledgment Emails, too, failed to provide Mr. Sonnenschein with the complete automatic renewal terms that applied to Defendant's offers, a description of Defendant's full cancellation policies, or information regarding how to cancel Mr. Sonnenschein's Amazon Add-On Subscriptions in a manner capable of being retained by him. Mr. Sonnenschein did not receive any other acknowledgment that contained the required information.

1    As a result, Mr. Sonnenschein was not placed on notice of several material terms associated with

2    his Amazon Add-On Subscriptions.  In particular, Mr. Sonnenschein was not made aware of the

3    fact that his Amazon Add-On Subscriptions would automatically renew after the initial free trial

4    periods, of the length of the free trial periods, or of when the first charges would occur, and nor

5    was he apprised of the cancellation policies associated with his Amazon Add-On Subscriptions,

6    the most crucial aspects of which were missing from the Checkout Pages and Acknowledgment

7    Emails.  In any case, shortly after Mr. Sonnenschein first signed up for his free trial Amazon Add-

8    On Subscriptions, Mr. Sonnenschein learned upon reviewing his billing statements and banking

9    history that, notwithstanding the confusing terms of his Amazon Add-On Subscriptions, Defendant

10   automatically renewed Mr. Sonnenschein's Amazon Add-On Subscriptions upon the end

11   expiration of the free trial periods and, without Mr. Sonnenschein's affirmative consent, charged

12   Mr. Sonnenschein's Payment Method in the full standard monthly rates associated with his

13   Amazon Subscriptions.  After this discovery, Mr. Sonnenschein cancelled his Amazon Add-On

14   Subscriptions through the Amazon Website in order to avoid incurring any future charges in

15   connection with Music Unlimited and Prime Video Channels.  Further, Mr. Sonnenschein notified

16   Defendant that he did not authorize – and to request a refund of – the subscription renewal charges.

17   However, Defendant denied Mr. Sonnenschein's refund request.  Defendant's missing and/or

18   incomplete disclosures on the Checkout Pages and in the Acknowledgment Emails, its failure to

19   obtain Mr. Sonnenschein's affirmative consent before charging his Payment Method on a recurring

20   basis, and its subsequent refusal to issue a refund of those unauthorized charges, are contrary to the

21   ARL, which deems products provided in violation of the statute to be a gift to consumers.  *See* Cal.

22   Bus. & Prof. Code § 17603.  Had Defendant complied with the ARL, Mr. Sonnenschein would

23   have been able to read and review the auto renewal terms prior to purchase, and he would have not

24   subscribed to Music Unlimited or Prime Video Channels, or he would have cancelled his Amazon

25   Add-On Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription periods and/or

26   any subsequent renewal terms.  As a direct result of Defendant's violations of the ARL, Mr.

27   Sonnenschein suffered economic injury.

28

14.     Defendant Amazon.com, Inc. ("Amazon" or "Defendant") is a Delaware corporation with its corporate headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington  98109.  Amazon is the world's largest online retailer and a prominent provide of cloud and web-based products and services.  In fact, Amazon "dominate[s] e-commerce sales" and "receive[s] more than one-quarter of U.S. e-commerce sales dollars for every category other than auto/parts."[17]  Relevant here, Defendant offers access to certain exclusive Amazon content, products, and/or services on a contract or fee basis to customers who enroll in the automatically renewing Amazon Subscriptions.  Defendant wholly owns and operates the Amazon Subscriptions, which it markets to consumers through the Amazon Website and App(s) (collectively, the "Amazon Platform").  Defendant is responsible for the promotion, advertisement, and/or marketing of the Amazon Subscriptions, and it owns and operates the Amazon Platform. Defendant sells – and, at all times during the applicable Class Periods, sold – the Amazon Subscriptions in Oregon and California and has done business throughout the United States.  In connection with the Amazon Subscriptions, Defendant made automatic renewal offers to consumers in Oregon and California and throughout the United States via the Amazon Platform at all relevant times during the applicable Class Periods.

15.     Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiffs, as

---

[17] Chain Store Age, *The top 10 U.S. retail e-commerce companies are…* (May 3, 2021), https://chainstoreage.com/top-10-us-retail-e-commerce-companies-are.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

well as most members of the proposed Classes and Subclass, are citizens of a state different from Defendant.

17.     This Court has personal jurisdiction over the parties because Defendant maintains its principal place of business in Washington.  Additionally, Plaintiffs submit to the jurisdiction of the Court.

18.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Also, Defendant's principal place of business is located in this District, and it distributed, advertised, and sold the Amazon Subscriptions to Plaintiffs and Class and Subclass Members in California and Oregon from this State and District.

## FACTUAL BACKGROUND

### A.     Background On The Subscription e-Commerce Industry

19.     The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[18]  Subscription e-commerce services target a wide range of customers and cater to a variety of specific interests. According to an October 2020 report by Juniper Research, "multiservice subscriptions, that provide several services for a single cost, … will be led by offerings from tech conglomerates, like Amazon's Prime service[.]"[19]  Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years.  Indeed, the "subscription economy has grown more than 400% over the last 8.5 years as consumers have

---

[18] Core DNA, *How to Run an eCommerce Subscription Service: The Ultimate Guide* (May 19, 2020), https://www.coredna.com/blogs/ecommerce-subscription-services.

[19] Juniper Research, *Subscriptions for Physical Goods to Overtake Digital Subscriptions by 2025; Growing to Over $263Bn Globally* (Oct. 12, 2020), https://www.juniperresearch.com/press/subscriptions-for-physical-goods-to-overtake (emphasis added).

Juniper Research, one of the leading analyst firms in the mobile and digital tech sector, specializes in identifying and appraising new high growth market sectors within the digital ecosystem and provides research and analytical services to the global hi-tech communications sector, as well as consultancy, analyst reports, and industry commentary. *See* https://www.juniperresearch.com/about-us.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

demonstrated a growing preference for access to subscription services[.]"[20]  Analysts at UBS predict that the subscription economy will expand into a $1.5 trillion market by 2025, up from $650 billion in 2020.[21]  That constitutes an average annual growth rate of 18%, which makes the subscription economy "one of the fastest-growing industries globally."[22]  And, by all accounts, Defendant played a major role in spurning this rapid growth.  According to Richard Meyer, marketing expert and author of the blog, New Media and Marketing, "[s]ubscription marketing [has been] gaining steam ever since Amazon exceeded expectations with Amazon Prime[.]"[23]

20.     Defendant launched Amazon Prime in or around February 2005.  Through ***Amazon Prime***, Defendant provides subscribers with access to, among other things, delivery benefits such as faster and free deliveries, streaming and digital benefits, shopping benefits, and reading benefits. Additionally, Defendant debuted ***Amazon Prime Video*** in September 2006, as "Amazon Unbox." Since then, Prime Video has been re-branded twice: in 2011, as "Amazon Instant Video," and then again in September 2015, when the word "Instant" was dropped from its title in the U.S.  Prime Video is offered as a benefit of the basic Prime subscription and as a standalone subscription to non-Prime members, and it provides consumers with access to unlimited, commercial-free instant streaming of thousands of movies and TV shows.  Also in 2015, Amazon launched ***Amazon Prime Video Channels*** (originally called "Streaming Partners Program"), which collectively refers to a

---

[20] Business Insider, *Taco Bell's taco subscription is rolling out nationwide — here's how to get it* (Jan. 6, 2022), https://www.businessinsider.com/taco-bell-subscription-launching-across-the-country-2022-1 (internal quotation marks omitted).

[21] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html ("[A]t close to USD 650 billion in 2020, we expect the subscription economy to expand into a USD 1.5 trillion market by 2025, implying an average annual growth rate of 18%.").

    *See also* Subscribed, *UBS Declares: It's Worth Investing in the Subscription Economy* (Apr. 17, 2021), https://www.subscribed.com/read/news-and-editorial/ubs-declares-its-worth-investing-in-the-subscription-economy; Business 2 Community, *The Subscription Economy Is Booming Right Now. But Are You Reaping the Full Benefits?* (Oct. 7, 2021), https://www.business2community.com/ecommerce/the-subscription-economy-is-booming-right-now-but-are-you-reaping-the-full-benefits-02434851.

[22] UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *supra* note 21 ("[Growth] was seen across many areas, including e-commerce, video streaming, gaming, cloud-based applications, etc."); *see also* Juniper Research, *Subscriptions For Physical Goods To Overtake Digital Subscriptions By 2025* (Oct. 12, 2020), *supra* note 19 (acknowledging "the significant lead the digital sector has had in th[e] area[ of digital service subscriptions]").

[23] New Media and Marketing, *The problem with subscription marketing* (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.

---

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

variety of subscription offerings for third-party channels and streaming services offered to Prime and Prime Video subscribers through the Amazon Platform.  These services are offered separate from the Prime and Prime Video offerings, and must be purchased separately (*i.e.*, as an add-on subscription).  The original launch in the U.S. included channels such as Curiosity Stream, Lifetime Movie Club, AMC's Shudder, Showtime, Starz, and others.  The service subsequently added other partners, such as HBO, Cinemax, Discovery+, Noggin, and PBS Kids, among others.  Additionally, Amazon announced the launch of its ***Subscribe & Save*** program in May of 2007.[24] Defendant has also offered ***Audible*** subscription plans for access to audiobooks and podcasts since 2008, when it acquired the company of the same name.  In July 2014, Defendant introduced ***Kindle Unlimited***, a subscription offering that provides consumers with access to a library of over two million book titles, thousands of audiobooks, and up to three magazine subscriptions.  These benefits are accessible via the "Amazon Kindle" devices, a series of e-readers designed and marketed by Amazon, which is sold separately from Kindle Unlimited.  Later the same year, in November of 2014, Defendant launched ***Amazon Photos***, a secure online storage subscription for photos and videos, which is available as a standalone subscription for consumers who enroll in Defendant's monthly storage plan offerings for increased data storage (*i.e.*, beyond the limited amount provided by default to Prime subscribers and other Amazon customers without Prime).  Then, in May 2016, Defendant launched ***ComiXology Unlimited***, a subscription service offering access to thousands of comics from independent publishers for $5.99 per month.[25]  Later that same year, Defendant launched ***Amazon Music Unlimited***, a subscription program that provides paying subscribers with unlimited access to Defendant's full music streaming catalog.  Music Unlimited is available as a paid, premium version of Music Prime (which is a limited version included with the Prime subscription and is available to Prime subscribers at no additional cost beyond the renewal

---

[24] *See* Amazon Press Release, *Amazon.com's Grocery Store Launches New Subscribe & Save Feature Allowing Automatic Fulfillment of Most Popular Items* (May 15, 2007), https://press.aboutamazon.com/news-releases/news-release-details/amazoncoms-grocery-store-launches-new-subscribe-save-feature.

[25] Publisher's Weekly, *Comixology Launches Comics Subscription Service* (May 24, 2016), https://www.publishersweekly.com/pw/by-topic/industry-news/comics/article/70472-comixology-launches-comics-subscription-service.html.

rate associated with the basic Prime subscription) or as a standalone subscription.  Next, Amazon's subscription box marketplace first went online in July 2018, at which point Defendant began selling the automatically renewing **Amazon Subscription Boxes** to paying subscribers from the Amazon Platform.[26]  Defendant launched **Amazon Prime Book Box** in or around September 2018 as a standalone subscription offering for recurring deliveries of a curated selection of children's books.  And, **Amazon Kids+** (formerly FreeTime Unlimited), which was launched in or around September 2020, provides paid subscribers with access to thousands of kid-friendly books, movies, TV shows, educational apps, games, and more.  Finally, the **Blink Basic and Plus Subscription Plans** launched in March 2021, and have been sold by Defendant on the Amazon Platform at all times since their 2021 debut.[27]

21.     As noted above, the production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years.  According to *Forbes*, "[t]he subscription e-commerce market has grown by more than 100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[28]  Following 2016, market growth within the industry increased exponentially, reaching $650 billion in 2020.[29]  "As such, the financials of companies with subscription business models[] … improved dramatically in 2020 thanks to limited revenue volatility and strong cash flow generation."[30]  Thus, "[t]he share prices of most subscription companies have performed well in recent years."[31]

---

[26] *See* Pymnts, *Is Amazon On The Way To Becoming Subscription Commerce's New Hub?* (Jun. 11, 2019), https://www.pymnts.com/amazon/2019/subscription-commerce-retail-marketplace/; Modern Retail, *Why Amazon is turning to small brands to grow its subscription box program* (Nov. 5, 2020), https://www.modernretail.co/platforms/why-amazon-is-turning-to-small-retailers-to-grow-its-subscription-box-program/.

[27] *See* Digital Trends, *Free local storage is still an option as Blink launches new subscription fee* (Mar. 18, 2021), https://www.digitaltrends.com/home/blink-launches-new-paid-subscription-plan/.

[28] Forbes, *The State Of The Subscription Economy, 2018* (Mar. 4, 2018), *available at* https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[29] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *supra* note 21.

[30] *Id.*

[31] *Id.*

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

22.     The expansion of the subscription e-commerce market shows no signs of slowing. "We're now in the subscriptions era, and the pandemic is accelerating its takeover.  During the COVID-19 lockdowns, many digital-based subscription business models fared well due to their promise of convenience and strong business continuity."[32]  According to *The Washington Post*, "[s]ubscriptions boomed during the coronavirus pandemic as Americans largely stuck in shutdown mode flocked to digital entertainment[.] … The subscription economy was on the rise before the pandemic, but its wider and deeper reach in nearly every industry is expected to last, even after the pandemic subsides in the United States."[33]

23.     However, as *The Washington Post* has noted, there are downsides associated with the subscription-based business model.[34]  While the subscription e-commerce market has low barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the market due to the "highly competitive prices and broad similarities among the leading players."[35]  In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[36]  Yet, retailers have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be too harried to take the extra step of canceling their membership[s]."[37]  As these companies have realized, "[t]he real money is in the inertia."[38]  As a result, "[m]any e-commerce sites work with third-party vendors to implement

---

[32] *Id.*

[33] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ (noting that "e-commerce and entertainment subscriptions to sites such as Netflix, Hulu and Disney Plus made headlines during the pandemic for soaring growth").

[34] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), *available at* https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[35] McKinsey & Company, *Thinking inside the subscription box: New research on e-commerce consumers* (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[36] *Id.*

[37] The Washington Post, *Little-box retailing* (Apr. 7, 2014), *supra* note 34.

[38] *Id.*

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

more manipulative designs."[39]  That is, to facilitate consumer inertia, a number of subscription e-commerce companies, including Defendant, "are now taking advantage of subscriptions in order to trick users into signing up for expensive and recurring plans.  They do this by intentionally confusing users with their app's design and flow, by making promises of 'free trials' that convert after only a matter of days, and other misleading tactics."[40]

24.     To make matters worse, once enrolled in the subscription, "[o]ne of the biggest complaints consumers have about brand/retailers is that it's often difficult to discontinue a subscription marketing plan."[41]  Moreover, "the rapid growth of subscriptions has created a host of challenges for the economy, far outpacing the government's ability to scrutinize aggressive marketing practices and ensure that consumers are being treated fairly, consumer advocates say."[42]  Thus, although "Federal Trade Commission regulators are looking at ways to make it harder for companies to trap consumers into monthly subscriptions that drain their bank accounts[ and] attempting to respond to a proliferation of abuses by some companies over the past few years[,]"[43] widespread utilization of these misleading dark patterns and deliberate omissions persist.

25.     Defendant has successfully implemented these tactics.  As of 2020, Defendant had "raised the global number of Prime members to 200 million," with an estimated United States "subscriber count of 147 million in 2021."[44]  In 2019, "roughly 65 percent of all Amazon shoppers

---

[39] Business Insider, *A new study from Princeton reveals how shopping websites use 'dark patterns' to trick you into buying things you didn't actually want* (Jun. 25, 2019), https://www.businessinsider.com/dark-patterns-online-shopping-princeton-2019-6.

[40] TechCrunch, *Sneaky subscriptions are plaguing the App Store* (Oct. 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

[41] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ ("'Subscription services are a sneaky wallet drain,' said Angela Myers, 29, of Pittsburgh. 'You keep signing up for things and they make it really hard to cancel.'"); *see also* New Media and Marketing, *The problem with subscription marketing* (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.

[42] *Id.*

[43] *Id.*

[44] Statista, *Amazon Prime - Statistics & Facts* (Jul. 5, 2021), https://www.statista.com/topics/4076/amazon-prime/#:~:text=Since%20the%20service%20was%20first,of%20147%20million%20in%202021) (last accessed Oct. 8, 2021).

were Prime members."[45]  Significantly, in 2020, "Amazon's net revenue from subscription

services … amounted to 25.21 billion U.S. dollars."[46]  Based on this growth, Amazon CFO Brian

Olsavsky noted in Amazon's second quarter earnings conference call held on July 29, 2021, that

Amazon has "been fortunate to welcome more than 50 million new members in the past 18

months" and that he was "very pleased with the Prime member growth and engagement

[Defendant is] seeing."[47]  Moreover, in recent months Defendant has enjoyed rapid growth to their

Amazon Subscriptions user-base in light of the fact that "[o]verall time spent streaming has more

than doubled since March[ 2020], when the U.S. and other countries largely shut down due to

COVID-19."[48]  In fact, in 2020, "Prime Video had over 100 million subscribers … trailing only

after Netflix[.] … The platform has seen particularly high audience growth … as a result of the

coronavirus (COVID-19) pandemic."[49]  Similarly, Amazon was able to convince "50 million

people to join Prime during the pandemic, accounting for an approximate 33 percent growth of the

base."[50]

---

[45] *Id.*

[46] Statista, *Amazon: Global net revenue by product 2020* (Jul. 7, 2021), https://www.statista.com/statistics/672747/amazons-consolidated-net-revenue-by-segment/; *see also* Amazon News Release, *Amazon.com announces First Quarter Results.* (Apr. 29, 2021). https://ir.aboutamazon.com/news-release/news-release-details/2021/Amazon.com-Announces-First-Quarter-Results/default.aspx (last accessed Oct. 8, 2021).

   *See also* Securities and Exchanges Commission ("SEC"), 2020 Annual Report for Amazon.com, Inc., *available at* https://www.sec.gov/Archives/edgar/data/1018724/000101872421000004/amzn-20201231.htm#i75de98b9097f40f3b5884e541f532421_13, at 66 (showing $25.207 million net sales from subscription services segment in 2020, a 31.2% increase over net sales of subscription services in 2019 and a 77.915% increase over 2018 sales for same segment); *id.* (noting that this figure "[i]ncludes annual and monthly fees associated with Amazon Prime memberships, as well as digital video, audiobook, digital music, e-book, and other non-AWS subscription services.").

[47] The Motley Fool, *Amazon (AMZN) Q2 2021 earnings call transcript* (Jul. 30, 2021), https://www.fool.com/earnings/call-transcripts/2021/07/30/amazon-amzn-q2-2021-earnings-call-transcript/ (last accessed Oct. 8, 2021).

[48] Deadline, *Ad-Free Subscription Growth Outpaces Ad-Supported Fare During COVID-19* (May 29, 2020), https://deadline.com/2020/05/subscription-streaming-growth-outpaces-free-ad-supported-during-covid-19-1202946438/.

[49] Statista, *Amazon Prime - Statistics & Facts* (Jul. 5, 2021), *see supra* note 44.

[50] The Verge, *Amazon added another 50 million prime subscribers during the pandemic* (Apr. 15, 2021), https://www.theverge.com/2021/4/15/22385370/amazon-prime-subscription-jeff-bezos-2020-shareholders-letter (last accessed Oct. 8, 2021).

---

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

**B.    Defendant's Dark Patterns And Online Consumer Complaints About The Amazon Subscriptions**

26.    Defendant's recent growth in revenues and subscriber count with respect to its Amazon Subscriptions coincides with a sharp decline in subscriber satisfaction as the Amazon Subscriptions and the platforms from which they operate have become riddled with "dark patterns."  A dark pattern is "a user interface carefully crafted to trick users into doing things they might not otherwise do, such as … signing up for recurring bills."[51]  Indeed, as Mark Hurst[52] has suggested, Amazon is among the many websites with large user bases that have implemented "deceptive design tricks to mislead users" by turning subscription cancellation into "a six-page process filled with 'dark patterns.'"[53]

27.    Defendant has been using various types of dark patterns, including but not limited

---

[51] UX Design, *Dark patterns in UX: how designers should be responsible for their actions* (Apr. 15, 2018), https://uxdesign.cc/dark-patterns-in-ux-design-7009a83b233c (quoting UX designer Harry Brignull, PhD Cognitive Science, who coined the term "Dark Patters" in August 2010).

[52] Mark Hurst is the founder of Creative Good, a New York-based consultancy and creative platform launched in 1997. *See* https://creativegood.com/mark-hurst/.

[53] Creative Good, *Why I'm losing faith in UX* (Jan. 28, 2021), https://creativegood.com/blog/21/losing-faith-in-ux.html (last accessed Nov. 15, 2021) (discussing "Amazon's absurdly difficult, inconvenient process for turning off a Prime subscription"); *id*. ("UX is now 'user exploitation.'  * A perfect example is the Amazon Prime cancellation process. … What should be a single page with a 'Cancel my subscription' link is now a six-page process filled with 'dark patterns' - deceptive design tricks known to mislead users - and unnecessary distractions.  This isn't an accident.  Instead, … there's a highly-trained, highly-paid UX organization at Amazon that is actively working to deceive, exploit, and harm their users.").  *See also* Mie Oehlenschlager, *Dark Patterns from Amazon into the Light* (Jan. 23, 2021), https://dataethics.eu/dark-patterns-from-amazon-into-the-light/ ("Amazon uses dark patterns or manipulative design which is – unfortunately – a common practice online[.] … 'Consumers are constantly bombarded by a variety of subtle and less subtle attempts to push us into making choices that favour the companies at the cost of our own time, attention, and money'").

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

to "roach motel,"[54] "misdirection,"[55] and "forced continuity,"[56] in order to prevent user from unsubscribing from the Amazon Subscriptions by adopting complex cancellation procedures to increase the friction in the subscription cancellation process.  Defendant's utilization of these dark patterns – especially in conjunction with its failure to fully disclose the terms of its automatic-renewal programs (discussed further below) – has led to a reduction in churn rates by making it next to impossible for subscribers to cancel their Amazon Subscriptions.  It has further led to an increase in accidental or unintentional sign-ups by consumers for paid Amazon Subscriptions, in effect increasing subscriber count and, thus, Defendant's overall revenues from renewal fees.

---

[54] "Roach motel" refers to a "design [that] makes it very easy for [consumers] to get into a certain situation, but then makes it hard for [consumers] to get out of it (e.g. a subscription)."  https://www.darkpatterns.org/types-of-dark-pattern/roach-motel.

See also Jeremy Merkel, *Dark Patterns Come to Light in California Data Privacy Laws*, XI Nat'l L. Rev. (Jul. 2, 2021), https://www.natlawreview.com/article/dark-patterns-come-to-light-california-data-privacy-laws#google_vignette ("When it comes to the roach motel, as the saying goes, 'roaches check in, but they don't check out.'  Drawing upon this allegory, researchers from the Norwegian Consumer Council (Forbrukerrådet) studied Amazon's use of dark patterns to manipulate users into continuing their Amazon Prime subscriptions, even when they intended to cancel, and published their findings in a report in January.  The conclusions served as the basis for a complaint by the internet privacy watchdog, the Electronic Privacy Information Center (EPIC), to the Office of the Attorney General of the District of Columbia, alleging that Amazon's use of dark patterns constitutes an unfair and deceptive trade practice in violation of the D.C. Consumer Protection Procedures Act and the Federal Trade Commission Act.") (emphasis added and internal footnotes omitted) (citations omitted); Forbrukerrådet, *You Can Log Out, but You Can Never Leave: How Amazon manipulates consumers to keep them subscribed to Amazon Prime* (Jan. 14, 2021), https://fil.forbrukerradet.no/wp-content/uploads/2021/01/2021-01-14-you-can-log-out-but-you-can-never-leave-final.pdf; *In the Matter of Amazon.com, Inc.*, EPIC Complaint, Office of the Attorney General for D.C. (Feb. 23, 2021), https://archive.epic.org/privacy/dccppa/amazon/EPIC-Complaint-In-Re-Amazon.pdf; FTC, *Statement of Commissioner Rohit Chopra Regarding Dark Patterns in the Matter of Age of Learning, Inc.*, *Commission File Number 1723186* (Sep. 2, 2020), https://www.ftc.gov/system/files/documents/public_statements/1579927/172_3086_abcmouse_-_rchopra_statement.pdf.

[55] "Misdirection" is a type of dark pattern where a website's "design purposefully focuses [customers'] attention on one thing in order to distract [them] attention from another."  In many cases, "[w]hat's deceptive is the way [the website] presents [purchase] options: it uses misdirection to hide what is actually happening[.]"  https://www.darkpatterns.org/types-of-dark-pattern/misdirection.

[56] One example of "forced continuity," another type of dark pattern, is where customers' sign up for a "free trial with a service[ that] comes to an end and [their] credit card silently starts getting charged without any warning.  [The subscriber is] are then not given an easy way to cancel the automatic renewal."  https://www.darkpatterns.org/types-of-dark-pattern/forced-continuity.

See also The Good, *Dark Patterns: The Ultimate Conversion Blocker for Ecommerce Websites* (Jun. 15, 2021), https://thegood.com/insights/dark-pattern-ecommerce-ux-design/ ("You've probably signed up for a free trial of something, forgotten to cancel it, and then automatically been billed when the trial expired.  That's forced continuity.  You're not given an opportunity or reminder to opt out of the trial, and it's often exceedingly difficult to cancel before you're charged for the premium subscription. * Unfortunately, this dark pattern is used everywhere, including Amazon Prime.") (emphasis added)

---

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

28.     Amazon's use of dark patterns is so egregious that the company's practices are consistently used as examples to help writers explain dark patterns.  Indeed, one writer explained: "A classic example of dark patterns is when you want to delete an Amazon account.  You can sign up for Amazon in less than 4 clicks, but you'll need to go through at least 6 clicks across 5 pages (including guesswork in selecting categories) and then chat with a representative if you want to close your Amazon account."[57]  And as a writer for *The New York Times* similarly remarked, "[s]ome things are difficult by design.  * Consider Amazon.  The company perfected the one-click checkout.  But <u>canceling a $119 Prime subscription is a labyrinthine process that requires multiple screens and clicks</u>. … These are examples of 'dark patterns,' the techniques that companies use online to get consumers to sign up for things[ and] keep subscriptions they might otherwise cancel[.]"[58]  Yet another writer explained: "Getting out of Amazon Prime poses one of the most complex unsubscription service present among different subscription platforms, as it requires users to go to different settings, pages, and ultimately ask for help … Amazon's Prime subscription service cancellation is practicing 'dark patterns' that mislead people and change their minds.  The rigorous process is said to be the way by the company to prevent people from unsubscribing, ultimately opting out because of the lengthy procedure."[59]  A writer demonstrating to consumers how to spot dark patterns said about closing an Amazon account that: "The instructions are buried under a help menu, and once you track them down, you learn there's no way to complete the process on your own.  You need to contact customer service to get the job done."[60]  These articles are a small sampling of those that use Amazon's concerning practices as an example for dark

---

[57] Fossbytes, *What Are Dark Patterns? Why The California Ban Makes Sense* (Mar. 16, 2021), https://fossbytes.com/dark-patterns-explained/.

[58] The New York Times, *Stopping the Manipulation Machines* (Apr. 30, 2021), https://www.nytimes.com/2021/04/30/opinion/dark-pattern-internet-ecommerce-regulation.html (emphasis added).

[59] Tech Times, *Amazon Prime 'Dark Pattern' of Service Cancellation Explained: Why Consumer Groups Think It's Unfair and Deceptive* (Jan. 14, 2021), https://www.techtimes.com/articles/255977/20210114/amazon-prime-dark-pattern-service-cancellation-explained-why-consumer-groups.htm.

[60] Consumer Reports, *How to Spot Manipulative 'Dark Patterns' Online* (Jan. 30, 2019), https://www.consumerreports.org/privacy/how-to-spot-manipulative-dark-patterns-online-a7910348794/.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

patterns.[61]

29.     Defendant's shady conduct with dark patterns in both 2018 and 2019 even earned "The Dark UX Award," by a consumer vote on a website dedicated to "[c]elebrating excellence in user experience[.]"[62]  This so-called "award," however, is not really as it sounds: "This category … is about dark UX patterns being used to deliberately trick or mislead users into actions they might not have taken otherwise."[63]

30.     More recently, Amazon's practices have been the subject of studies regarding dark patterns, including one report done by the Norwegian Consumer Council ("NCC"): "This year, we launched a report on Amazon where we analyzed the click flow of Amazon in Amazon Prime. And what we discovered was they were putting so many hurdles in front of the consumer, including <u>complicated navigation menu, skewed wording, confusing choices, and repeated nudging, confirm shaming</u>, which … are really effective sort of measures to manipulate

---

[61] *See also, e.g.*, Speccy Media, *Dark Patterns and how they trick us online* (May 19, 2021), https://speccymedia.com/dark-patterns/ ("One of the largest companies in the world, Amazon, makes it virtually impossible for you to delete your account with them. … To delete your account you might think a logical place to look for the option would be within the 'Account & Lists' menu just to the right of the search field. … When you open up that menu, … you see[] … [a] ton of options, none of which are the one we are looking for.  * Instead, you'll need to scroll down to the very bottom of the page until you see the footer. Within the footer, you'll see a small link that simply says 'Help'.  If you click that, … it leads[ to a new webpage] … with a whole heap more options!  <u>My immediate thought was to scroll to the Search field and type 'Delete Account' but that just lead me to even more options, none of which was anything to do with deleting my Amazon account</u>. … The only way to delete your account with Amazon is to select 'Contact Us' and then plead with one of the representatives to Close and delete it for you, <u>there is no way for you to perform this action yourself or any shred of evidence that this is even possible at all</u>.  And this is from one of the largest, most-respected companies in the world!") (emphasis added); The Good, *Dark Patterns: The Ultimate Conversion Blocker for Ecommerce Websites* (Jun. 15, 2021), https://thegood.com/insights/dark-pattern-ecommerce-ux-design/ ("You've probably signed up for a free trial of something, forgotten to cancel it, and then automatically been billed when the trial expired.  That's forced continuity.  You're not given an opportunity or reminder to opt out of the trial, and it's often exceedingly difficult to cancel before you're charged for the premium subscription.  * <u>Unfortunately, this dark pattern is used everywhere, including Amazon Prime</u>.") (emphasis added); The Markup, *Dark Patterns that Mislead Consumers Are All Over the Internet* (Jun. 3, 2021), https://themarkup.org/2021/06/03/dark-patterns-that-mislead-consumers-are-all-over-the-internet ("In January, after researchers accused Amazon of making it too difficult for Prime members to cancel their subscriptions, the Norwegian Consumer Council filed a legal complaint with Norway's consumer protection authority, while the U.S. consumer advocacy group Public Citizen requested that the FTC investigate Amazon's dark patterns for maintaining subscriptions.").

[62] *The Dark UX Award* (2019), https://uxukawards.com/best-dark-ux/.

[63] *Id.*

consumers."[64]  The results of the study prompted NCC to file its own complaint in Norway "about Amazon's absurdly difficult, inconvenient process for turning off a Prime subscription."[65]  That complaint stated: "The cancellation procedure is long, and consists of six separate pages.  On each separate page, the consumer is nudged toward keeping their Prime membership … This uncertainty is further strengthened by having to scroll through the page, which is full of text and graphics to show how cancelling the membership will mean the loss of many benefits."[66]

31.     Despite the above consensus concerning the unsettling nature Amazon's practices, Defendant continues to employ these deceptive tactics to lure consumers into enrolling, and remaining enrolled, in paid Amazon Subscription programs.  In fact, Defendant was the subject of a recent *Business Insider* article by author Eugene Kim, titled "Internal documents show Amazon has for years knowingly tricked people into signing up for Prime subscriptions.  'We have been deliberately confusing,' former employee says."[67]  The article describes a particularly haunting example of dark patterns employed by Defendant: "For example, a single click on the 'Get FREE Two-Day Delivery with Prime' tab at check out – with *no additional confirmation step* – gets shoppers automatically enrolled into a 30-day free trial of Amazon's Prime program, which later converts to a paid membership unless the user cancels it."[68]  According to Kim, "previously unreported internal documents and six current and former employees" have confirmed that "Amazon was aware of these complaints for years but did not take serious action," and that "[e]ven the company's most senior leaders were aware of this problem."  *Id.*  Even worse, "fixes for these issues were proposed and considered, but resulted in lower subscription growth when tested, and were shelved by executives."  *Id.*  The current and former employees expressed further

---

[64] KnowledgeVision, Transcript for FTC DarkPatterns Workshop (Apr. 29, 2021), *available at* https://www.ftc.gov/system/files/documents/public_events/1586943/ftc_darkpatterns_workshop_transcript.pdf (emphasis added).

[65] The Creative Good, *Why I'm losing faith in UX* (Jan. 28, 2021), *available at* https://creativegood.com/blog/21/losing-faith-in-ux.html.

[66] *Id.*

[67] Business Insider, *Internal documents show Amazon has for years knowingly tricked people into signing up for Prime subscriptions. 'We have been deliberately confusing,' former employee says* (Mar. 14, 2022), *available at* https://www.businessinsider.com/amazon-prime-ftc-probe-customer-complaints-sign-ups-internal-documents-2022-3.

[68] *Id.* (emphasis added).

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

concern despite some changes made to Amazon's sign-up pages, saying "repeated red flags in the sign-up process have not been meaningfully addressed, even now," and the "lack of change may have to do with internal tests that showed that clearer language led to fewer sign-ups. *Id.* Customer confusion has been an ongoing problem with Amazon's Prime service: "One data point from August 2017 found that 17,131 of the 25,542 cancellation requests directly handled by the Prime team were related to 'accidental sign-ups,'" meaning customers were deceived into signing up for a Prime account and later forced to contact the Amazon team to ensure their desired cancellation would be effective. *Id.* Mr. Kim's article on Defendant's deceptive practices, and the willingness of current and former Amazon employees to discuss said practices, is extremely telling as to why Defendant's tactics need to be stopped.

32. Defendant's conduct has drawn the attention and ire of customers across the country, with countless angry customers taking to the Internet to voice their discontent over Defendant's broken promises. For instance, numerous subscribers have left scathing reviews on the Better Business Bureau website, complaining of the unclear billing practices and confusing cancellation policy associated with the Amazon Subscriptions:[69]

---

[69] *See* https://www.bbb.org/us/wa/seattle/profile/ecommerce/amazoncom-1296-7039385/complaints (last accessed Jun. 14, 2022).

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019



05/26/2022

My Prime membership was due to expire on May 25, 2022. I initially agreed to renew yet had an issue regarding an unexplained pending charge. I contacted Amazon customer service and was given incorrect information. It was clear the customer service agent did not understand the inquiry and I struggled to understand her explanation. I was frustrated and realized that the prior year was filled with issues and misinformation and untruths by the staff. I immediately contacted executive customer service requesting to cancel my ********************* membership renewal due to continued problems. It was less than twenty-four, (24), hours. I sincerely believe a cancellation and refund would be in the best interest of both parties given the animus I've developed from poor customer service.



05/23/2022

I tried to use Amazon's *********************** I ordered 5 items for delivery on the same day. According to Amazon's subscriptions page, I was saving 15% on each item. However when I looked at the orders they were only taking off 5%. I tried removing and re-adding the item, and it had the same effect. It gives me one price when I am subscribing to the item, but charges me a more expensive price for the actual order. At best this is false advertising. Really its more of a bait and switch. Advertise one price, then charge a higher price unbenounced to the buy.



05/24/2022

Amazon is trying to bully me into purchasing their music subscription service. They are doing this by freezing half the albums in my music library (music that I have already bought and paid for) to prevent me from accessing them. I contacted customer care three times. The first time I was informed that Amazon was trying to pivot towards a monthly subscription service. The second time I was given no information at all and left on hold until I was forced to to hang-up. I wasn't called back and received no email conformation for either of the first two interactions. In the third call, I was given vague response's in hope that that would pacify me and told that they were having a problem with their music app that was effecting most people and would be corrected within 24hrs. Except, this has been a persistent problem for the last six months.They are refusing to give me access to a music library I have invested thousands of dollars in. In the past, I've had hundreds of dollars worth of music disappear from my library and when that happened the proof of purchase mysteriously vanished as well. Yet, there are dozens of charges from Amazon digital to my checking account in months they claim I never purchased any music.I complained about the music that disappeared prom my music library and customer care tried to convince me that the music was never there; music that I had already been listening too. I told the customer service rep that I would start archiving the emails I received as proof of purchase. After that, I would have to call and prompt them to email a receipt. These receipts for digital music purchase's use to include a picture of the album I purchased, and the artist name. After I in formed them that I would start archiving those emails for proof of purchase, they subsequently removed the artist name and album cover from any further emailed receipts. If I can't access my music, then they need to refund me 13 years worth of digital music purchases.

**Complaint Type:** Billing/Collection Issues       **Status:** Answered ❓



05/20/2022

I am 80 years old and do NOT own a computer. (Using a friend's computer now) My son was going over my bank statements when he visited and noticed that I've been being charged each month, starting in October 2021, for Amazon Prime. So he told me to contact BBB. I do not order from Amazon or even have an account with them. I called Amazon and all I got was 'you must of requested it or a family member'....NO!!! My daughter or son would not do that to me!!! I am attaching copies of the months I have been charged for this so called Prime. It comes to $81.94 for the months they charged me for it. What is weird is why didn't I get charged for December 2021 or January 2022??? Something is NOT RIGHT here!!!! I want my money returned to me as soon as possible. Thank you!



05/23/2022

I ordered my last item in January of this year from Amazon so I checked my debit card for amount of the card found a unknown amount $16.19 then called my bank asked who made the purchase they said Amazon I found out that day they had been taking monies out every week since February unapproved by me is what I told my bank so that card was blocked and I was reimbursed all the money and a new debit card that was detected in April now I checked my account at the be of this month May and it happened again they were called again this time I received a credit back too the card and got the card overnight shipped to me by ***** after that I tried to reach Amazon we went back and forth over email I gave them my number but they never called lying here this morning MAY 22, 2022 decided to check my account and the bank let another $16.19 be taken out of my account again I told the bank about me speaking or texting with a few people about this mistake on Amazon's behalf the same day I called to dispute yet another transaction was made I also mentioned who was authorized to take monies out of this account only GEICO, FURTHERMORE I have cable with Spectrum why would I need Prime and I never knew anything about it until now I checked my last purchase from Amazon on my email and it did mentioned Prime was free nothing that I ordered was in need of being shipped in a hurry now I have to wait agree the rest of my weekend mad until Monday for another dispute YEEEES I would like to make this complaint on AMAZON AND MY BANK I will do another complaint knowing they have to be filed separately.



05/21/2022

I tried to close my account which the company deactivated because was no activity. The account still collect monthly fee even so being deactivated. Upon trying to close the account I was inform that was a balance of collected fees which I agree to pay for not using the account. The online account doesn't allow to make the payment, which in return doesn't allow to close the account unless you start the whole process of reactivation for the account, as in submitting all your company documents and wait for Amazon to review them and activate your account. Thus process can take several business days, in which due time you still have to pay your monthly fee even so you technically don't have an account, you have to wait for them to aprove your account to get activated, in order to be able to pay your balance that can take few days to process and afterwards you will e able to actually close the account that they just activated. The whole process to close the account seems like a never ending loop and subject to aproval and not available to customers as an instant, in order to perpetuate to collect monthly fees. I agree to pay the balance and I just Wana close the account, that should be an immediate option, not to require me to re-activate an account being subject yo several days and an aproval before I can close my account. The account t it's already deactivated, I should have left only a balance to be paid and next option should be close account. I just Wana make aware potential start up companies that choose to do business with Amazon, if yiu account for any reason its deactivated, you will continue collecting fees, and trying to close your account require to pretty much apply to open your account again to be able to close it.

05/19/2022

Wednesday May 18, 2022 Amazon pulled $16.04 from my debit card for HBO *** ************* Problem is that I don't have an HBO *** ************* I called Amazon and they are the ones that told me it was for HBO **** We verified on their end as well as my Amazon subscription tab of my app that I do NOT have the ************* I asked him to cancel it, but he told me he couldn't do that because it wasn't my account. I then asked for a supervisor. She also said she can NOT cancel it because it's not mine nor could she give me any info on the subscription for the same reason. The only thing they offered was to contact my bank and report it as fraud which I did, but now I'm going without my card all weekend and I have to reset up all my bills.Amazon admitted they are charging me for HBO *** and that the subscription is not in my name, but refused to remove my payment from it.



05/17/2022

I started getting charges to my credit card and can not get anyone to discuss why. I have several email where I asked them to stop and they tell me I need to log in with my account. I dont have an account. They cant tell me what the charges are They try changing amounts as high as ****** and as low as *****.



05/16/2022

4/3/22 charge on my credit card from amazon. I do not have an account. Soon after I received a letter from amazon to my first name only. The letter states amazon is sending this letter because I am an amazon prime member who has not recently used any of the video benefits. I called amazon to dispute the charge, they said call your bank to dispute. They did not help verify to cancel this fraudulent account I did not open. May 16 I received 2 more packages to "Rose" I did not order these. Someone is using my name is scamming me. I called customer service again, they said contact your credit card company. This is horrible. Amazon customer service is not helpful. I had to cancel my credit card because of an unknown person is scamming me sending unauthorized packages to my po box using my credit card without my authorization.



05/15/2022

I've contacted Amazon and now have spoke to 4 different representatives. Two of which were via chat two which were via phone (verbal calls). The issue is a total of 8 charges on my last two card statements. They are as follows : 3/28 amazon music * 1N7DL3YB2 4/03 PRIME VIDEO * 1H7205BF1 4/03 PRIME VIDEO * 1H46A64R0 4/04 PRIME VIDEO * 1H9C796Y1 2/28 Amazon music * 1I5R877T0 3/03 PRIME VIDEO * 1W9DZ6B31 3/03 PRIME VIDEO * 1W04Q1TF0 and lastly PRIME VIDEO * 1I97B6RL2. They have confirmed the charges are not associated with our Amazon account. They have already issued a refund for 3 out of 8 charges. My concern is I did not authorize these charges, they can confirm they are not associated with my account, and they will not issue the remainder refunds. They know whats right and what's not. They are taking time out of my day on a Saturday, one of two days off I get to spend with my two children. They continue to waltz around my issue and redirect me to the bank. The bank has no way of validating these charges other then if they were Amazon or not. Amazon holds the ability to locate the charges and confirm they are not associated with my account. Which they've already done. They are dragging this on longer then it needs to be taking no regard of my precious time I get with my kids.



05/14/2022

On 5/13/2022 I saw a new charge on my debit card for $15.85 for Amazon's ************** that I had cancelled last month. I tried to contact the company to dispute it but their chat, email, and phone number were disabled, so there is no way to dispute the charge. I would like an immediate refund of the charge and just ********** to the audio books I have already paid for. I also do not want Amazon to charge me for this service again. When I cancelled the service, I was told that the ************** is free and the charge was for the one audio book per month. I do not want to order any more audio books; I just want to be able to listen to the books I have already paid for.

**Complaint Type:** Billing/Collection Issues    **Status:** Answered ❓

05/13/2022

Amazon continually attempts to force me into Prime Membership. It inundates my family with schemes and marketing to leverage my account into prime. Three times I had to demand a refund for auto enrollment in the past year. Additionally my email box and texts are filled with digital advertising to join prime student, when I Amazon informed me I am no longer eligible (I am a student with credentials). I want Amazon to stop charging me for Prime and stop pressuring my children to do the same. And if you are going advertise student prime to students, then sell prime to students no matter how long they are students for.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



05/12/2022

I have received an unknown charge to my account in the amount of $572.75 and have only used the service once with the understanding that it was a free service. I would like this charge to be removed from my account.



**Business Response**

05/15/2022

Hello ************************,

I'm Arun from Amazon.com. I'm writing in response to a complaint filed on your behalf by the Better Business Bureau BBB - I've provided the BBB with a copy of this message.

I've reviewed the complaint and understand your concern about the unknown charge.

I would like to inform you that we'll not be able to take any action on the unknown charges from our end.

However, the only option will be a charge dispute with the bank.

If there was any any other alternative, we would have surely helped you further.

Please feel free to contact us directly by replying to bbb@amazon.com if we can be of further assistance.

Regards,
Arun

Amazon.com
http://www.amazon.com



05/12/2022

I'm outraged how amazon has been charging my account without my permission. I don't know who subscriptions of various programs got downloaded into my account, but they refuse to give me credit, even though they admitted I never used these programs. I just spent over an hour on the phone talking to an amazon rep who then transferred me to a supervisor who agreed to give me credit near $100 for monthly charges back to last year, but said she had to transfer me to the prime video ***** I spent another 30 mins talking to another guy who said he was not going to credit me retroactively. I asked to speak to a manager and he hung up on the phone on me. I can't get through to anyone in the US. Every time you ask to speak to a supervisor now, they hang up on you.

05/12/2022

I purchased an item from Amazon a few months ago and somehow got signed up for Amazon Prime. I did not request this nor did I authorize a monthly payment of $15.98. This monthly charge continues showing on my credit card. I went on-line mid March to have the monthly charge end, but continue being billed. I was billed for the full month in March and was just billed for April.I did not request Amazon Prime and never authorized a monthly charge to my credit card.I'm wondering how Amazon is permitted to do this and what can I do to get them to stop billing me each month.



05/09/2022

Amazon made 2 unauthorized to my account that were resolved but ever since I've turned my transactions of and everyday throughout our the day Amazon attempts to charge my card when I've told them through chat that they're making unauthorized charges to my card I've tried to tell to stop but they won't..also I left my transactions on previously and they made another charge to my account that they deny ever happening..

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



05/06/2022

I have been charged for services I did not request and billed for an account that is not mine. I would like a refund of these charges.Amazon Music - Charge ID ********* - ************************** Music - Charge ID ********* - $8.57 December Prime duplicate charge IDs *********************** $13.93 for each charge January Prime duplicate charge IDs *********************** $13.93 for each charge April Prime duplicate charge IDs *********************** $16.08 for each charge I am due a refund from Amazon of $61.08

**Complaint Type:** Billing/Collection Issues    **Status:** Answered 

05/04/2022

Amazon Prime has start billing my **** Card $14.99 a month. I have not and do not want Amazon Prime.I have an account ****************** at Amazon setup without Prime and using my **** Credit Card ending in ****. For some reason Amazon has created another (according to them UNKNOWN email address and have somehow attached my Credit Card to this new account and are billing me $14.99 a month and will continue to **** me until I close out that new account. The problem is I cannot close this new account because I did not open it and do not know what it is.Amazon says they can see the charge is not coming from my ****************** account, they agree that is the account that I have the card setup on. But they claim there is NO Way from them to find out what account is charging the $14.99 each month to my card; they agree a charge is being made each month but they claim that there is NO Way they can find out where the charge is coming from, their computer posts a charge to my Credit Card each month but it does not tell them where the charge is coming from; since they do not know what account is charging the card they cannot stop the charges, and thus I will continue to be charged $14.99 every month.They also told me that if I close out my ****************** account it will not stop the $14.99 charge since the charge is not coming from my account.There is something wrong here! How can Amazon have a computer accounting system that does not let them know where charges they are putting on credit cards are coming from???It appears I am a test for them to start using people credit cards to rip off customers since all they can tell me is that they have a charge coming in and know it is not from my ****************** account and they cannot tell where the charge is coming from so there is not way to stop it and stick me with purchasing a service I cannot use since it is not on my account.Amazon is now starting to steal from customers.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Complaint Type:** Billing/Collection Issues    **Status:** Answered 

05/02/2022



I enrolled in Amazon prime free trial for a month and after a few days I was charged $10.61. I did not purchase anything during this time frame or acquire any services from them for me to be charged. I immediately canceled my prime membership sent a request for a refund and was told there was no issues with my account. I simply want reimbursed $10.61.

**Business Response**

05/04/2022

Hello ****,

I'm Vijay from Amazon.com. I'm writing in response to a complaint filed on your behalf by the Better Business Bureau BBB - I've provided the BBB with a copy of this message.

I've reviewed your complaint and I can understand the inconvenience caused due to the unknown charge of $10.61 on your account. I'm sorry about that.

I've checked your account and the subscriptions; I would like to confirm that this $10.61 charge is not towards your Prime Membership. Your account is still on active Prime Free Trial and is expected to be cancelled on May 17, 2022.

This $10.61 charge is towards Paramount+ Premium subscription which started as a one week free trial on April 17, 2022 and renewed to paid membership on April 24, 2022 once the free trial ended.

**Complaint Type:** Billing/Collection Issues    **Status:** Answered 

04/30/2022



Unauthorize charges to credit card ending # ****. 3/28/22 was charged $12,99 Amazon prime # ***MB9k31 about May 2 called Amazon. 4/28/22 was charged $14.99 Amazon prime # 1Q0SX5C60 May 30 called Amazon. Amazon account ****************** ************ ********** I called was told to dispute charge with my bank. I was told by using the prime charge number they know what account is unauthorizing using my card and the still are letting them do it, and it is against their policy to tell me who it is. I was told to stop these charges is cancel my credit card. It is a lot of work to cancel a credit card and reestablish all the automatic payments, it would be a lot easy for them to stop charging my credit card.

**Complaint Type:** Billing/Collection Issues    **Status:** Answered 

04/29/2022

AGAIN, AFTER 3 YEARS TRYING STOP AMAZON FROM CHARGING MY CREDIT CARD. I have not placed any orders or my husband ******************* have not place any others with Amazon. I have a charge of $16.37 dated 4/29/22and $191.05 dated 3/23/22, on my credit card and I am so tired of cancelling existing card. Like I mentioned to your representative, I do not have any applications for Amazon, therefore, you should not be charging my accounts. I am requesting that you ceased from processing any charge against my card.

**Complaint Type:** Billing/Collection Issues   **Status:** Answered 



04/29/2022

Amazon Prime is billing my credit card for non-existent subscription services. I had a Prime Account for groceries more than 5 years ago however cancelled it via the website and removed all payment methods. My cancellation was due to fraud charges by some unknown party/entity for ESPN channels and play subscriptions that I NEVER signed up for or received. Accordingly, both the account and the charges are fraudulent. I hate Amazon as it is **** with fraud. Additionally when I canceled my ill=fated account-I removed all payment methods/credit cards indicated on the defunct account to avoid the fraud. My credit card company instructed me to contact Amazon about the forced authorizations however it is impossible to contact Amazon to file a complaint unless you reactivate an email and verify an account with them. I will do no such thing as I do not want to deal with the prior cancelled account because you know..I cancelled it. In all, I want the charges to stop as well as get a contact number for those customers subjected to fraud by way of Amazon.

**Complaint Type:** Billing/Collection Issues   **Status:** Answered 

04/26/2022

I have been getting billed by Amazon for Prime services for a long while now without consent. I have tried to cancel this many times, and Amazon reps by phone and messaging have all REFUSED to help me regain access to the account (not accepting my password, won't let me change it, won't access my account for me, won't cancel services). I have been back and forth with them for MONTHS now, and they still REFUSE to help. I need the BBB's help to resolve this, and be reimbursed for the unauthorized billing, along with canceling the account, as I will never give them another ***** after this incident.



08/06/2021

Amazon keeps charging me for a Prime membership fee even though I never signed up for it, and I don't want. I have asked them to cancel it multiple times and turn off whatever setting is causing this, and still it appears. It has taken me so much time to cancel this charge each month.



09/25/2021

I have an Amazon Prime account which I use to be able to get free shipping. I had decided to cancel the account on the 14th of September, since I was not using it. I was sent a message that I would be refunded $13.90 in 3-5 business days. I checked the account on the 25th of September, with no refund. I called customer service and found that they charged my daughters card instead of mine. I remove my cards after 24 hours due to hacking. Customer service says they charged my daughter and then sent her the refund. The last time my daughter used Amazon was in April, which her card was also promptly removed. The only cards that show up on my account is my two cards. Why did Amazon charge someone who is not on the account and then refund money that was not theirs. When asked to speak to someone who is in charged, the CS rep stated you can go no further. I would like to have this resolved with public knowledge known. Amazon does not erase your cards when you remove them from the site.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



08/23/2021

I keep getting charged and pay for Amazon prime even though I canceled the service months ago both online and via phone call. I ordered a phone for my elderly father and it said "delivery due Thursayd...the delivery due Friday then delivery due Saturday and now it says delayed. It is a criminal money mongering gimmick to get people to pay inflated prices for speedy delivery. It is fraud and I want restitution. I canceled this service long ago. I also kept getting charged for Amazon music after canceling it. I am no longer being charged for that, however. They gave me a credit for false charges for that. Amazon is stealing millions. Unreal this is allowed to happen. Also...as an American English speaking person I would expect to call and talk to someone who speaks clear english...not the case with my Amazon experience.



08/17/2021

I signed up for a free trial at Amazon Prime Video and ended it before the free trial was up. I received a notice that the Prime Membership was paused on March 13,2021. But I started seeing charge of $5.99 on my March Credit Card dated Feb,March,April,June and July 18th each month Under Amazon Video. I contacted them and they said there were no such charges. I forwarded them scans of all the bills as well as the charges and of the membership being paused. I have tried to contact them for a confirmation of the documents, but they just send long emails with all the ways to call them with no mention of my claim.



08/02/2021

I just learned today that Amazon Prime has been double billing me. They opened an acct by my email and by my cell phone and both charged me $16.14/mo for at least 2 years. I also learned that they have been charging me for 3 video services that I never ordered and have not used: *****, *** and **** ***. I want a history of charges to these two accounts and want my money refunded. The person on the phone would only refund 3 months of charges. And they refuse to print my history. They only transferred me to the next person and I had to repeat the whole thing over and over. They do it to irritate customers. Very f'ed up of them. But they know what they're doing and they want to make it impossible to get info. If they are intelligent enough to double bill me, then they can produce the billing history so I know who much they've stolen from me.



07/18/2021

Every month Amazon takes 13.63 from my checking for a Amazon Prime membership. I canceled my prime membership months ago. I have to fight every month to get my money back. This month they charged me again 13.63.



07/13/2021

Charged $13.60 for Amazon Prime account without my permission. I do not want Amazon Prime, I did not request it, this $ was stolen from my account & not refunded immediately when requested.



07/07/2021

In June AMAZON selected me for a free Amazon prime trial without my knowledge. 30 days later my bank account was charged 12.99. I complained & a refund was issued. The same has occurred in July with am Amazon prime charge I never set up. I have tried to resolve this with customer service in June 2021 and now July 2021. I understand when trials are set up inadvertently but that's not the scenario. Please help investigate and uncover this free trial added without my permission



07/07/2021

I am getting charged for an Amazon Prime account that i did not authorize on my ***** Shop Your Way credit card. I was unaware I was being billed initially and I never signed up for this. I contacted the credit card company and they told me to resolve it with Amazon Prime. I contacted Amazon Prime and they removed the charge but I am still getting billed monthly. Amazon is aware of the account, so it exists, however, when I go online to cancel it there, the account does not exist. Amazon Account number: ********* My email: ******************** My phone number: *********** This is the phone number and email address that I used to contact Amazon with.



06/11/2021

I had a free trail with Amazon for their Prime service. On May 30, I checked on their website and was told the trail lasted for another 105 days. On June 1 I was charged $8.71 for Amazon Music, but I never authorized any subscription to Amazon Music or approved any other Amazon Music transaction. It looks like they lied about the free trail to charge me for their services.

06/10/2021

I noticed a charge on my bank statement from Amazon Prime for $13.88. I didn't k now what that charge was for so I called Amazon. I was told it was for my Amazon Prime subscription. I told her I didn't have/need a subscription since a friend added me to her account (as allowed by Amazon). I asked when did I start this subscription and was told July 2019!! The agent tried to be helpful, but after several holds I was told the only thing she could do was offer me 6 months refund. I asked to talk with a supervisor. I explained it all again to a gentleman who didn't seem to care. He asked if I realized how many times I had ordered getting the free Prime shipping rates? I told him I had been getting this because of my friend. I asked how did I subscribe? He said it was because I had clicked on the 1-2 day Prime ship rate. He also said I had been sent an email letting me know. I asked if he could provide a copy and he said no. I did not agree to this subscription and would like a total refund



06/04/2021

I had a Amazon prime account. I chose to cancel it and not renew it. But for the last 5 months it continues to charge different cards that are in my account. I have called each month and they continue to tell me that it will not try to renew for the next month. But each month it continues to do it. I am tired of calling each month to have it stoped. I have chosen "online" as well as had the customer service people I have spoken to each month stop it from doing it.



05/29/2021

In approximately early October of 2020 I was blocked from a consumer account with Amazon. I was upset about it initially but after about a month I gave in and just figured oh well, I will utilize other businesses for what I need. However, Amazon continued to charge for prime until today May 29th because I cancelled over the phone. Every month I was charged I called and spoke to their representatives who told me that they were escalating the issue to get my account back and they couldn't cancel because my account was on hold. Finally today May 29th, 2021 I was told by a representative that I had to dispute the charges with my bank. This is fraud and absolutely ridiculous that I have been charged for prime for 7 months when I kept getting told they were trying to fix knowing very well that nothing could be done. It's sad that a big corporation like Amazon is this way. I have times and dates of calls and also my bank statements showing charges if needed.

1
2
3
4
5
6



05/27/2021

In January of 2021 Amazon started charging my card for two memberships. 1/04/2021 – 13.90 1/12/2021 – 14.03 2/03/2021 – 13.90 2/12/2021 – 14.03. I caught this error in February and tried to cancel this membership and the second membership they said I had. 3/12/2021 – 14.03 This was the only charge. (This shouldn't have been charged at all) 4/07/2021 – 13.90 – They added back the account I canceled. (This has yet to be refunded) 4/12/2021 – Another 14.03 charge (This has been refunded) 5/12/2021 – Again another 14.03 charged for a canceled membership. (Agent today said they are refunding this) I am so tired of dealing with this company I need something done. Because no one that helps me does it right and I keep getting charged for services I'm not even using because I canceled them.

7
8
9
10
11
12
13



04/29/2021

On April 24, I found an offer in my Amazon account (which I was logged into at the time) offering me a free 30-day trial for Amazon Prime. I signed up for the free 30-day trial and then was immediately billed for it. I have contacted Amazon numerous times to attempt to resolve this and here is the litany of nonsense I have been told: 1. I have more than 1 Amazon account (not true) 2. I signed up on my phone and that's why it is not free (also not true--you can't sign up for prime on the mobile app) 3. I was not logged into my account when I clicked on the offer; had I been logged in I would not have been able to sign up (also not true) 4. There was a system error that offered me the free trial, so Amazon is not responsible for it All of the above is, of course, absolute nonsense and there is no way all of these things could be true at the same time. In addition, when speaking with Amazon, I have been interrupted, talked over, hung up on. They have also deleted chat records.

14
15
16
17



04/14/2021

15 Months of subscription Charges for Amazon Kids charged without consent. These Charges were never authorized and started auto charging a year after the children were gifted Amazon Fire tablets for Christmas. The Tablets required to be hooked up to an existing Amazon account to be activated and stated nothing about subscription charges. In addition the Subscription charges did not appear Order history or in Subscriptions. It only appears in Digital Orders. We make no digital order except a reoccurring Prime subscription so we had no reason to check this part of the site

18
19
20



04/10/2021

I was charged for a Amazon Prime yearly membership when I purchased something as a Guest on Amazon. I did not agree to any Prime membership. In fact, my Amazon account was old w incorrect information. Im on fixed income and this may cause my medication payments to bounce. Apparently this a a nationwide problem and Amazon does not stop and target vunerable people.

21
22
23
24
25
26



04/07/2021

We have charged more than 600 $ by Amazon for their Kindle Unlimited subscription for more than five years without knowing we had this service. Amazon never sent us any emails or notifications saying we subscribed to this service either. I recently found out about this charge and contacted Amazon immediately, but they said they can only refund the current month and asked us to contact bank for the refund of other charges. Unfortunately, the bank notified us they can only refund a few more months. After all these calls, I only got about 80 $ back. I feel very disappointed about Amazon customer service and think they cheated their customers money. We also feel very frustrated about this whole process between them and the bank. I sincerely hope you can help us solve this problem and recover our losses.

27
28

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



03/03/2021

On March 2, 2021, Amazon charged me for a service I did not sign up for. As always, the customer must file a formal complaint to speak to anyone at Amazon because Amazon thinks they're too good to communicate with their customers via email.

33.     Other subscribers to the Amazon Subscriptions left similar complaints on the Trustpilot website:[70]

★☆☆☆☆                                                  Apr 15, 2022

**absolutely disgusting**

absolutely disgusting, even when you cancel a subscription and get confirmation that's been cancelled they still take money from you and tell you it's still active, I cancelled it for a reason because I don't want it anymore.

★☆☆☆☆                                                  Mar 20, 2022

**Trick Subscribe Button for Amazon Prime**

So annoyed. I was clicking through the cart of amazon to work out what the shipping costs would be when an ad for Amazon Prime and their 'free shipping' (I mean, you pay for the subscription) came up. The button on the right said continue and I clicked on it before realising that in a small print underneath that it said 'with Amazon Prime' and that the button to just continue without buying Prime was in tiny blue font on the other side of the screen. I'm sure they purposely swapped around the visual signifiers to confuse people. It's just such a dogdy way to do business.

★☆☆☆☆                                             Updated Feb 25, 2022

**Amazon Prime subscription nightmare**

My prime subscription has been cancelled for 3 months and every month the bank charge keeps coming up. The consultants at customer care keep redirecting me to different places but I can't seem to stop the transaction. Canceling an account is the biggest rigmarole and there just doesn't seem to be a solution. I keep being redirected and it feels like it is set up in such a difficult way so that it makes it exhausting for you and eventually you just give up. But at the same time I don't even have access to the account anymore. What a mess.

★☆☆☆☆                                                  Jan 19, 2022

**Audible is charging my CC even tgh...**

Audible is charging my CC even tgh officially I do not have any acc with Audible I used to. BC my acc is not active I can not close it online. Now Audible is saying I have to shut down my Amazon acc to end the Audible subscription. If you call they do not even try to help just hang up .Nice Audible if I closew my Amazon acc I loose Prime Photos MUsic etc. Do not trust Amazon with your stuff

---

[70] *See* https://www.trustpilot.com/review/www.amazon.com?search=subscription&stars=1&stars=2; https://www.trustpilot.com/review/amazonprime.com?stars=1&stars=2; https://www.trustpilot.com/review/primevideo.com?stars=1&search=cancel (last accessed Jun. 14, 2022).

CLASS ACTION COMPLAINT                                      BURSOR & FISHER, P.A.
CASE NO.                                                         888 SEVENTH AVENUE
                                                             NEW YORK, NY 10019

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Jan 10, 2022

**I joined Amazon Prime 3 months ago ,all…**

I joined Amazon Prime 3 months ago ,all was good until i noticed they were not only taking one subscription but two,one from the uk and one from the USA apparently this is a common problem.
Trying to sort it out isa a nightmare, can,t find who i have to contact ,UK says it,s the USA,the USA says it,s UK,when i did manage to speak to a human she was in INDIA and i could not understand what she was saying.
I will never deal with Amazon again,



Dec 2, 2021

**I contacted the Amazon prime customer…**

I contacted the Amazon prime customer service chat option when my 30 day free trial stopped working after 2 days because it was trying to take money out of my account. Spoke with someone called Zee. Beyond angry and frustrated with the experience I had. Yes she was polite, very professional, I will give her that. But my god, no matter what I said she asked the same question over and over insinuating that the free trial not working was my fault because I don't have funds in my card. Hun it's a free trial!! I then was made to add a new card THREE TIMES because she did not listen when I told her I updated it the first time! She then told me my only option was to cancel the subscription and resubscribe and pay!! And that I'd have to wait on a refund which I was not going to believe after she had been extremely useless!! All of this way over one hour! She then magically fixed the issue which made me even angrier as she could've done that in the first place instead of insisting the only option was either update my card or cancelling and resubscribing! A simple 10 minute query turned into a one hour fiasco! Never again



A day ago

**Received false notification of effective date of increase & funds not returned**

I was sent an email by Amazon on Feb.18 stating that annual Prime subscription fee would be raised after March 25. Since my renewal date was March 20, I believed that my 2022 renewal would be at price pre-increase, $119 instead of $139. When I contested this charge, I was told to pay up or my subscription would be cancelled. I accepted this, but Amazon has been contesting my claim with my Visa credit account & Chase Bank refuses to reverse this charge.



A day ago

**Amazon is a scam**

Amazon is a scam. The no way to stop them charging you for the Prime membership. Cancelling does not work. They keep renewing it themselves.

 A day ago

**Amazon Prime**

Tried to phone Amazon prime as they've been charging my husband for it. He's been in hospital since January 2022. There is no monies in his account so I thought I will let Amazon Prime know that he won't be coming home, therefore to cancel it. I was on the phone for 34 minutes and still the operator couldn't get the email address down properly even using the phonetic alphabet. In the end I was screaming at him to put me onto a manager. So stressful which I don't need at present. He wouldn't and said a manager would phone me back in 15 minutes. Been over an hour now and no phone call. Well now they will have to sue him for the money as I can't afford it and I'm only sorting his things out as a friend as we've been separated 3 years. Cannot believe it took 34 minutes and still he couldn't get the email in the correct order. I'm surprised they run a business.

 2 days ago

**Being charged twice for an Amazon Prime...**

Being charged twice for an Amazon Prime subscription is not where it's at for me. Trying to get assistance is also a mission, so unfortunately I've had to cancel my subscription.

 7 days ago

**This whole amazon prime thing SHOULD be...**

This whole amazon prime thing SHOULD be called SCAM.. There is no part I need on amazon which supports amazon prime delivery, there is no free film on prime video, all which I want to watch are extra paid and prime gaming gives me constant errors so I can't claim anything. THEY EVEN CHARGE YOU FOR FREE TRIAL AND IF YOU CANCEL YOU WILL LOSE IT IMEDIATELLY!! What a joke

★☆☆☆☆ May 22, 2022

**Watch your checking account**

Watch your checking account! Amazon online is not complying with subscription cancelations. Second month I had to call them to cancel a subscription and on top of it all I was on a shared account with my wife's account. Are they stealing? Use your own judgement! Now 7-10 days to get a refund? Sure, Amazon gets rich off of false billing with bank interest holding on to yours and my money. I'm skeptical of Amazon policies and people friendly act. You should be aware of all activity in your account and hold Amazon accountable for prime benefits. 2 day max delivery has vanished. Another review....

★☆☆☆☆                                        Updated May 14, 2022

**Don't even trust amazon prime account…**

Don't even trust amazon prime account which they are promising and it will never
happens, when you call them they can say only to you sorry nothing else if you
wish to speak with their manager you have to wait like 2 hours if you're lucky they
might give you a call otherwise you have to call by your self again and that's why
Jeff made an fortunes on customers like us they don't really give a **** about you
the only thing matters them is your money nothing else.

★☆☆☆☆                                              Mar 24, 2022

**Bait and switch.l**

Signed up for their 30 day free trial. Was charged $8.20. I called and was told I
was not eligible for their 30 day free trial despite never having used them before. I
cancelled membership and am awaiting a refund. Takes them 5 seconds to take
the money out of my account, but 3-5 days to put back in. It was a bait and
switch. Very disappointing and a waste of time for me.


CB   **Colin Billington**
     ✎ 3 reviews

★☆☆☆☆                                              May 6, 2021

**Videos limited and access problems**

Could not access videos wanted to charge me all the time and was very
limited selection anyway. Also the number of steps to ==cancel== subscription was
ridiculous.


PL   **Pro loque**
     ✎ 5 reviews

★☆☆☆☆                                         Updated Apr 29, 2021

**prime video keep charging membership**

I though I did ==cancel== the subscription and then found out they still charged me
for the membership. They make it difficult to ==cancel== the membership. I have
removed my credit card from amazon as they can't be trusted.


PT   **Philippe Treacy**
     ✎ 1 review

★☆☆☆☆                                              Mar 16, 2021

**Impossible to ==cancel==**

Impossible to ==cancel==. Can't do it on the app you need to use your browser and
then when you click the ==cancel== membership button nothing happens and my
card still gets charged. When I went to contest the charge via a chargeback
they started charging my girlfriends credit card. Avoid at all costs.




 Feb 1, 2021

**Amazon Prime is rammed down the throat...**

Amazon Prime is rammed down the throat of anyone who logs in. There are many ways that anyone with one wrong click can end up with an Unwanted Prime account. It is made much more difficult to cancel this unwanted option. The cancellation page is buried down inside your account details. When you do reach it and select Cancel it does not cancel but offers to Keep this unwanted option. When you again opt to cancel it still does not cancel but again offers to keep this unwanted option. When you select to cancel for the 3rd time it still does not cancel for the next month. There seems to be no-way of Immediately cancelling an accidental/unwanted Prime membership! 1 click to accidentally get Immediate unwanted Prime membership. After going to your Account Details it's 3 clicks to be offered cancellation starting Next Month!

 Feb 1, 2021

**Very underhanded how they cojole you...**

Very underhanded how they cojole you into signing up & make it very difficult to cancel. It must be bordering on misleading consumers I think. A bit shameful to be honest how they do it.

 Jan 2, 2021

**Unwanted prime membership**

Ordered an item that came with free delivery only to find that I had been charged for prime membership. Despite the free postage outside of prime I was charged 50% of the monthly fee to cancel my 2 hour 'unused' prime membership. Complete rip off

 Dec 29, 2020

**Unwanted amazon prime**

After buying a item off amazon I find that a substription for amazon prime was taken from my bank account when I had not subscribed and it's not easy to cancel. I shall not be buying anything else from amazon disgusting

 Nov 18, 2020

**Very difficult to find on the site...**

Very difficult to find on the site where to cancel membership. This is obviously a cunning and deceptive method Amazon uses to prevent people cancelling their membership

WF   Will Fix
✎ 1 review

 Updated Nov 14, 2020

**This is how Amazon became one of the...**

This is how Amazon became one of the biggest foundation. You buy one item, could be simple like I did $16 thing. With no contract it took 5 monthly payments of Amazon prime then I worked on to cease it, no one click to cancel. I talked this issue out and found millions are falling in the same trap. Amazon guy see u in hell for stealing people's money.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mr Mc Donald**
✎ 13 reviews

★☆☆☆☆                                    Nov 3, 2020

**Be very careful with this service**

Be very careful with this sErvice. It seems that you are signed up for it
whatever you order on their website. I have had to cancel this service now 4
times and have decided not to order from Amazon any more as they hide the
fact they are signing you up fpr the service which isn't worth it anyway. It
seems whatever you do at checkout they decide to sign you up even if you
don't want it, BE CAREFUL !!!

**Rick Kelso**
✎ 1 review

★☆☆☆☆                                    Apr 7, 2020

**I don't know how I even became a member…**

I don't know how I even became a member of Amazon Prime. But I noticed
that I am being billed $12.99 for Amazon Prime. I called to cancel it and I get a
recording telling me that they are not answering the phone and I can do
business with them by logging into my account. Problem is how do I get
credited for the 2 months they billed me for?

**Freespeech1 June**
✎ 2 reviews

★☆☆☆☆                                    Updated Mar 5, 2020

**I clicked for 30 day free trial**

I clicked for 30 day free trial, couldn't stream the series I wanted, after 30
days they started debiting my card without advising me they'd signed me up
for paid membership! It's taken two days to cancel everything, I have asked
for money back, i will see! Surely that is illegal if you just start with the free
trial!!

**Charlotte**
✎ 3 reviews

★☆☆☆☆                                    Feb 19, 2019

**Disgusting**

Disgusting. The way Amazon confuses you into pressing agree to the free trial
and then makes it near on impossible for you to cancel it. Shame on you
Amazon

34.     Yet more unhappy subscribers left complaints in the comments of a YouTube video created to aid consumers in navigating the confusing Amazon Subscription cancellation process. Many were grateful to the video creator for explaining how to cancel where Defendant failed:[71]

> **Dråin Yöu** 2 months ago
> I'm having some trouble, mines doesn't give me the option to cancel it only gives me the option to update my settings. I accidently signed up for a free trial while ordering something and it wont let me cancel the subscription.

> **Chan Pei Sen** 4 months ago
> I want to cancel my amazon prime free trial but there is literally no option to do so. On the Manage Membership panel, mine only has the option to Update your Settings, whereas this video shows that I should have the option to Update, cancel and more. Can I get some help?

> **Knott Reel** 5 months ago
> Thanks for the great instructions. Like many of you I felt I was tricked into Prime. I tried three times to make a purchase and somehow Prime was attached and I didn't remember adding it. They shouldn't be allowed to take advantage of stupid people like me.

> **DeZeR** بزر 5 months ago
> They took money from me today and I did not know. But please can any one help me if it is possible to get my money back. Please.

> **Scropiotrus ASMR** 5 months ago
> I cancelled it and got charged! Wtf!!

> **borg386** 5 months ago
> I canceled mine 2 months ago and they continue to charge my card. This company is such a rip off!

> **Jasmin Blake** 7 months ago
> Thanks, Amazon are an unconscionable company who need to be investigated.  I am finding it confusing and pretty much impossible to cancel a service I never wanted but is set up on the website to be very easily tapped when selecting delivery options for other goods purchased.

> **Johnny Connelly** 8 months ago (edited)
> They bloody trick you onto it then make it impossible to find how to cancel,they are greedy.

**Johnny Connelly** 1 week ago (edited)
They bloody trick you onto it then make it impossible to find how to cancel,they are greedy.

**Mickey** 3 months ago
thats weird, I cancelled my prime trial but I just found out I've been charged for 4 months. I didn't use Amazon in those 4 months RIP

**Starfish_central** 3 months ago
Yesterday I went on Amazon to buy something and I was signed up to the Amazon Prime free trial even though I didn't want it!!! There was no option to buy the item without having to sign up for Amazon Prime!!!! Surely this cannot be legal? It puts me off from buying from Amazon with them doing this shady practice. I cancelled my free trial to Amazon Prime as soon as I had finished my purchase.

**snuppiioo1** 4 months ago
I got 'tricked' into it. Something like that should be criminal because i never wanted it, i don't use Amazon that much and they had booked money from my bank account for months and i didn't pay attention to it. Thanks for the help.

**Indira Cornejo Lima** 4 months ago
Hi. Thanks for the video, but it didn't worked out for me. In my account it is shown as I wasn't subscribed but when I checked my bank account, I can see Amazon is taking money from my bank. What should I do. I can afford it T.T

**Andi Sharku** 7 months ago
I got a free trial then ended it the next day and now 5 months later I just realized I've been paying for it on my dads credit card. Such a waste of money since I barely use Amazon.

**Violet** 7 months ago
I stopped my trial and they still charged me

---

[71] *See* https://www.youtube.com/watch?v=YUlGTOaHslM (last accessed Jun. 14, 2022).

**Scott Richards** 7 months ago
I wish it was as easy to cancel stuff as they make it to buy stuff .

**no commentary gaming** 8 months ago
It's so annoying how they trick you into doing the free trial and then make it so difficult to stop it

**M i s t a J** 8 months ago
Thank you sir it literally wouldn't let me cancel on my app

**remdrops** 9 months ago
thank you so much for this! english is not my first language so it made it really confusing when i checked out and clicked on the free shipping offer with prime. its so confusing but I'm definitely canceling right now!

**Teddy Bear** 9 months ago
Many thanks for this information and have now unsubscribed, tricked into subscribing, which they did once before. I did not know I was on Amazon free trial till an email came through. I am still fuming

**Janet Winslow** 10 months ago
Excellent. Very helpful. Not easy to find without your video. Thank you!

**Akuma** 1 year ago
I didn't even realize I bought it and I'm not sure if it canceled.

**Olusoga Adamo** 1 year ago
Thank you. I could not (for the life of me) see how to do this without your video - why so hard Amazon!!!!

**Will3116** 1 year ago
If you don't end your free trial subscription you will automatically start paying which is fucking stupid btw and for some reason I can't cancel mine and not even with this video's help which is fucking fantastic.

**Andrea Serrato** 1 year ago
Sometimes I think companies make it hard to un subscribe to their services... thank you for sharing this!!

35.     The above reviews are just a sampling of numerous negative reviews consumers have left regarding Defendant's Amazon Subscriptions and the unclear cancellation policies and confusing billing associated with the Subscriptions.  As discussed below, the above online consumer complaints reveal a widespread pattern of uniform unlawful conduct by Defendant, underscoring the artifice devised and employed by Defendant to lure and deceive millions of consumers into enrolling, and remaining enrolled, in their paid Amazon Subscription programs.

   **C.     Background On Relevant California And Oregon Law**

      **i.     California's Automatic Renewal Law**

36.     In 2010, the California Legislature enacted the Automatic Renewal Law (the "California ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600 (statement of legislative intent).  More recently, in 2018, California's Senate Bill 313 amended Section 17602 of the California ARL, adding new requirements meant to increase consumer protections for, among other things, orders that contain free trial and promotional pricing, and subscription agreements entered into online.

37.     The California ARL makes it "unlawful for any business making an automatic

renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1)  Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.  If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

> (2)  Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

> (3)  Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

38.     Section 17602(b) of the ARL further provides:

> A business that makes an automatic renewal offer or continuous service offer shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

Cal. Bus. & Prof. Code § 17602(b).

39.     Additionally, following the 2018 amendment to the California ARL, the updated

law requires e-commerce sellers, doing business in California, to allow online cancellation of auto-

renewing memberships or recurring purchases that were initiated online.  Specifically, Section

17602(c) provides:

> [A] consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service *exclusively online*, which may include

> a termination email formatted and provided by the business that a
> consumer can send to the business without additional information.

Cal. Bus. & Prof. Code § 17602(c) (emphasis added).  The updated California ARL also requires a seller who provides an automatic offer that includes a free gift, trial, or promotional pricing to notify consumers about how to cancel the auto-renewal before they are charged.  Sellers must also explain the price to be charged when the promotion or free trial ends.  If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain consumer consent to the non-discounted price prior to billing.  *Id.*

40.     Section 17601(a) of the California ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."  Cal. Bus. & Prof. Code § 17601(a).

41.     Section 17601(b) of the California ARL defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures:  (1) That the subscription or purchasing agreement will continue until the consumer cancels.  (2) The description of the cancellation policy that applies to the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.  (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if any."  Cal. Bus. & Prof. Code § 17601(b).

42.     Pursuant to Section 17601(c) of the California ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbol ls or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code § 17601(c).

43.     Finally, Section 17603 of the California ARL provides that where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent[,]"

---

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

48

the material sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business[.]"  Cal. Bus. & Prof. Code § 17603.

44.     As alleged below, Defendant's practices on the Amazon Platform systematically violate Sections 17602(a)(l), 17602(a)(2), and 17602(a)(3) of the California ARL.

## ii.   Oregon's Automatic Renewal Law

45.     In 2011, with the passage of Oregon's Senate Bill 487, the Oregon Legislature enacted the Automatic Renewal Law (the "Oregon ARL"), ORS 646A.292-646A.295, with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  ORS 646A.292 (statement of legislative intent).[72]

46.     The Oregon ARL makes it "unlawful for a person that makes an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (a)  Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual

---

[72] This intent is further underscored by the legislative history surrounding the ARL's enactment in Oregon:

> The Senate took final action on a bill [Senate Bill 487] this afternoon that will give consumers greater protection from getting trapped in cyclical automatic renewal agreements that can become expensive and burdensome. …

> "The problem with some automatic renewals is that consumers may think they're purchasing an item once or for a limited amount of time, but poorly disclosed automatic renewal clauses can cause financial hardship and headaches for consumers," said Senator Suzanne Bonamici (D-NW Portland/Washington Co.), chief sponsor of the bill. "Senate Bill 487 will provide consumers with valuable information regarding contact provisions that can potentially save them significant amounts of money."

> Several types of consumer contracts typically carry automatic renewal provisions, including newspaper and magazine subscriptions and home alarm services. Currently, many automatic renewal clauses are hidden in the fine print of an advertisement's offer. …

> "Clear and easy to understand disclosures are very basic measures of consumer protection," said Senate Majority Leader Diane Rosenbuam (D-Portland). "This is a simple bill that will help prevent consumers from signing up for more than they bargained for."

Oregon Legislative News Release, *Bill will prohibit misleading and costly automatic contract renewals: Senate takes final vote on SB 487, consumer protection victory for Oregonians* (Jun. 10, 2011), *available at* https://www.oregonlegislature.gov/senatedemocrats/Documents/sdo_061011.pdf.

proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

(b)  Charge the consumer's credit or debit card or payment account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms.

(c)  Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the offer includes a free trial, the person shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

ORS 646A.295(1)(a)-(c).  The requirements of 646A.295(1)(a)-(b) "must be met prior to the completion of the initial order for the automatic renewal or continuous service[,]" but the requirements of 646A.295(1)(c) "may be fulfilled after completion of the initial order." 646A.295(4).

47.     Additionally, Section 646A.295(2) of the Oregon ARL further provides:

A person making automatic renewal or continuous service offers shall provide a toll-free telephone number, electronic mail address, a post-office address only when the person directly bills the consumer, or another cost-effective, timely and easy-to-use mechanism for cancellation that must be described in the acknowledgment required by subsection (1)(c) of this section.

ORS 646A.295(2).

48.     The term "Person" as used in ORS 646A.295 means "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity except bodies or officers acting under statutory authority of this state or the United States."  ORS 646.605; *see also* ORS 646A.293(4) ("'Person' has the meaning given that term in ORS 646.605[.]").  Defendant is a "person" under this definition.

49.     Section 646A.293(1) of the Oregon ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."  Section 646A.293(3) similarly

defines "Continuous service" as "a plan or arrangement in which a paid subscription or purchasing agreement continues until the consumer cancels the service."  The Amazon Subscriptions constitute "automatic renewal" and/or "continuous service" plans under these definitions.

50.     Pursuant to Section 646A.293(5) of the Oregon ARL, "Offer terms" means "the following clear and conspicuous disclosures:  (a) That the subscription or purchasing agreement will continue until the consumer cancels.  (b) The description of the cancellation policy that applies to the offer.  (c) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal or continuous service plan or arrangement, and, if the amount of the charge will change, the amount to which the charge will change, if known.  (d) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (e) The minimum purchase obligation, if any."  ORS 646A.293(5)(a)-(e).

51.     Section 646A.293(2) of the Oregon ARL defines the term "Clear and conspicuous," in relevant part, as "in larger type than the surrounding text, or in contrasting type, font or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

52.     Finally, the Oregon ARL provides that where "a person sends goods, wares, merchandise or products to a consumer under a continuous service agreement or pursuant to an automatic renewal of a purchase without first obtaining the consumer's affirmative consent as required in [ORS 646A.295(1)], the goods, wares, merchandise or products shall for all purposes be deemed an unconditional gift to the consumer who may use or dispose of them in any manner the consumer sees fit without any obligation to the person including, but not limited to, requiring the consumer to ship, or bear the cost of shipping, any goods, wares, merchandise or products to the person."  ORS 646A.295(5).

53.     As alleged below, Defendant's practices on the Amazon Platform systematically violate Sections 646A.295(1)(a), 646A.295(1)(b), 646A.295(1)(c), and 646A.295(2) of the Oregon ARL.  Defendant's noncompliance with the Oregon ARL is a direct violation of UTPA.  *See* ORS

646.608(1)(ttt) ("(1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following: … (ttt) Violates a provision of ORS 646A.295 (Prohibited actions).").

### iii.   Oregon's Free Offer Law

54.     In 2011, the same year the Oregon ARL was enacted[73], the Oregon Legislature also passed Senate Bill 292, thereby enacting the Free Offer Law ("FOL"), ORS 646.644, which prohibits businesses from imposing financial obligations on consumers who accept a free offer unless that offer complies with disclosure, consent, and billing information requirements.[74]

55.     For the purposes of the FOL, a "Free offer" means, in relevant part, "an offer of goods or services without cost[] … to a consumer that, if accepted, causes the consumer to incur a financial obligation for[, among other things] … [e]nrollment in a membership, subscription or service contract as a result of accepting the offer."  ORS 646.644(1)(e)(A)(iii).  Defendant's offers for free trials to the Amazon Subscriptions, which are automatically converted to paid subscriptions upon expiration of the trial period without further authorization sought from or obtained by consumers, constitute "free offers" plans under this definition.

56.     The FOL prohibits a person from "mak[ing] a free offer to a consumer, or impos[ing] a financial obligation on the consumer as a result of the consumer's acceptance of a free offer, unless the person provides the consumer with underline clear and conspicuous information regarding the terms of the free offer before the consumer agrees to accept the free offer, including[, in relevant part,] at a minimum:"

>       (a)  Identification of all … enrollments in a membership, subscription
>       or service contract, that the consumer will receive or incur a financial
>       obligation for as a result of accepting the free offer;

---

[73] In fact, the Oregon ARL and the FOL were considered during the same legislative session and as part of the same legislative agenda.  *See* Oregon Legislative News Release, *Bill will prohibit misleading and costly automatic contract renewals: Senate takes final vote on SB 487, consumer protection victory for Oregonians* (Jun. 10, 2011), *available at* https://www.oregonlegislature.gov/senatedemocrats/Documents/sdo_061011.pdf.

[74] *See id*. ("The Senate []concurred in final amendments for SB 292 this morning, legislation that prevents sellers from imposing cumbersome financial obligations on consumers who sign up for 'free trial offers.'")

(b)  The cost to the consumer of any financial obligation the consumer will incur if the consumer accepts the free offer, including any fees or charges;

(c)  Any requirement[] … that the consumer take affirmative action to reject the free offer and instructions about how the consumer is to indicate the consumer's rejection of the free offer;

(d)  A statement[] … that by accepting the free offer, the consumer will become obligated for … enrollment in a membership, subscription or service contract, unless the consumer takes affirmative action to cancel the free offer or otherwise reject … the enrollment in a membership, subscription or service contract;

(e)  … [T]he consumer's right to cancel the free offer using procedures specifically identified for that purpose that, at a minimum, enable the consumer to cancel by calling a toll-free telephone number or to cancel in a manner substantially similar to that by which the consumer accepted the free offer;

(f)  The time period during which the consumer must cancel in order to avoid incurring a financial obligation as a result of accepting the free offer; [and]

(f)  If applicable, the consumer's right to receive a credit on goods or services received as a result of accepting the free offer when the goods or services are returned or rejected, and the time period during which the goods or services must be returned or rejected for the purpose of receiving a credit[.]

ORS 646.644(2)(a)-(g) (emphasis added).

57.     Pursuant to ORS 646.644(1)(c), "Clear and conspicuous information" means "language that is readily understandable and presented in such size, color, contrast and location, or audibility and cadence, compared to other language as to be readily noticed and understood, and that is in close proximity to the request for consent to a free offer."

58.     Additionally, subsection (4) of the FOL further provides:

A person may not impose a financial obligation on a consumer as a result of the consumer's acceptance of a free offer unless the consumer's <u>affirmative consent</u> to the terms of the free offer as set forth in subsection (2) of this section is obtained.

ORS 646.644(4) (emphasis added).

59.     Under ORS 646.644(1)(a), the FOL defines the term "Affirmative consent" as "a

consumer's agreement to incur a financial obligation as a result of accepting a free offer, or to provide the consumer's billing information, given or made in the manner specifically identified for the consumer to indicate the consumer's agreement." ORS 646.644(1)(a).

60.     Subsection (5) of the FOL provides:

> A person that makes a free offer to a consumer may not fail or refuse to cancel the free offer if the consumer has used, or made reasonable efforts to attempt to use, one of the procedures required by subsection (2)(e) of this section.

ORS 646.644(5).

61.     Pursuant to subsection (6) of the FOL, "[a] person who violates a provision of this section engages in an unlawful practice subject to enforcement and penalty under … 646.605 (Definitions for ORS 336.184 and 646.605 to 646.652)[.]" ORS 646.644(6); *see also* ORS 646.608(1)(sss) ("(1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following: … (sss) Violates a provision of ORS 646.644 (Free offer).").

62.     As alleged below, Defendant's practices on the Amazon Platform systematically violate the FOL pursuant to ORS 646.644(2) and ORS 646.644(4). Defendant's noncompliance with the FOL is a direct violation of UTPA. *See* ORS 646.608(1)(sss).

**D.     Defendant's Business: The Amazon Subscription Enrollment Process**

63.     At all relevant times, Defendant offered, via the Amazon Platform, various Amazon Subscriptions for access to exclusive Amazon content, products, and/or services on a contract or fee basis. The Amazon Subscriptions are offered on a recurring basis for monthly and/or yearly renewal terms, and all plans automatically renew at the end of the defined renewal term unless the subscriber cancels. For example, when customers sign up for Amazon Prime on a free trial basis, at the end of the initial one-month trial period, their subscriptions are converted to paid subscriptions and charged the full amount, currently $14.99, for the next month, and every month thereafter if they do not cancel. Similarly, customers enrolled for the monthly Amazon Music Unlimited Subscription on a free trial basis are, after the initial trial period, automatically charged the full standard monthly rate of $9.99 for the subsequent month, and every month thereafter if

they do not cancel.  Likewise, customers enrolled for the monthly Prime Video Subscription on a free trial basis are, after the initial one-month term, automatically charged the full standard monthly rate for the subsequent month, and every month thereafter if they do not cancel.  After the initial trial period ends, customers similarly enrolled in a free trial subscription of Audible are also automatically charged the full standard monthly rate for the subsequent month, and every month thereafter if they do not cancel.[75]  Defendant's Amazon Subscriptions constitute automatic renewal and/or continuous service plans or arrangements for the purposes of California's ARL, *see* Cal. Bus. & Prof. Code §§ 17601(a), and Oregon's ARL, *see* ORS 646A.293(1), (3).

64.     To sign up for one of Defendant's Amazon Subscriptions, the consumer must first select a program.  From the Amazon Platform, prospective subscribers can review features of – and find links to the individual enrollment webpages for – each of Defendant's subscription offerings, including the Amazon Subscriptions at issue.

65.     Consumers can sign up for one of Defendant's Amazon Subscription plans through the Amazon Website or, in some cases, the Amazon Apps.  Defendant automatically enrolls customers who purchase a paid Amazon Subscription or free trial via the Amazon Platform in their chosen Amazon Subscription program going forward, by default.  In addition, customers may sign up for some or all of the Amazon Subscriptions on a free-trial basis for a limited time. Nevertheless, customers that enroll in a free trial, like those that sign up for a paid subscription, must provide Defendant their payment information at the time of enrollment.  Customers' free trial subscriptions automatically convert to paid monthly subscriptions at the end of the trial period, at which point those users are also enrolled by Defendant in their chosen paid Amazon Subscription program and their Payment Methods are automatically charged by Defendant on a recurring monthly or yearly basis in the amount of the full, promotional, or discounted rate associated with that program, continuing indefinitely until the customer takes affirmative steps to cancel.

---

[75] The enrollment process for Defendant's monthly and annual subscription offerings for Amazon Prime Video Channels, Amazon Prime Book Box, Amazon Kids+, Kindle Unlimited, ComiXology Unlimited, Amazon Subscription Boxes, Blink Subscriptions, and Amazon Photos is substantially similar to the above examples.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

55

66.     The enrollment process for each Amazon Subscription at issue is substantially the same, regardless of the medium used.  In general, after selecting one of the Amazon Subscriptions, those navigating the enrollment process on the Amazon Website are directed to a final webpage (the "Checkout Page"), where prospective subscribers are prompted to input their payment information and then invited to complete their purchase.[76]  For the purposes of the California and Oregon ARL and this Complaint, the "relevant portion of the Checkout Page" refers to the text of that portion of the Checkout Page that appears "in visual proximity … to the request for consent to the offer" (Cal. Bus. & Prof. Code § 17602(a)(1); ORS 646A.295(1)(a)), which in this case pertains to the text nearby the final yellow button that customers must press in order to complete the checkout process.

67.     By way of example, when a consumer signs up for a free trial of Amazon Prime via his or her computer web browser, the "relevant portion of the Checkout Page" refers to the disclosures in the block of text immediately below the "Start your 30 day free trial" button (for free trials, as of at least approximately November 2021[77]) or the "Activate Prime benefits" button (for straight-to-paid Prime subscriptions, as of June 9, 2022), i.e., the "request for consent" (red boxes added to images for emphasis):[78]

---

[76] Defendant requires basic users to register or create an account in order to utilize features on the Amazon Platform, so prospective subscribers to any of the Amazon Subscriptions must either create an Amazon account or "sign in" to a preexisting Amazon account before they can reach the Checkout Page.

[77] Note that, following November 2021 (i.e., the approximate date of the exemplar free trial Amazon Prime Checkout Page shown below, which was captured as a screenshot from Defendant's website), Defendant raised the full standard monthly renewal price associated with Amazon Prime from $12.99 per month to $14.99 per month.  The new price point went into effect for new subscribers on February 25, 2022, and after March 25, 2022 for then-current Prime members.  Otherwise, the Checkout Page for a free trial to Amazon Prime remains substantially and substantively unchanged as of the date of this filing.

[78] Defendant also occasionally offers trial subscriptions at a promotional price for a limited period of time.  For instance, at least as of November 15, 2021, consumers who subscribed to Prime through Defendant's website were offered an "Amazon Prime One Week Trial for only $1.99" that, after one week, will automatically renew at the full standard rate of $12.99 per month.  On this version of the Amazon Prime Checkout Page, the final yellow checkout button reads "Try Prime[,]" with the following text appearing beneath that button:

> By signing up, you agree to the <u>Amazon Prime Terms</u> and authorize us to charge default payment method or another payment method on file. **After your One-Week $1.99 Trial of Amazon Prime, your Amazon Prime membership continues for $12.99/month until cancelled. If you do not wish to continue for $12.99/month + any taxes, you may cancel any time by visiting Your Account.** For customers in Hawaii, Puerto Rico, and Alaska please visit the <u>Amazon Prime Shipping Benefits</u> page to check various shipping options.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

(Bolding in original, underlining added to denote hyperlink).  Of note, beginning in February 2022, Defendant raised the full standard renewal price associated with Amazon Prime to $14.99 per month or $139 per year.

1

2

### *Amazon Prime Checkout Page – Free Trial Subscription*

3

4

5

6

7

8

9

10

11



12

13

### *Amazon Prime Checkout Page – Straight-to-Paid Subscription*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

68.     Similarly, the relevant portion of the Checkout Page for a free trial subscription to Amazon Music Unlimited refers to the block of text immediately below the "Sign-up and pay" button (red markings added for emphasis):[79]



---

[79] Although, as demonstrated in the varying screenshots above, Defendant has altered the text featured on the Amazon Music Unlimited Checkout Page from time to time, in all cases the relevant portion of the Checkout Page refers to the block of text in immediate proximity to the yellow button that reads "Sign-up and pay." The top version listing a $7.99 monthly renewal rate was captured from the Amazon Website on or around November of 2021. The enlarged bottom version listing a $9.99 monthly renewal rate was captured from the Amazon Website on or around June 14, 2022. In all cases, the relevant portion of the Amazon Music Unlimited Checkout Page fails to adequately disclose the automatic renewal terms.

69.     The layout and text of the Checkout Pages for each of the other paid Amazon Subscriptions (including, without limitation, Amazon Prime Video, Amazon Prime Video Channels, Amazon Prime Book Box, Amazon Kids+, Kindle Unlimited, Audible, ComiXology Unlimited, Amazon Subscription Boxes, Amazon Photos, and any other paid Amazon Subscription) is aesthetically and functionally similar to the Checkout Pages for Amazon Prime and Amazon Music Unlimited shown above.[80]  In all cases, the relevant portion of the Checkout Page fails to adequately disclose the automatic renewal terms associated with Defendant's Amazon Subscriptions in the manner required by law.

70.     Regardless of how the consumer subscribes (whether via the Amazon Website, on either its desktop or mobile format, or through the Amazon App(s)), and irrespective of which particular Amazon Subscription or of which specific plan the subscriber selects (whether for a monthly or annual renewal term, or for a free trial, straight-to-paid, or discounted-rate student or family subscription), Defendant fails to disclose the full terms of its auto-renewal programs either before or after checkout, and it never requires the individual consumer to read or affirmatively agree to any terms of service, *i.e.*, by requiring consumers to click a checkbox next to the automatic renewal offer terms before consumers complete the checkout process and submit their orders for their Amazon Subscriptions.  Consequently, Defendant uniformly fails to obtain any form of consent from – or even provide effective notice to – their subscribers before charging consumers' Payment Methods on a recurring basis.

**E.     Defendant Violates California And Oregon Law**

71.     At all relevant times, Defendant failed to comply with California's and Oregon's ARL in three core ways: (i) Defendant failed to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled, in violation of California's ARL under

---

[80] Although Defendant has, from time to time, altered the text featured on the Amazon Subscription Checkout Pages, in all cases the relevant portion of the Checkout Page refers to the block of text immediately below the final yellow button that a subscriber must click in order to complete the checkout process, which, in the above examples, reads "Start your 30 day free trial," "Try Prime," and "Sign-up and pay."  As another example, the final yellow checkout button featured on the version of the Audible Checkout Page that appeared on Defendant's Website on or around October 29, 2021, reads "$0.00 Unlock Free."

Section 17602(a)(1) and Oregon's ARL under Section 646A.295(1)(a); (ii) Defendant charged Plaintiffs' and Class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of California's ARL under Section 17602(a)(2) and Oregon's ARL under Section 646A.295(1)(b); and (iii) Defendant failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of California's ARL under Section 17602(a)(3) and Oregon's ARL under Section 646A.295(1)(c).  The acknowledgment also fails to disclose a toll-free telephone number or describe another cost-effective, timely and easy-to-use mechanism for cancellation, and in fact Defendant makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Amazon Subscriptions, in violation of California's ARL under Section 17602(b) and Oregon's ARL under Section 646A.295(2).

> i. **Defendant Fails To Clearly And Conspicuously Present The Amazon Subscription Offer Terms Before The Subscription Agreement Is Fulfilled And In Visual Proximity To The Request For Consent To The Offer.**

72.     First, the relevant portion of the Checkout Page for each of the Amazon Subscriptions does not present the complete automatic renewal "offer terms[,]" as defined by Cal. Bus. & Prof. Code § 17601(b) and ORS 646A.293(5), in violation of Section 17602(a)(1) of the California ARL and Section 646A.295(1)(a) of the Oregon ARL.  Specifically, although the Checkout Pages for the Amazon Subscriptions explains that by signing up the consumer authorizes Defendant to charge his or her Payment Method after the free trial ends and that the subscription will continue until cancelled, a reasonable consumer would find that statement unclear in regards to whether formal cancellation is required in order to stop Defendant from automatically charging renewal fees to customers' Payment Methods on a recurring basis.  Moreover, this term appears *beneath* the yellow "final checkout" button (*i.e.*, the request for consent featured on any Amazon Subscription Checkout Page), which is *not* the portion of the Checkout Page with which the ARL is concerned, as reasonable consumers do not typically read past the final checkout button.  By contrast, the portion of each Checkout Page that is in "visual proximity" to the request for consent

is utterly silent as to the recurring nature of the Amazon Subscriptions and their associated automatic renewal fees.  Moreover, the text featured beneath the final checkout button of each Checkout Page is in smaller type than – and is *not* presented in contrasting font or color to – the surrounding text, and it is not set off from the surrounding text of the same size by any symbols or other marks in a manner that clearly calls attention to the language.  In other words, the disclosure was presented in such a way that it could be, and was, easily overlooked, and is therefore not "clear and conspicuous" as defined by Section 17601(c) of the California ARL and Section 646A.293(2) of the Oregon ARL.  As such, with respect to each of the Amazon Subscriptions, Defendant fails to adequately disclose "[t]hat the subscription or purchasing agreement will continue until the consumer cancels" in the manner required by statute.  *See* Cal. Bus. & Prof. Code §§ 17601(b)(1), 17602(a)(1); ORS 646A.293(5)(1), 646A.295(1)(a).

73.     For the same reasons, with respect to members of the Oregon Class that initially enrolled in a free trial to any of the Amazon Subscriptions (as opposed to a straight-to-paid subscription), Defendant's missing, incomplete, inconspicuous, or otherwise inadequate pre-checkout disclosures as described in the preceding paragraph also constitute violation of the FOL under ORS 646.644(2)(a) and (d) in that Defendant failed to provide Plaintiff and other free trial subscribers with "clear and conspicuous information regarding the terms of the free offer before the consumer agrees to accept the free offer, including … (a) Identification of all … enrollments in a membership[ or] subscription … that the consumer will receive or incur a financial obligation for as a result of accepting the free offer; [and] (d) A statement[] … that by accepting the free offer, the consumer will become obligated for … enrollment in a membership[ or] subscription …, unless the consumer takes affirmative action to cancel the free offer or otherwise reject … the enrollment in a membership[or] subscription[.]"  ORS 646.644(2)(a), (d).

74.     Similarly, the relevant portion of the Checkout Pages for the Amazon Subscriptions violate the California and Oregon ARL because they do not adequately disclose the recurring amount to be charged to the subscriber's Payment Method each billing period.  For instance, the Amazon Prime Checkout Page shown above, *see supra* (screenshot of Prime free trial Checkout

Page, at top of page), provides that subscribers will be charged $12.99 or $14.99 per month (depending on when the subscriber enrolled) after the free trial period ends, that term appears *beneath* the yellow "final checkout" button (*i.e.*, the request for consent featured on any Amazon Subscription Checkout Page).[81]  Likewise, the Amazon Music Unlimited Checkout Page shown above, *see supra* (screenshots of Music Unlimited Checkout Page), provides that subscribers will be charged $7.99 or $9.99 per month (depending on when the subscriber enrolled) after the free trial period ends, which again appears *beneath* the yellow final checkout button.  However, as explained above, the presentation of terms in this part of the Checkout Page beneath the checkout button is not the "visual proximity" that the ARL requires, *see* Cal. Bus. & Prof. Code § 17602(a)(1); ORS 646A.295(1)(a), and is therefore *not* the portion of the Checkout Page with which the ARL is concerned.  As above, the text appearing *above* the final checkout button on the Amazon Prime Checkout Page is utterly silent as to the recurring amounts to be charged following enrollment and/or the end of the trial period.  Thus, with respect to Amazon Prime at least, Defendant fails to provide notice of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known[,]" *see* Cal. Bus. & Prof. Code § 17601(b)(3); ORS 646A.293(5)(c), in violation of Section 17602(a)(1) of the California ARL and Section 646A.295(1)(a) of the Oregon ARL.

75.     For the same reason, with respect to members of the Oregon Class that initially enrolled in a free trial to any of the Amazon Subscriptions (as opposed to a straight-to-paid subscription), Defendant's missing, incomplete, inconspicuous, or otherwise inadequate pre-checkout disclosures as described in the preceding paragraph also constitute violation of the FOL under ORS 646.644(2)(b) in that Defendant failed to provide Plaintiff and other free trial

---

[81] Moreover, at the time of Plaintiff Nacarino's enrollment in a free trial to Amazon Prime in or around late 2019 or early 2020, the recurring monthly price listed on the Amazon Prime Checkout Page is $12.99.  However, as discussed below, the *actual* recurring monthly price charged to Ms. Nacarino's and other California consumers' Payment Methods in connection with Amazon Prime at that time was $14.09, which includes the full membership fee ***and applicable fees and taxes***.  Thus, even had this required automatic renewal offer term been conspicuously disclosed in the Checkout Page (it was not), the disclosure as written provides false information, and Ms. Nacarino and California consumers still would not have been placed on notice of the actual recurring price to be charged in connection with Amazon Prime.

subscribers with "clear and conspicuous information regarding … [t]he cost to the consumer of any financial obligation the consumer will incur if the consumer accepts the free offer, including any fees or charges[.]"  ORS 646.644(2)(b).

76.     For each of the Amazon Subscriptions, Defendant also fails to present a complete "description of the cancellation policy that applies to the offer[,]" *see* Cal. Bus. & Prof. Code § 17601(b)(2); ORS 646A.293(5)(b), in violation of California's and Oregon's ARL.  For instance, with respect to cancellation, the relevant portion of the Checkout Page for Amazon Music Unlimited states: "Cancel renewal any time in by visiting Your Amazon Music Settings." Similarly, the relevant portion of the Amazon Prime Checkout Page states: "you may cancel any time by visiting Your Account."  And the relevant portion of the Audible Checkout Page merely directs subscribers to "Cancel anytime."  The Checkout Pages for the other Amazon Subscriptions at issue provides substantially the same disclosure(s) regarding the basic ability to affect cancellation.  However, the Checkout Pages for the Amazon Subscriptions contain no explanation of *how* to cancel.  For instance, the Checkout Pages do not mention that, in order to cancel, subscribers must find and click a "Manage Membership" button, and be "redirected to Prime Central where you'll want to select Update, cancel, and more and follow the on-screen instructions," as is set forth elsewhere in the Amazon Website.[82]  The Checkout Pages also fail to place subscribers on notice that, in order to receive a refund upon cancellation, only "Paid members who haven't used their benefits are eligible for a full refund of the current membership period," and they must cancel their Amazon Subscriptions "within 3 business days of signing up or converting from a free trial to a paid membership" to obtain a refund, as is also set forth elsewhere in the Amazon Website.[83]  Moreover, Defendant does not specify anywhere on the Checkout Pages that customers must "notify [Amazon] before a charge that [they] want to cancel or do not want to auto renew" in order to avoid being automatically renewed and billed for the following renewal

---

[82] https://www.amazon.com/s?k=how+to+cancel+prime&crid=33FPBJ6XUBLI4&sprefix=how+to
+cancel+prime%2Caps%2C151&ref=nb_sb_noss_1.

[83] https://www.amazon.com/gp/help/customer/display.html?ref_=help_search_1-
1&nodeId=G2B9L3YR7LR8J4XP&qid=1635538830941&sr=1-.

term, as do terms set forth on other pages of Defendant's website.[84]  Yet, prior to checkout, Defendant was obligated by law to place consumers on notice of these aspects of Defendant's cancellation policy in accordance with California's and Oregon's ARL, each of which requires that companies provide such information "in visual proximity … to the request for consent to the [automatic renewal] offer."  Cal. Bus. & Prof. Code § 17602(a)(1); ORS 646A.295(1)(a). However, Defendant failed, and continues to fail, to satisfy that requirement.

77.     For the same reason, with respect to members of the Oregon Class that initially enrolled in a free trial to any of the Amazon Subscriptions (as opposed to a straight-to-paid subscription), Defendant's missing, incomplete, inconspicuous, or otherwise inadequate pre-checkout disclosures as described in the preceding paragraph also constitute violation of the FOL under ORS 646.644(2)(e), (f), and (g) in that Defendant failed to provide Plaintiff and other free trial subscribers with "clear and conspicuous information regarding … (e) … the consumer's right to cancel the free offer using procedures specifically identified for that purpose that, at a minimum, enable the consumer to cancel by calling a toll-free telephone number or to cancel in a manner substantially similar to that by which the consumer accepted the free offer; (f) [t]he time period during which the consumer must cancel in order to avoid incurring a financial obligation as a result of accepting the free offer; [and] (g) … the consumer's right to receive a credit on goods or services received as a result of accepting the free offer when the goods or services are returned or rejected, and the time period during which the goods or services must be returned or rejected for the purpose of receiving a credit[.]"  ORS 646.644(2)(e)-(g).

**ii.     <u>Defendant Fails To Obtain Consumers' Affirmative Consent To The Offer Terms Associated With The Amazon Subscriptions.</u>**

78.     Second, with respect to each of the Amazon Subscriptions, Defendant does not at any point during the checkout process require consumers to read or affirmatively agree to any terms of service associated with their Amazon Subscriptions, *e.g.*, by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms to complete the checkout process.

---

[84] *Id.*

Accordingly, when Defendant automatically renews customers' Amazon Subscriptions, Defendant charges consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of California's ARL under Cal. Bus. & Prof. Code § 17602(a)(2) and Oregon's ARL under ORS 646A.295(1)(b).

79.    For the same reason, with respect to members of the Oregon Class that initially enrolled in a free trial to any of the Amazon Subscriptions, Defendant's missing, incomplete, inconspicuous, or otherwise inadequate pre-checkout disclosures as described in the preceding paragraph also constitute violation of the FOL under ORS 646.644(4) in that Defendant "impose[d] a financial obligation on [Plaintiff Daly and other free trial subscribers in Oregon] as a result of the[ir] acceptance of a free offer [without first obtaining] the[ir] affirmative consent to the terms of the free offer as set forth in [ORS 646.644(2)]."  ORS 646.644(4).

### iii.    Defendant Fails To Provide A Post-Checkout Acknowledgment That Clearly And Conspicuously Discloses The Required Amazon Subscription Offer Terms.

80.    Finally, after Plaintiffs and the members of the proposed Classes and Subclass subscribed to one of Defendant's Amazon Subscriptions, Defendant sent to Plaintiffs and the Class email follow-ups regarding their purchases (the "Acknowledgment Emails").

81.    By way of example, consumers who enroll in Amazon Prime receive an email from Defendant upon completion of the checkout process.  The subject line of the Acknowledgment Email Defendant sent to Amazon Prime subscribers (the "Amazon Prime Acknowledgment Email") stated: "[Subscriber Name], Welcome to Amazon Prime! Enjoy the best of shopping and entertainment."  The body of the Amazon Prime Acknowledgment Email contained the following text and images (red boxes added to emphasize relevant terms):

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



82.   Similarly, the subject line of the Acknowledgment Email that Defendant sends to consumers who enrolled in a straight-to-paid Amazon Music Unlimited Subscription (the "Amazon Music Unlimited Acknowledgment Email") states: "Welcome to Amazon Music Unlimited[.]"  The body of the Email contained the following text and images (red box added to emphasize relevant terms):



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    83.    Likewise, when consumers sign up for a *free trial* subscription to Amazon Music

17 Unlimited (rather than a straight-to-paid subscription, as shown in the example above), Defendant

18 sends subscribers a nearly identical Acknowledgment Email featuring substantially the same

19 disclosures, also buried in tiny grey font at the bottom of the email (red box added to screenshot

20 for emphasis):

21
22
23

> Your subscription to Amazon Music Unlimited has started. Your subscription costs $0.00 for the first 3 months and then $7.99 per month after, plus any taxes and will be charged to your default card or another card on file. Your subscription renews monthly after the introductory offer. Cancel renewal anytime. Review your subscription by visiting Amazon Music settings. **The renewal price above may not reflect any promotions applied to your account,** which can be viewed by visiting Amazon Music settings. For more details, read our Amazon Music Terms of Use.

24    84.    The other Acknowledgment Emails that Defendant sent, and continues to send, to

25 consumers who enroll in the other Amazon Subscriptions at issue upon completion of the checkout

26 process are substantially similar to the Amazon Prime and Music Unlimited Acknowledgment

27 Emails shown above.  As with the Checkout Pages, the Amazon Acknowledgment Emails –

28

including but not limited to the Acknowledgment Emails shown above for Amazon Prime and Music Unlimited – failed to provide Plaintiffs and members of the Class with the complete automatic renewal or continuous service terms that applied to the offer, a description of the full cancellation policy, or any specific information regarding how to cancel.

85.     Specifically, as the above exemplars make clear, the Acknowledgment Emails for the Amazon Subscriptions, like the corresponding Checkout Pages, do not clearly and conspicuously disclose the continuous nature of the subscription or purchasing agreement, and they also fail to adequately or fully describe the complete cancellation policy associated with a consumer's given Amazon Subscription, the recurring price to be charged to the consumers' Payment Method as part of the automatic renewal or continuous service plan or arrangement, and the length of the automatic renewal term or that the service is continuous.  Any such disclosures of required automatic renewal terms are either missing altogether or are deceptively incomplete, objectively inaccurate, and/or are inconspicuously buried in the tiny, grey fine print at the bottom of the Acknowledgment Emails (*i.e.*, hidden in the fine print).

86.     For example, the only mention on the Acknowledgment Emails shown above of the recurring price to be charged in connection with Amazon Prime and Music Unlimited occurs in such a block of fine print.  *See* Cal. Bus. & Prof. Code § 17601(b)(3) and ORS 646A.293(5)(c) (defining "Offer terms" to include "clear and conspicuous disclosures" regarding "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal or continuous service plan or arrangement").  In other words, that disclosure and any others required disclosures accompanying it within the same block of text were presented in such a way that they could be, and were (*e.g.*, by Plaintiffs, as alleged below), easily overlooked.  Such disclosures are therefore not "clear and conspicuous" as that term is defined by the Oregon ARL under ORS 646A.293(2) and by the California ARL under Cal. Bus. & Prof. Code § 17601(c), in violation of the California ARL under Cal. Bus. & Prof. Code § 17602(b)(3) and of the Oregon ARL under ORS Section 646A.295(1)(c).

87.     Moreover, the recurring monthly price listed on the Amazon Prime

Acknowledgment Email that Plaintiff Nacarino received from Defendant following her enrollment in a free trial for Prime, *see, e.g.*, *supra* (screenshot of Amazon Prime Acknowledgment Email), provides that subscribers will be charged $12.99, the then-current monthly renewal rate associated with Prime.  However, as noted above and discussed further below, at the time Plaintiff Nacarino incurred charges in connection with to Prime, the *actual* recurring monthly price charged to Ms. Nacarino's (and other California consumers') Payment Method in connection with Amazon Prime was $14.09, which includes the full membership fee *and applicable fees and taxes*.  Thus, even had this required automatic renewal offer term been conspicuously disclosed in the Acknowledgment Email (it was not), the disclosure as written provides false information, and Ms. Nacarino and California consumers still would not have been placed on notice of the actual recurring price to be charged in connection with Amazon Prime as a result of Defendant's false or misleading misrepresentations in the Acknowledgment Email regarding price.

88.     Likewise, although the fine print of the Acknowledgment Emails may also contain some relevant language like that of the corresponding Checkout Pages – indicating (without stating outright) that the subscription or purchasing agreement will continue until the consumer cancels and providing the length of the automatic renewal term or that the service is continuous – any such disclosures are also hidden in the fine print at the bottom of the Acknowledgment Emails in tiny gray font.  *See* Cal. Bus. & Prof. Code §§ 17601(b)(1), (4) and ORS 646A.293(5)(a), (c) (defining "Offer terms" to include "clear and conspicuous disclosures[] … [t]hat the subscription or purchasing agreement will continue until the consumer cancels[ and regarding] … "[t]he length of the automatic renewal term or that the service is continuous").  Thus, the Acknowledgment Emails, like the Checkout Pages, do not provide this information in a clear and conspicuous manner as the ARL requires.

89.     The same is true concerning the cancellation policies applicable to the Amazon Subscriptions, disclosures about which are buried in the fine print of the Acknowledgment Emails or altogether missing from them.  Nor is any cancellation information that appears in the fine print regarding cancellation comprehensive.  For instance, the Acknowledgment Emails above do not

specify that subscribers must not use any benefits prior to cancellation or that cancellation must be affected prior to the next charge to the consumer, as is set forth on other pages of the Amazon Platform that Plaintiffs and Class Members were neither required nor prompted to view.  As such, the Acknowledgment Emails shown above fail to provide a description of Defendant's complete cancellation policy, *see* Cal. Bus. & Prof. Code § 17601(b)(2) and ORS 646A.293(5)(b) (defining "Offer terms" to include "clear and conspicuous disclosures" regarding "the cancellation policy that applies to the offer"), which also violates the California ARL under Cal. Bus. & Prof. Code § 17602(a)(3) and the Oregon ARL under ORS 646A.295(1)(c).

90.     Additionally, the Acknowledgment Emails fail to provide a toll-free telephone number or describe another cost-effective, timely and easy-to-use mechanism for cancellation, and in fact Defendant makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Amazon Subscriptions, which violates the California ARL under Cal. Bus. & Prof. Code §§ 17602(a)(3) and 17602(b), as well as the Oregon ARL under ORS 646A.295(1)(c) and 646A.295(2).

91.     In sum, the Acknowledgment Emails do not adequately disclose the requisite terms – the "Automatic renewal offer terms" as defined by Cal. Bus. & Prof. Code § 17601(b) of the California ARL, or the "Offer terms" as defined by ORS 646A.293(5) of the Oregon ARL – in violation of Section 17602(a)(3) of the California ARL and Section 646A.295(1)(c) of the Oregon ARL.  Further, the Acknowledgment Emails fail to provide a clear, conspicuous, and complete description of the applicable cancellation mechanism and specifically how to cancel, in violation of Section 17602(b) of the California ARL and Section 646A.295(2) of the Oregon ARL.

92.     At all relevant times, Defendant has been well aware that its Amazon Subscriptions fail to comply with Oregon's ARL.  Indeed, by virtue of the large volume of online consumer complaints discussed above regarding Defendant's billing practices with respect to the Amazon Subscriptions (*see, e.g.*, *supra*), investigations by governmental entities and/or third-party organizations – including, among others, the Norwegian Consumer Council ("NCC"), the Federal Trade Commission ("FTC"), and internet privacy watchdog Electronic Privacy Information Center

("EPIC") (*see id.*) – into substantially similar complaints concerning the Amazon Subscriptions, Defendant's long and documented history of using dark patterns on the Amazon Platform to affect subscription enrollment, and Amazon's own leaked internal documentation evidencing same, Defendant knew or should have known that its conduct constitutes violations of California and Oregon law.

93. By and through these actions, Defendant has charged Plaintiffs' and Class members' Payment Methods in direct violation of California's and Oregon's ARL. As a result, all goods, wares, merchandise, and/or products sent to Plaintiffs and the Classes upon the automatic renewal of their subscription agreements and without Plaintiffs' and Class and Subclass members' affirmative consent to the offer terms are deemed to be "unconditional gifts" pursuant to Section 17603 of the California ARL and Section 646A.295(5) of the Oregon ARL. *See* under Cal. Bus. & Prof. Code § 17603; ORS 646A.295(5).

94. Plaintiffs bring this action individually and on behalf of similarly situated individuals in the United States against Defendant for conversion, unjust enrichment, negligent misrepresentation, and fraud. Specifically, Plaintiff Daly, individually and on behalf of similarly situated individuals in Oregon, brings this action against Defendant for violations of Section 646.608(1) of Oregon's Unlawful Trade Practices Act ("UTPA"). As set forth in detail below, Plaintiff Daly's UTPA claims – which are based on, *inter alia*, Defendant's failure to adequately provide the requisite disclosures and authorizations required to be made to Oregon consumers under ORS 646A.295 and ORS 646.644 – arise under ORS 646.608(1)(ttt) and ORS 646.608(1)(sss). Additionally, Plaintiffs Nacarino, Sylvester, and Sonnenschein (the "California Plaintiffs") also bring claims, individually and on behalf of similarly situated individuals in California, under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* (among other statutory and common law claims asserted below), which are based on, *inter alia*, Defendant's failure to comply with the California ARL and arise under the "unlawful" prong of the UCL.

**PLAINTIFFS' INDIVIDUAL ALLEGATIONS**

**A.    The Oregon Plaintiff**

      **i.    <u>Plaintiff Mark Daly</u>**

95.    Plaintiff Mark Daly is an individual consumer who signed up for an Amazon Prime subscription on a free trial basis from Defendant's website while in Oregon in or around March 2022.  At the time Mr. Daly signed up for his free trial Amazon Subscription, he provided his Payment Method directly to Defendant.

96.    Before Mr. Daly purchased his free trial Amazon Subscription, Defendant did not disclose to Mr. Daly all required automatic renewal offer terms associated with the subscription program.  Additionally, although the Checkout Page from which Mr. Daly made his purchase included some relevant information regarding automatic renewal, the manner in which this information was presented was insufficient to put Mr. Daly on notice of the material "offer terms" associated with his Amazon Subscription, which, pursuant to ORS 646A.295(1)(a), Defendant was required to clearly and conspicuously disclose on the Checkout Page prior to Mr. Daly's completion of his initial order for the Amazon Prime subscription.  Specifically, prior to completing his initial Amazon Subscription order, the relevant screens and buttons presented to Mr. Daly did not clearly and conspicuously state that his Amazon Subscription would automatically convert to a paid subscription and renew every month resulting in continuous automatic monthly charges to his Payment Method until he cancelled; they did not state the recurring charges that would be charged to Mr. Daly's Payment Method as part of the automatic renewal plan; and they did not describe the full cancellation policy that applied to his purchase.

97.    Moreover, at no point prior to completing his initial purchase did Defendant obtain Mr. Daly's affirmative consent to an agreement containing the automatic renewal offer terms associated with his Amazon Subscription.

98.    After Mr. Daly completed his initial order, Defendant sent Mr. Daly an Acknowledgment Email stating that his free trial Amazon Subscription had been activated. However, as discussed above, that Acknowledgment Email failed to provide Mr. Daly with the complete automatic renewal terms that applied to Defendant's offer for Amazon Prime (including

the mere fact that the Amazon Subscription would automatically convert from a free trial to a paid subscription and renew every month, resulting in continuous monthly charges to his Payment Method, unless and until Mr. Daly chose to cancel), a description of Defendant's full cancellation policy, or information regarding how to cancel Mr. Daly's Amazon Subscription in a manner capable of being retained by him.  Mr. Daly did not receive any other acknowledgments that contain the required information.

99.     As a result of Defendant's missing and otherwise deficient disclosures, when Mr. Daly selected and enrolled in his Amazon Prime free trial subscription in or around March 2022, he was unaware that Defendant had enrolled him in an "automatic renewal" program under which his subscription would renew each month and result in continuous monthly automatic renewal charges to his Payment Method unless and until Mr. Daly canceled the subscription.  Thus, because Mr. Daly was not expecting the free trial to Amazon Prime to automatically convert and renew, the thought of cancelling his free trial prior to that point did not occur to Mr. Daly.  That is, believing the membership plan would automatically terminate following the initial trial period and there was therefore no need for Mr. Daly to affect cancellation in order to avoid future charges, Mr. Daly did not attempt to cancel his Amazon Subscription before incurring charges in connection with the Amazon Subscription.

100.     Nevertheless, in or around April 2022, approximately one month after Mr. Daly first signed up for his free trial to Amazon Prime, Defendant automatically converted Mr. Daly's Amazon Subscription to a paid Amazon Subscription and charged Mr. Daly's Payment Method approximately $14.99, the full monthly standard membership fee then associated with the paid monthly Amazon Prime subscription, without his knowing or affirmative consent.  Thereafter, Defendant again automatically renewed Mr. Daly's Amazon Subscription the subsequent month, and, in or around May of 2022, charged him another $14.99 in unauthorized charges to his Payment Method for the following billing period, for a total of two unauthorized charges amounting to approximately $30.00 to Mr. Daly's Payment Method without his knowing consent.  Prior to that point, Mr. Daly was not aware that he would be charged *any* money in connection with

his *free* trial, and he certainly did not understand that his Amazon Prime free trial, in fact, was or would automatically become an "automatic renewal" for which he would incur recurring charges on an ongoing, monthly basis.

101.   Additionally, because Mr. Daly had not been expecting to incur these charges in connection with Amazon Prime in or around April and May of 2022 (or ever), these charges came as a total surprise to Mr. Daly.  As a result, Mr. Daly's Payment Method did not contain sufficient funds to cover the monthly cost of Prime at the time Defendant posted the renewal fees to Mr. Daly's bank account in May 2022, which, in turn, caused Mr. Daly to incur overdraft fees from his bank.  Mr. Daly was notified by the bank upon incurring the May overdraft fees, which prompted Mr. Daly to review the recent transaction history associated with his Payment Method, and that, in turn, caused Mr. Daly to learn of the subscription charges he incurred in April and May, indicating to Mr. Daly that he had enrolled been in a Prime subscription in the first place.

102.   The monthly fees that Defendant charged to Mr. Daly's Payment Method in connection with his Amazon Prime subscription came as a surprise to Mr. Daly because, up until May 2022, he had believed that the free trial membership in which he enrolled roughly two months earlier would automatically terminate following the initial trial period.  He was also unsure of how long his free trial would last, or when, if ever, the first charge would occur following the conclusion of his free trial.  He generally believed that Amazon would inform him following the expiration of the free trial period and, at that point, attempt to obtain his affirmative consent to begin charging monthly fees to Mr. Daly's Payment Method in connection with Amazon Prime if he wished to continue with the paid subscription.  As a result, Mr. Daly did not expect to incur any charges in connection with the Amazon Subscription at the time Defendant posted fees to Mr. Daly's Payment Method in or around April and May of 2022.

103.   Mr. Daly was also unaware of the recurring price that would be charged in connection with Amazon Prime until, upon review of the account banking history associated with his Payment Method, he saw the monthly charges on his Payment Method, at which point the free trial had already ended and the automatic charges had already begun.

104.    Mr. Daly's confusion and surprise with respect to the monthly renewal fees he incurred in May and April 2022 – and, in particular, about the applicable offer terms concerning automatic renewal, price, billing date, and cancellation – is the direct result of Defendant's failure to place Mr. Daly on notice of several material offer terms associated with his Amazon Subscription.  In particular, Mr. Daly was not made aware of the fact that Defendant had enrolled him in an "automatic renewal" program under which his Amazon Subscription would automatically renew each month after the initial trial period and result in continuous charges to his Payment Method, unless Mr. Daly chose to cancel before the trial period ended or any subsequent billing period.  Nor was Mr. Daly made aware of Defendant's cancellation policy, the most crucial aspects of which were missing from the Checkout Page and Acknowledgment Email, and Defendant also failed to adequately disclose the length of the free trial period and the precise recurring amount that would be charged to Mr. Daly's debit card as part of his Amazon Subscription.  These omissions constitute violations of the ARL pursuant to ORS 646A.295(1)(a) and (1)(b), *see also* ORS 646A.293(5)(a)-(d), as well as violations of the FOL pursuant to ORS 646.644(2) and (4).

105.    And, to the extent any of this information *was* presented on the Checkout Page or in the Acknowledgment, such disclosures were either incomplete, ambiguous, inconspicuous buried in the fine print on both the Checkout Page and the Acknowledgment Email as noted above (*see supra*), or were otherwise incomplete, ambiguous, obscured, and/or lacking in the requisite visual proximity.  Therefore, any such term was presented in such a way that the term could be – and, by Plaintiff, was – easily overlooked, and is therefore not "clear and conspicuous" as defined by the ARL pursuant to ORS 646A.293(2), in violation of ORS 646A.295(1)(a)-(b), or as that term is defined by the FOL pursuant to ORS 646.644(1)(c), in violation of ORS 646.644(2), (4).

106.    Because Defendant failed to disclose this material information in the manner required by statute, Mr. Daly was unable at the point of sale to accept or provide affirmative consent to Defendant's offer or knowingly enter into to the purchase agreement.  Thus, as a direct result of Defendant's missing, incomplete, and otherwise deficient disclosures on the Checkout

Page and in the Acknowledgment Email, Mr. Daly was induced to sign up for, unable to terminate, and automatically charged for his Amazon Subscription.

107.    In sum, because Mr. Daly did not expect that his free trial would automatically convert into a paid Amazon Subscription in the first place, Mr. Daly was unaware at the time he initially signed up for a free trial in March 2022 that he would incur any renewal charges whatsoever in connection with Amazon Prime, and he remained unaware of the automatic renewal feature associated with Defendant's free trial offer until approximately May 2022, when, upon review of the transactional history associated with his Payment Method, Mr. Daly learned that his free trial had in fact been automatically converted to a paid Amazon Subscription and that in April and May 2022 he had been charged renewal fees by Defendant in connection with the same, giving him reason to believe that those fees would continue thereafter on a monthly basis.  Prior to discovering these charges in or around May 2022, Mr. Daly did not expect that, once the free trial ended, Defendant would automatically post subscription fees to his Payment Method on a monthly basis without further confirmation on his part.

108.    Further, promptly upon learning of these unauthorized charges upon review of his banking information in or around May 2022, Mr. Daly attempted to cancel his Amazon Subscription in order to avoid incurring any future charges in connection with Amazon Prime. However, once Mr. Daly learned that his Amazon Subscription did automatically renew and would continue to do so without his intervention, Mr. Daly had no idea how to cancel his Amazon Subscription and did not expect that it would be as difficult and confusing a process as it turned out to be.

109.    Indeed, Mr. Daly struggled to cancel his Amazon Subscription due to Defendant's obscure, confusing, and time-consuming cancellation policy, the terms related to which were entirely missing from the Checkout Page and Acknowledgment Email.  For instance, Mr. Daly called the toll-free number associated with Defendant's customer service line to notify Defendant that he did not authorize – and to request a refund of – the monthly charges he incurred in April and May of 2022.  Thus, Mr. Daly "made reasonable efforts to attempt to use[] one of the

procedures required by subsection (2)(e) of [the FOL,]" ORS 646.644(5) – namely, he attempted "to cancel by calling a toll-free telephone number[,]" ORS 646.644(2)(e).  However, upon doing so, Defendant's customer service representative told Mr. Daly that it was unable to cancel his Prime subscription for him, and denied Mr. Daly's refund request.  Ultimately, Mr. Daly was only able to cancel his Prime subscription and avoid incurring further renewal charges by circumventing Amazon altogether and going through his financial institution to cancel the Payment Method associated with his Amazon Subscription.  Defendant's "fail[ure] or refus[al] to cancel the free offer" despite Mr. Daly's "reasonable efforts to attempt to use[] one of the procedures required by [ORS 646.644(2)(e)]" is a violation of the FOL under ORS 646.644(5).

110.    Notably, neither the Checkout Page nor the Acknowledgment Email contain Defendant's full cancellation policy, and nor do they provide any explanation whatsoever regarding how to cancel the Amazon Subscription.  As a result, based on the pre- and post-check out disclosures featured on the Checkout Page and in the Acknowledgment Email, Mr. Daly did not know anything about how to cancel his Amazon Subscription or of the associated refund policy with respect to cancellations, as are set forth on other pages of Defendant's website.  For instance, neither the Checkout Page nor the Acknowledgment Email indicates that only members that "didn't use any Prime benefits" following activation of their paid subscription or free trial to Prime can be refunded for the "current membership period," as is set forth elsewhere in the Amazon Website.[85]  Further, Defendant does not specify anywhere on the Checkout Page or in the Acknowledgment Email that customers must "notify [Amazon] **before** a charge that [they] want to cancel or do not want to auto renew" in order to avoid being automatically renewed and billed for the following billing period, as do terms set forth on other pages of Defendant's website.[86]

111.    Mr. Daly was not previously aware of the above aspects of Defendant's cancellation policy.  At no point during the life of his Amazon Subscription was Mr. Daly required or even prompted to navigate to or otherwise examine any of the terms disclosed on any other page of the

---

[85] https://www.amazon.com/gp/help/customer/display.html?nodeId=G34EUPKVMYFW8N2U.

[86] https://www.amazon.com/gp/help/customer/display.html?ref_=help_search_1-1&nodeId=G2B9L3YR7LR8J4XP&qid=1635538830941&sr=1- (emphasis added).

CLASS ACTION COMPLAINT
CASE NO.

Amazon Platform, aside from the Checkout Page.  Defendant neglected to disclose this information to Mr. Daly either at the point of purchase on the Checkout Page or later in the Acknowledgment Email that Defendant sent to Mr. Daly after he completed the checkout process.  Accordingly, Defendant failed to place Mr. Daly on notice of its cancellation policy or provide Mr. Daly information regarding how to cancel in a manner that is capable of being retained by him, in violation of the ARL pursuant to ORS 646A.295(1)(a) and (1)(c) and in violation of the FOL pursuant to ORS 646.644(2)(e)-(g).

112.    Moreover, even if the Acknowledgment Email *had* contained Defendant's complete cancellation policy (it did not), for the reasons stated above the "mechanism for cancellation" that exists is not one Plaintiff Daly and other reasonable consumers would consider "timely" or "easy-to-use."  Defendant therefore failed to provide Mr. Daly with an "timely and easy-to-use mechanism for cancellation" or describe any such mechanism in an Acknowledgment Email, in violation of the ARL pursuant to ORS 646A.295(2).  With respect to members of the Class that initially enrolled in a free trial to any of the Amazon Subscriptions (including Plaintiff Daly), Defendant's conduct as described in this paragraph and above also violates of the FOL pursuant to ORS 646.644(2)(e)-(g) and ORS 646.644(5).

113.    Defendant's pre- and post-purchase disclosures and lack of affirmative consent fail to comply with the ARL, which deems products provided in violation of the statute to be "an unconditional gift to the consumer who may use or dispose of them in any manner the consumer sees fit without[.]"  ORS 646A.295(5).

114.    Additionally, with respect to members of the Class that initially enrolled in a free trial to any of the Amazon Subscriptions (including Plaintiff), Defendant's pre-purchase disclosures and lack of affirmative consent fail to comply with the FOL, which provides that "[a] person who violates a provision of this section engages in an unlawful practice subject to enforcement and penalty under … 646.605 (Definitions for ORS 336.184 and 646.605 to 646.652)[.]"  ORS 646.644(6).

115.    As a direct result of Defendant's unlawful conduct described above, Mr. Daly

suffered ascertainable loss in the form of economic injury.  That is, Defendant "failed to disclose the legally required information and assessed a . . . fee in violation of the UTPA."  *Scharfstein v. BP W. Coast Prod., LLC*, 292 Or. App. 69, 90 (2018).  "In doing so, [Defendant] illegally charged [Plaintiffs and its other Oregon] customers [recurring subscription fees], thereby causing the ascertainable loss."  *Id.*; *see also id.* at 89 ("In an illegal charge case such as this one, whether a customer relied on the nondisclosure of a fee does not matter; what matters is whether the fee is disclosed in the particular way that the law requires. The UTPA prohibits businesses from charging customers other types of fees when they are not disclosed in the particular way that the law requires. … If any of those businesses were to violate any of the terms under which they may assess those fees, the assessment would result in an illegal charge. The customer's actual awareness or knowledge of the illegality would be irrelevant.").[87]  Specifically, Mr. Daly lost a total of approximately $30.00 paid in subscription fees as a result of Defendant's unlawful charges to Mr. Daly's Payment Method.

116.    In the alternative, Defendant's ARL and FOL violations caused Mr. Daly's ascertainable loss in the form of financial injury because Mr. Daly reasonably relied on

---

[87] *See also Miller v. WinCo Foods, LLC*, 2020 WL 6693149, at *7 (D. Or. Sept. 3, 2020), *report and recommendation adopted*, 2020 WL 6685697 (D. Or. Nov. 12, 2020) ("[Defendant] was required to accurately advertise the price it intended to charge Plaintiffs for the non-grocery goods.  Plaintiffs effectively assert that once WinCo made the decision to recoup the Surcharge from the customer, its failure to include the Surcharge in the advertised price of the items was a violation of the Act and, consequently, its collection of the Surcharge was improper, or 'illegal.'  The court finds, viewing the allegations of the Complaint in a light most favorable to Plaintiffs, Plaintiffs adequately allege an ascertainable loss under the 'illegal charge' theory."); *Stewart v. Albertson's, Inc.*, 308 Or. App. 464, 492 n.17, *review denied*, 368 Or. 138 (2021); *Russell v. Ray Klein, Inc.*, 2019 WL 6137455, at *4 (D. Or. Nov. 19, 2019) ("Defendants final argument is that even if they are subject to and violated the UTPA, [plaintiff's] claim still fails because he never suffered an ascertainable loss of money or property because of the alleged violations. … Defendants['] argu[ment] … misses the mark.  Here, Mr. Russell's loss is the improper collection of the $45 fee. [Thus, plaintiff] and putative class members suffered an ascertainable loss of money in the form of the unlawful fees collected from them by defendants, which they otherwise would not have had to pay if defendants had not engaged in conduct violating the UTPA.") (internal citations and quotation marks omitted); *Tri-W. Const. Co. v. Hernandez*, 43 Or. App. 961, 972 (1979) ("[P]roof that a party justifiably relied on a representation is not necessary when the representation involves a matter about which the party making it is legally required to inform the other."); *Sanders v. Francis*, 277 Or. 593, 598-99 (1977) ("Defendants' chief argument[] … is that irrespective of any unlawful practice committed by defendants, plaintiff must have acted in reliance on that practice in order to have a civil action under ORS 646.638. … But an examination of the possible forms of unlawful practices shows that this cannot invariably be the case. Especially when the representation takes the form of a 'failure to disclose' … , as in this case, it would be artificial to require a pleading that plaintiff had 'relied' on that non-disclosure. …Whether ORS 646.638(1) requires reliance as an element of causation necessarily depends on the particular unlawful practice alleged. … We hold that the demurrer should have been overruled.  Reversed and remanded."); *see also Rollins v. Wink Labs, Inc.*, 2021 WL 1976082, at *5-6 (D. Or. Feb. 22, 2021).

---

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

Defendant's conspicuous disclosures of the Checkout Page and the Acknowledgment Email – and, as a natural corollary, on the omissions and/or the inconspicuousness of the disclosures contained therein – in deciding whether to purchase his free trial Amazon Subscription in the first place and, once he discovered that the subscription was, in fact, an automatic renewal that would continue to result in monthly fees to Mr. Daly's Payment Method, whether to continue paying for it after that (*i.e.*, by not cancelling the auto-renewal prior to incurring renewal charges for the subsequent billing period). Had Defendant complied with the ARL and/or FOL by adequately disclosing – and obtaining Mr. Daly's affirmative consent to – the requisite Amazon Subscription terms on the Checkout Page at the point of Mr. Daly's initial purchase, Mr. Daly would have been able to read and review the auto renewal terms prior to purchase and he would have not subscribed to Amazon Prime in the first place, or would have subscribed on materially different terms, thereby avoiding financial injury of any kind as a result of Defendant's ARL and/or FOL violations. Similarly, had Defendant complied with the ARL by adequately disclosing the terms associated with Mr. Daly's Amazon Subscription in the post-checkout Acknowledgment Email (*i.e.*, after initial enrollment in Amazon Prime, but before any subsequent automatic renewal charge of Mr. Daly's Payment Method), Mr. Daly would have been able to read and review the auto renewal terms prior to another automatic renewal for the subsequent billing period, and he would have cancelled his Amazon Subscription prior to the expiration of the subscription period in which he learned such information, thereby avoiding all or part of the aggregate automatic renewal charges Mr. Daly incurred in connection with Amazon Prime from the time of enrollment in or around March 2022. But Defendant did not adequately disclose the required automatic renewal and free offer terms in either the Checkout Page or the Acknowledgment Email, thereby depriving Mr. Daly of the opportunity to make informed decisions as to the recurring transactions, in violation of both the ARL and FOL.

117. Additionally, Defendant's unlawful conduct caused additional economic injury because Mr. Daly had insufficient funds in his bank account to cover the cost of the unexpected monthly fee at the time Defendant withdrew the subscription fees from Mr. Daly's Payment

Method in May 2022.  Thus, had Defendant adequately disclosed the fact of automatic renewal, recurring price to be charged, and the precise date on which Defendant would withdraw subscription fees from Mr. Daly's Payment Method prior to that date in May 2022, Mr. Daly would have, at the very least, added funds to his bank account sufficient to cover the cost of the monthly fees due for May 2022 in advance of the billing date, and – even if Mr. Daly were unable to successfully affect cancellation in advance of the May 2022 charges – he would have thereby avoided the overdraft fees Mr. Daly incurred with his bank as a result of Defendant's posting of those fees.  But, again, Defendant did not provide the requisite disclosures, so Mr. Daly had no ability of foresight to avoid incurring these incidental overdraft fees.

118.    The facts giving rise to Mr. Daly's claims are materially the same as the Class he seeks to represent.

**B.    The California Plaintiffs**

**i.    Plaintiff Elena Nacarino**

119.    Plaintiff Elena Nacarino is an individual consumer who signed up for an Amazon Prime subscription on a free trial basis from Defendant's website while in California at some point during approximately late 2019 or early 2020.  At the time Ms. Nacarino signed up for her Amazon Subscription, she provided her Payment Method directly to Defendant.

120.    Before Ms. Nacarino purchased her Amazon Subscription, Defendant did not disclose to Ms. Nacarino all required automatic renewal offer terms associated with the subscription program.  Additionally, although the Checkout Page from which Ms. Nacarino made her purchase included some relevant information regarding automatic renewal, the manner in which this information was presented was insufficient to put Ms. Nacarino on notice.  Specifically, prior to completing her initial Amazon Subscription order, the relevant screens and buttons presented to Ms. Nacarino did not clearly and conspicuously state that her Amazon Subscription would automatically renew every month until she cancelled; they did not state the recurring charges that would be charged to Ms. Nacarino's Payment Method as part of the automatic renewal plan, explain that the amount of the charge would change, or disclose the amount to which

the charge would change; and they did not describe the full cancellation policy that applied to her purchase.

121.     At no point prior to completing her initial purchase did Defendant obtain Ms. Nacarino's affirmative consent to an agreement containing the automatic renewal offer terms.

122.     After Ms. Nacarino completed her initial order, Defendant sent Ms. Nacarino an Acknowledgment Email stating that her Amazon Subscription had been activated.  However, as discussed above, that Acknowledgment Email failed to provide Ms. Nacarino with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Ms. Nacarino's Amazon Subscription in a manner capable of being retained by her.  Ms. Nacarino did not receive any other acknowledgments that contain the required information.

123.     As a result of Defendant's missing and otherwise deficient disclosures, when Ms. Nacarino selected and enrolled in her Amazon Prime free trial subscription, she was unaware that Defendant had enrolled her in an "automatic renewal" program under which her subscription would renew each month and result in continuous monthly automatic renewal charges to her Payment Method unless and until Ms. Nacarino canceled the subscription.

124.     Nevertheless, shortly after Ms. Nacarino first signed up for her free trial to Amazon Prime, Defendant automatically renewed Ms. Nacarino's Amazon Prime Subscription and charged Ms. Nacarino's Payment Method approximately $14.09, the full monthly standard membership fee then associated with the paid monthly Amazon Prime Subscription (including applicable taxes and fees[88]), without her knowing or affirmative consent.

125.     The monthly fee(s) that Defendant charged to Ms. Nacarino's Payment Method in connection with her Amazon Prime subscription came as a surprise to Ms. Nacarino because, up until that point, she was unsure of how long her free trial would last or when, if ever, the first charge would occur following the conclusion of her free trial.  She believed that Amazon would

---

[88] Excluding taxes and fees, at the time she enrolled in and incurred fee(s) in connection with Amazon Prime, the monthly price of Plaintiff Nacarino's Prime subscription was $12.99, as is listed in the fine print at the bottom of the exemplar Amazon Prime Checkout Page and Acknowledgment Email shown above, *see supra* ¶¶ 67, 81.  Amazon has since raised the monthly subscription cost to $14.99 per month.

inform her following the expiration of the free trial period and, at that point, obtain her consent to continued monthly charges in connection with Amazon Prime if she wished to continue with the paid subscription.  As a result, because Ms. Nacarino was under the impression that she had more time to test out the service and decide whether it was worth paying for on an ongoing basis, she had not expected to incur any renewal fee at the time Defendant posted it to Ms. Nacarino's Payment Method.

126.    Ms. Nacarino was unaware of the recurring price that would be charged in connection with Amazon Prime until, upon review of the account banking history associated with her Payment Method, she saw the monthly charges on her Payment Method, at which point the free trial had already ended and the automatic charges had already begun.

127.    Ms. Nacarino's confusion and surprise about price and billing date is the direct result of Defendant's failure to place Ms. Nacarino on notice of the length of the free trial period and of the recurring amount that would be charged to Ms. Nacarino's Payment Method as part of her Amazon Subscription.  Specifically, this information was buried in the fine print on both the Checkout Page and the Acknowledgment Email as noted above, and was therefore presented in such a way that the term could be – and, by Plaintiff Nacarino, was – easily overlooked, and is therefore not "clear and conspicuous" as defined by Section 17601(c) of the ARL.

128.    Moreover, even though, as Ms. Nacarino ultimately discovered, Defendant withdrew $14.09 from Ms. Nacarino's Payment Method on a monthly basis in connection with her Amazon Prime subscription, the Checkout Page that Ms. Nacarino and all Prime subscribers viewed during the enrollment process, as well as the Acknowledgment Email that Ms. Nacarino and all Prime subscribers received following enrollment, both indicate – in the easily-overlooked fine print – that the recurring price to be charged in connection with a monthly Amazon Prime Subscription would be $12.99.  Thus, even had the Acknowledgment Email presented this amount, the supposed recurring price to be charged in connection with the Prime automatic renewal program, "clearly and conspicuously" as the ARL requires, *see* Cal. Bus. & Prof. Code § 17602(a)(1); Cal. Bus. & Prof. Code § 17601(b)(3); Cal. Bus. & Prof. Code § 17601(c).

1       129.    Because Defendant failed to disclose this material information in the manner

2  required by statute, Ms. Nacarino was unable at the point of sale to accept Defendant's offer or

3  knowingly enter into to the purchase agreement.

4       130.    At the time of and following enrollment in her free trial to Amazon Prime in or

5  around late 2019 or early 2020, Ms. Nacarino did not expect that, once the free trial ended,

6  Defendant would automatically post subscription fees to her Payment Method on a monthly basis

7  without further confirmation on her part.  Even so, fearful of hidden fees and surprise charges, Ms.

8  Nacarino decided to cancel her Amazon Prime subscription prior to the end of the free trial period

9  associated with her Amazon Subscription – or, rather, prior to what *Ms. Nacarino believed to be*

10  the end of the free trial period – in order to avoid incurring any potential future charges that may

11  be associated with Amazon Prime.  But once she set out to affect cancellation, Ms. Nacarino was

12  not sure where to start.  Due to this lack of clarity, the process was not timely.  Thus, Ms. Nacarino

13  struggled to affect cancellation due to Defendant's obscured, confusing, and time-consuming

14  cancellation policy.

15       131.    Ultimately, Ms. Nacarino attempted to cancel her Amazon Subscription through

16  options she found on the Account Management webpage of the Amazon Website.  Once Ms.

17  Nacarino completed this process, she believed that this attempt at cancellation was effective, and

18  that she would not incur any future charges in connection with Amazon Prime.  However,

19  approximately one or two months later, Ms. Nacarino learned upon review of her billing

20  statements and banking history that, notwithstanding her attempt to cancel her free trial to Amazon

21  Prime, Defendant automatically renewed Ms. Nacarino's Amazon Subscription upon the end

22  expiration of the free trial period and, without Ms. Nacarino's affirmative consent, charged Ms.

23  Nacarino's Payment Method in the full standard monthly rate associated with her Amazon

24  Subscription.  Thus, Ms. Nacarino's attempt at cancellation one month earlier was utterly

25  ineffective.

26       132.    Immediately after learning of Defendant's renewal charge(s) to her Payment

27  Method, Ms. Nacarino again attempted to cancel her Amazon Subscription.  Since Ms. Nacarino's

28

first attempt to cancel using Defendant's exclusively online cancellation mechanism on the Amazon Website was not effective, for her second attempt Ms. Nacarino attempted to cancel by phone.  Accordingly, Ms. Nacarino called to notify Defendant that she did not authorize – and to request a refund of – the unauthorized subscription charge(s) that Defendant had charged Ms. Nacarino's Payment Method.  She also asked Defendant to remove Ms. Nacarino's billing information, which Defendant had stored and maintained in its records, and expressly stated that Defendant did not have authorization to post any further charges.  However, Defendant denied Ms. Nacarino's refund request because, according to Defendant, Ms. Nacarino had failed to cancel her Amazon Prime Subscription and request a refund in the required time frame, and Defendant also refused to cancel her Amazon Subscription before the end of the given renewal term.

133.    As a result, Ms. Nacarino learned of other aspects of Defendant's cancellation policy that Defendant had failed to present to Ms. Nacarino on the Checkout Page at the point of sale or in the subsequent Acknowledgment Email.  For instance, neither the Checkout Page nor the Acknowledgment Email indicates that only members that "didn't use any Prime benefits" can be refunded for the "current membership period," as is set forth elsewhere in the Amazon Website.[89] Further, Defendant does not specify anywhere on the Checkout Page or in the Acknowledgment Email that customers must "notify [Amazon] before a charge that [they] want to cancel or do not want to auto renew" in order to avoid being automatically renewed and billed for the following billing period, as do terms set forth on other pages of Defendant's website.[90]

134.    Ultimately, Ms. Nacarino was only able to affect cancellation and thereby end the recurring charges with the help of her bank rather than through Amazon, by cancelling the debit and/or credit card associated with her Amazon Subscription.

135.    Ms. Nacarino was not previously aware of the above aspects of Defendant's cancellation policy.  At no point during her Amazon Subscription was Ms. Nacarino required or even prompted to navigate to or otherwise examine any of the terms disclosed on any other page of

---

[89] https://www.amazon.com/gp/help/customer/display.html?nodeId=G34EUPKVMYFW8N2U.

[90] https://www.amazon.com/gp/help/customer/display.html?ref_=help_search_1-1&nodeId=G2B9L3YR7LR8J4XP&qid=1635538830941&sr=1-.

the Amazon Website, aside from the Checkout Page.  Defendant neglected to disclose this information to Ms. Nacarino either at the point of purchase on the Checkout Page or later in the Acknowledgment Email that Defendant sent to Ms. Nacarino after she completed the checkout process.  Accordingly, Defendant failed to place Ms. Nacarino on notice of its cancellation policy or provide Ms. Nacarino information regarding how to cancel in a manner that is capable of being retained by her, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3).

136.   Moreover, even if the Acknowledgment Email *had* contained Defendant's complete cancellation policy (it did not), for the reasons stated above the "mechanism for cancellation" that exists is not one Ms. Nacarino and other reasonable consumers would consider "easy-to-use." Defendant therefore failed to provide Ms. Nacarino with an "easy-to-use mechanism for cancellation" or describe any such mechanism in an Acknowledgment Email, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3) and 17602(b).

137.   Defendant's pre- and post-purchase disclosures fail to comply with the ARL, which deems products provided in violation of the statute to be an unconditional gift to consumers.  *See* Cal. Bus. & Prof. Code § 17603.

138.   As a direct result of Defendant's unlawful conduct described above, Ms. Nacarino suffered economic injury.  Specifically, Defendant's ARL violations caused Ms. Nacarino's financial injury because Ms. Nacarino reasonably relied on Defendant's conspicuous disclosures of the Checkout Page and the Acknowledgment Email (and, as a natural corollary, the omissions and/or the inconspicuousness of the disclosures contained therein) in deciding whether to purchase her Amazon Subscription in the first place and whether to continue paying for it after that (*i.e.*, by not cancelling the auto-renewal).

139.   Had Defendant complied with the ARL by adequately disclosing – and obtaining Ms. Nacarino's affirmative consent to – the requisite Amazon Subscription terms on the Checkout Page at the point of Ms. Nacarino's initial purchase, Ms. Nacarino would have been able to read and review the auto renewal terms prior to purchase and she would have not subscribed to Amazon Prime in the first place, or would have subscribed on materially different terms, thereby avoiding

financial injury of any kind as a result of Defendant's ARL violations.  Similarly, had Defendant complied with the ARL by adequately disclosing the terms associated with her Amazon Subscription in the post-checkout Acknowledgment Email (*i.e.*, after initial enrollment in Amazon Prime, but before any subsequent automatic renewal charge of Ms. Nacarino's Payment Method), Ms. Nacarino would have been able to read and review the auto renewal terms prior to another automatic renewal, and she would have cancelled her Amazon Subscription prior to the expiration of the subscription period in which she learned such information, thereby avoiding all or part of the aggregate automatic renewal charges Ms. Nacarino incurred in connection with Amazon Prime from the time of enrollment in late 2019 or early 2020, to the present.  But Defendant did not adequately disclose the required automatic renewal terms in either the Checkout Page or the Acknowledgment Email, depriving Ms. Nacarino of the opportunity to make informed decisions as to the recurring transactions.

140.     The facts giving rise to Ms. Nacarino's claims are materially the same as the Class she seeks to represent.

### ii.     Plaintiff Susan Sylvester

141.     Plaintiff Susan Sylvester is an individual consumer who, by purchasing a Kindle Device, enrolled in a Kindle Unlimited subscription on a free trial basis from Defendant's website while in California in or around 2019.  The free trial began in or around August of 2019, and it lasted three months.  At the time Ms. Sylvester purchased her Kindle device and signed up for her Kindle Unlimited free trial subscription, she provided her Payment Method directly to Defendant.

142.     Before Ms. Sylvester purchased her Kindle Device, thereby purchasing her Amazon Subscription, Defendant did not disclose to Ms. Sylvester all required automatic renewal offer terms associated with the subscription program.  Additionally, although the Checkout Page from which Ms. Sylvester made her purchase included some relevant information regarding automatic renewal, the manner in which this information was presented was insufficient to put Ms. Sylvester on notice.  Specifically, prior to completing her initial Kindle Device order, the relevant screens and buttons presented to Ms. Sylvester did not clearly and conspicuously state that her free trial

Amazon Subscription would automatically renew every month until she cancelled; they did not state the recurring charges that would be charged to Ms. Sylvester's Payment Method as part of the automatic renewal plan, explain that the amount of the charge would change, or disclose the amount to which the charge would change; and they did not describe the full cancellation policy that applied to her purchase.

143.    At no point prior to completing her initial purchase did Defendant obtain Ms. Sylvester's affirmative consent to an agreement containing the automatic renewal offer terms.

144.    After Ms. Sylvester completed her initial order, Defendant sent Ms. Sylvester an Acknowledgment Email stating that her Kindle Device purchase had been successful.  However, as discussed above, that Acknowledgment Email failed to provide Ms. Sylvester with the complete automatic renewal terms of Kindle Unlimited that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Ms. Sylvester's Amazon Subscription in a manner capable of being retained by her.  Ms. Sylvester did not receive any other acknowledgments that contain the required information.

145.    As a result of Defendant's missing and otherwise deficient disclosures, when Ms. Sylvester purchased her Kindle Device and unwittingly enrolled in her Kindle Unlimited free trial subscription, she was unaware that Defendant had enrolled her in an "automatic renewal" program under which the subscription would renew and her Payment Method would be automatically charged each month at varying rates unless and until Ms. Sylvester took action to affirmatively cancel her subscription prior to the end of the free trial period.

146.    Nevertheless, in December of 2019, Defendant automatically renewed Ms. Sylvester's Kindle Unlimited Subscription, converting her free trial to a paid monthly subscription, and charged Ms. Sylvester's Payment Method in the amount of $9.99, the full standard monthly rate then associated with the paid Kindle Unlimited subscription.  Thereafter, Defendant continued to automatically renew Ms. Sylvester's Kindle Unlimited Subscription at the full standard rate on a monthly basis and charged her Payment Method an additional twenty-four times, for a total of twenty-five (25) unauthorized charges to Ms. Sylvester's Payment Method between December

2019 and the present, without Ms. Sylvester's knowing or affirmative consent.  As discussed below, Defendant has refunded twelve (12) of the total twenty-five (25) monthly charges.  Even after deducting refunded amounts, and as shown by the table below, Ms. Sylvester has sustained financial injury in the sum total of at least $129.82 in unauthorized subscription fees posted to Ms. Sylvester's Payment Method during the Class Period without her knowing or affirmative consent:

| Billing Date | Amount |
|---|---|
| 12/27/2019 | $9.99 |
| 01/27/2020 | $9.99 |
| 02/27/2020 | $9.99 |
| 03/27/2020 | $9.99 |
| 04/27/2020 | $9.99 |
| 05/27/2020 | $9.99 |
| 06/27/2020 | $9.99 |
| 07/27/2020 | $9.99 |
| 08/27/2020 | $9.99 |
| 09/27/2020 | $9.99 |
| 10/27/2020 | $9.99 |
| 11/27/2020 | $9.99 |
| 12/27/2020 | $9.99 |
| 01/27/2021 | $9.99 |
| 02/27/2021 | $9.99 |
| 03/27/2021 | $9.99 |
| 04/27/2021 | $9.99 |
| 05/27/2021 | $9.99 |
| 06/27/2021 | $9.99 |
| 07/27/2021 | $9.99 |
| 08/27/2021 | $9.99 |
| 09/27/2021 | $9.99 |
| 10/27/2021 | $9.99 |
| 11/27/2021 | $9.99 |
| 12/27/2021 | $9.99 |
| 01/10/2022 | -$9.99 (refund) |
| 01/10/2022 | -$9.99 (refund) |
| 01/10/2022 | -$9.99 (refund) |

| 01/10/2022 | -$9.99 (refund) |
|---|---|
| 01/10/2022 | -$9.99 (refund) |
| 01/10/2022 | -$9.99 (refund) |
| 01/18/2022 | -$9.99 (refund) |
| 01/18/2022 | -$9.99 (refund) |
| 01/18/2022 | -$9.99 (refund) |
| 01/18/2022 | -$9.99 (refund) |
| 01/18/2022 | -$9.99 (refund) |
| 01/18/2022 | -$9.99 (refund) |
|  | **Total: $129.87** |

147.    During the course of her Amazon Subscription, Ms. Sylvester found Defendant's billing practices confusing and unpredictable.  As shown by the table above, Defendant charged twenty-five monthly fees to Ms. Sylvester's Payment Method from December 2019 to December 2021, for a total of $249.75, ***$129.87 of which Defendant refuses to return or refund***.

148.    The monthly renewal fees that Defendant charged to Ms. Sylvester's Payment Method came as a surprise to Ms. Sylvester because, up until that point, she was unsure how long her free trial would last.  As a result, because Ms. Sylvester was under the impression that she had more time to test out the service and decide whether it was worth paying for on an ongoing basis, she had not expected to incur any renewal fee at the time Defendant posted it to Ms. Sylvester's Payment Method.  Ms. Sylvester's confusion and surprise about price and billing date is the direct result of Defendant's failure to place Ms. Sylvester on notice of the length of the free trial period and of the recurring amount that would be charged to Ms. Sylvester's Payment Method as part of her Amazon Subscription.  Because Defendant failed to disclose this material information in the manner required by statute, Ms. Sylvester was unable at the point of sale to accept Defendant's offer or knowingly enter into to the purchase agreement.

149.    Frustrated with Defendant's hidden automatic renewal terms and fearful of hidden fees and surprise charges, Ms. Sylvester decided to cancel her Kindle Unlimited subscription once she realized the free trial period associated with her Amazon Subscription had expired, in order to avoid incurring any potential future charges that may be associated with Kindle Unlimited.  But

once she set out to affect cancellation, Ms. Sylvester was not sure where to start.  Due to this lack of clarity, the mechanism for cancellation was neither "timely" nor "easy to use."  In other words, Ms. Sylvester struggled to affect cancellation, and incurred additional renewal fees, due to Defendant's obscured, confusing, and time-consuming cancellation policy.

150.    Specifically, promptly after incurring her first charge in connection with Kindle Unlimited on December 27, 2019, Ms. Sylvester attempted to cancel her Amazon Subscription by calling Amazon's toll-free phone number in or around late December 2019.  On that occasion, Ms. Sylvester spoke with an Amazon customer service representative named "William," who assured Ms. Sylvester that, at Ms. Sylvester's direction, he had cancelled her subscription.  Following this phone call, Ms. Sylvester believed that her December 2019 attempt at cancellation was effective, and that she would not incur any future charges in connection with Kindle Unlimited.

151.    However, approximately eight months later, in or around August 2020, Ms. Sylvester learned upon review of her billing statements and banking history that, notwithstanding her attempt to cancel her free trial to Kindle Unlimited in December 2019, Defendant had automatically renewed Ms. Sylvester's Amazon Subscription upon the end expiration of the free trial period and, without Ms. Sylvester's affirmative consent, charged Ms. Sylvester's Payment Method in the amount of $9.99, the full standard monthly rate associated with her Amazon Subscription, on January 27, 2020, and every month thereafter leading up to August 2020.  Thus, Ms. Sylvester's December 2019 attempt at cancellation was utterly ineffective.

152.    Immediately after learning of Defendant's renewal charge(s) to her Payment Method, Ms. Sylvester again attempted to cancel her Amazon Subscription on or around August 11, 2020.  On this occasion Ms. Sylvester again attempted to cancel by phone.  Specifically, Ms. Sylvester called Defendant's toll-free phone number to notify Defendant that she did not authorize – and request a refund of – the unauthorized subscription charges that Defendant had charged Ms. Sylvester's Payment Method between December 2019 and July 2020.  During that phone call, Ms. Sylvester was assured by the Amazon customer service representative with whom she spoke in August of 2020 that her Kindle Unlimited Subscription would be cancelled, but her refund request

was denied.  Furthermore, following the call, Ms. Sylvester received the below confirmation email

regarding cancellation, in which Defendant specifically informed Ms. Sylvester that her "Kindle

Unlimited membership will not renew.  At the end of [her] membership period, [her] Kindle

Unlimited membership will not continue":



153.    Unfortunately for Ms. Sylvester, notwithstanding receipt of this cancellation

confirmation email, thereafter Ms. Sylvester continued to receive monthly renewal charges in

connection with her Kindle Unlimited Subscription.  Indeed, Ms. Sylvester subsequently learned,

upon review of the account banking history associated with her Payment Method, that following

her August 2020 cancellation attempt Defendant had once again automatically renewed Ms.

Sylvester's Kindle Unlimited Subscription later that same month and, without Ms. Sylvester's

authorization (and, indeed, despite her express denial of such authorization), charged Ms.

Sylvester's Payment Method another monthly renewal fee for the following billing cycle, in the

amount of $9.99 on August 27, 2020.  Thus, Ms. Sylvester's August 2020 cancellation attempt was

ultimately ineffective.

154.    Thereafter, Defendant continued to post automatic renewal charges to Ms.

Sylvester's Payment Method every month until December of 2021.  Following the December 2021

charge, Ms. Sylvester became aware of the continuing renewal charges she had incurred after her August 2020 cancellation attempt, and she again attempted – successfully, this time – to cancel her subscription in in or around January of 2022.  Confused and angered by Defendant's deception, Ms. Sylvester called Defendant's customer service phone number *for the third time* in January 2022 to notify Defendant that she had not authorized the subscription charges that were posted to Ms. Sylvester's Payment Method on a monthly basis since December 2019, and to insist on a refund of those unauthorized charges.

155.    When Ms. Sylvester reached out to Defendant by phone in January 2022, Defendant finally cancelled Ms. Sylvester's Kindle Unlimited subscription, and the monthly renewal charges ceased.  However, by that point, the damage was done: Ms. Sylvester had already suffered substantial economic loss as a result of Defendant's omissions of automatic renewal terms and, correspondingly, the twenty-five months of unauthorized charges that Defendant posted to Ms. Sylvester's Payment Method in connection with the Kindle Unlimited Subscription.

156.    Additionally, following Ms. Sylvester's initial January 2022 phone call and several subsequent email exchanges and follow-up calls with an Amazon customer service representative named "Amit G," Defendant agreed to issue a refund of no more than twelve of the twenty-five total months of renewal charges that Ms. Sylvester incurred in connection with Kindle Unlimited, and accordingly returned $119.88 of the total amount to Ms. Sylvester's Payment Method (half of which posted to Ms. Sylvester's bank account on January 10, 2022, and the other half of January 18, 2022).  However, Defendant continued, and to this day continues, to refuse to issue Ms. Sylvester a complete refund for all twenty-five months of unauthorized charges.  Thus, thirteen months of unauthorized subscription charges posted to Ms. Sylvester's Payment Method since December 2019 in connection with Kindle Unlimited remain unrefunded to this day, amounting to a total of $129.87 in financial injury to Ms. Sylvester as a direct result of Defendant's unlawful conduct.

157.    Ms. Sylvester was not previously aware of the above aspects of Defendant's cancellation policy.  At no point during her Amazon Subscription was Ms. Sylvester required or

1  even prompted to navigate to or otherwise examine any of the terms disclosed on any other page of

2  the Amazon Website, aside from the Checkout Page.  Defendant neglected to disclose this

3  information to Ms. Sylvester either at the point of purchase on the Checkout Page or later in the

4  Acknowledgment Email that Defendant sent to Ms. Sylvester after she completed the checkout

5  process for her Kindle Device.  Accordingly, Defendant failed to place Ms. Sylvester on notice of

6  its cancellation policy or provide Ms. Sylvester information regarding how to cancel in a manner

7  that is capable of being retained by her, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3).

8      158.    Moreover, even if the Acknowledgment Email *had* contained Defendant's complete

9  cancellation policy (it did not), for the reasons stated above the "mechanism for cancellation" that

10  exists is not one Ms. Sylvester and other reasonable consumers would consider "easy-to-use."

11  Defendant therefore failed to provide Ms. Sylvester with an "easy-to-use mechanism for

12  cancellation" or describe any such mechanism in an Acknowledgment Email, in violation of Cal.

13  Bus. & Prof. Code §§ 17602(a)(3) and 17602(b).

14      159.    Defendant's pre- and post-purchase disclosures fail to comply with the ARL, which

15  deems products provided in violation of the statute to be an unconditional gift to consumers.  *See*

16  Cal. Bus. & Prof. Code § 17603.

17      160.    As a direct result of Defendant's unlawful conduct described above, Ms. Sylvester

18  suffered economic injury.  Specifically, Defendant's ARL violations caused Ms. Sylvester's

19  financial injury because Ms. Sylvester reasonably relied on Defendant's conspicuous disclosures

20  of the Checkout Page and the Acknowledgment Email (and, as a natural corollary, the omissions

21  and/or the inconspicuousness of the disclosures contained therein) in deciding whether to purchase

22  her Kindle Device, and thereby, her Amazon Subscription in the first place and whether to

23  continue paying for it after that (*i.e.*, by not cancelling the auto-renewal).

24      161.    Had Defendant complied with the ARL by adequately disclosing – and obtaining

25  Ms. Sylvester's affirmative consent to – the requisite Amazon Subscription terms on the Checkout

26  Page at the point of Ms. Sylvester's initial purchase in or around July 2019, Ms. Sylvester would

27  have been able to read and review the auto renewal terms prior to purchase and she would have not

28

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

subscribed to Kindle Unlimited in the first place, or would have subscribed on materially different terms, thereby avoiding financial injury of any kind as a result of Defendant's ARL violations. Similarly, had Defendant complied with the ARL by adequately disclosing the terms associated with her Amazon Subscription in the post-checkout Acknowledgment Email (*i.e.*, after initial enrollment in Kindle Unlimited, but before any subsequent automatic renewal charge of Ms. Sylvester's Payment Method), Ms. Sylvester would have been able to read and review the auto renewal terms prior to another automatic renewal, and she would have cancelled her Amazon Subscription prior to the expiration of the subscription period in which she learned such information, thereby avoiding all or part of the aggregate automatic renewal charges Ms. Sylvester incurred in connection with Kindle Unlimited from the time of enrollment in 2019 to January 2022. But Defendant did not adequately disclose the required automatic renewal terms in either the Checkout Page or the Acknowledgment Email, depriving Ms. Sylvester of the opportunity to make informed decisions as to the recurring transactions.

162.    The facts giving rise to Ms. Sylvester's claims are materially the same as the Class she seeks to represent.

### iii.    Plaintiff Michael Sonnenschein

163.    Plaintiff Michael Sonnenschein is an individual consumer who signed up for an Amazon Music Unlimited subscription on a free trial basis from Defendant's website while in California on or around October 31, 2017. Additionally, Mr. Sonnenschein signed up for an Amazon Prime Video Channel subscription to "Shudder" (together with Music Unlimited, Mr. Sonnenschein's "Amazon Add-On Subscriptions") on a free trial basis from Defendant's website while in California on or around October 15, 2019.[91]

---

[91] Unbeknownst to him, Mr. Sonnenschein signed up for his monthly Shudder and Music Unlimited subscriptions as *add-ons* to his base Amazon Prime subscription, in which he had already enrolled on a distinct occasion at an earlier time. At the time Mr. Sonnenschein originally signed up for his base Prime subscription (i.e., prior to his enrollment in Music Unlimited and Shudder), he provided his Payment Method directly to Defendant. As a result, Mr. Sonnenschein's Payment Method was already stored and maintained in Amazon's records when he later signed up for his Amazon Add-On Subscriptions, which he believed to be standalone free trials that were unconnected to his base Amazon Prime Subscription and that would naturally conclude upon expiration of the trial period and would not result in any subsequent charges to Mr. Sonnenschein's Payment Method without his express authorization.

164.     At the time Mr. Sonnenschein purchased his Amazon Add-On Subscriptions, Defendant did not disclose to Mr. Sonnenschein all required automatic renewal offer terms associated with the subscription programs.  Additionally, although the Checkout Pages from which Mr. Sonnenschein made his purchases included some relevant information regarding automatic renewal, the manner in which this information was presented was insufficient to put Mr. Sonnenschein on notice.  Specifically, prior to completing his initial Amazon Add-On Subscriptions orders, the relevant screens and buttons presented to Mr. Sonnenschein did not clearly and conspicuously state that his Amazon Add-On Subscriptions would automatically renew every month until he cancelled; they did not state the recurring charges that would be charged to Mr. Sonnenschein's Payment Method as part of the automatic renewal plans, explain that the amount of the charges would change, or disclose the amount to which the charges would change; and they did not describe the full cancellation policies that applied to his purchases.

165.     At no point prior to completing his initial purchases did Defendant obtain Mr. Sonnenschein's affirmative consent to any agreement containing the automatic renewal offer terms associated with the Amazon Add-On Subscriptions.

166.     After Mr. Sonnenschein completed his initial orders, Defendant sent Mr. Sonnenschein Acknowledgment Emails stating that his Amazon Add-On Subscriptions had been activated.  However, as discussed above, that Acknowledgment Emails failed to provide Mr. Sonnenschein with the complete automatic renewal terms that applied to Defendant's offers, a description of Defendant's full cancellation policies, or information regarding how to cancel Mr. Sonnenschein's Amazon Subscriptions in a manner capable of being retained by him.  Mr. Sonnenschein did not receive any other acknowledgments that contain the required information.

167.     As a result of Defendant's missing and otherwise deficient disclosures, when Mr. Sonnenschein selected and enrolled in his free trials to the Amazon Add-On Subscriptions, he was unaware that Defendant had enrolled him in "automatic renewal" programs under which his subscriptions would renew each month and result in continuous monthly automatic renewal

charges to his Payment Method unless and until Mr. Sonnenschein took action to affirmatively

cancel the subscriptions.

a.    ***Amazon Music Unlimited***

168.    Nevertheless, on November 30, 2017, approximately one month after Mr.

Sonnenschein first signed up for his free trial to Music Unlimited, Defendant automatically

renewed Mr. Sonnenschein's Music Unlimited Subscription and charged Mr. Sonnenschein's

Payment Method in the amount of $7.99, the full standard monthly rate then associated with

Amazon's paid Music Unlimited subscription.  Thereafter, Defendant continued to automatically

renew Mr. Sonnenschein's Music Unlimited Subscription at the full standard rate on a monthly

basis, charging his Payment Method an additional seven times, for a total of eight unauthorized

charges to Mr. Sonnenschein's Payment Method between October 2017 and June 2018, without

Mr. Sonnenschein's knowing consent.  During this period, Defendant charged, in connection with

Amazon Music Unlimited, a total of at least $63.92 in unauthorized renewal fees to Mr.

Sonnenschein's Payment Method without his knowing or affirmative consent:

| Billing Date | Amount |
|---|---|
| 10/31/2017 | $0.99 |
| 11/30/2017 | $7.99 |
| 12/30/2017 | $7.99 |
| 01/30/2018 | $7.99 |
| 02/30/2018 | $7.99 |
| 03/30/2018 | $7.99 |
| 04/30/2018 | $7.99 |
| 05/30/2018 | $7.99 |
| 06/30/2018 | $7.99 |
| | **Total: $63.92** |

169.    Mr. Sonnenschein did not learn of the above-listed monthly charges until after

incurring the final monthly charge at the end of June 2018, upon review of the account banking

history associated with his Payment Method several months after initial enrollment in his free trial

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

100

1   to Music Unlimited.  Prior to this point, Mr. Sonnenschein did not expect, and thus did not become

2   aware of, the unauthorized monthly charges.  In other words, Mr. Sonnenschein first discovered

3   Defendant's continuing course of unlawful conduct in or around late June or early July of 2018.

4   Immediately upon becoming aware of such charges, Mr. Sonnenschein took prompt action to

5   cancel his Music Unlimited Subscription.  However, as shown above, this realization came too late

6   for Mr. Sonnenschein to avoid financial injury as a result of Defendant's pre- and post-purchase

7   omissions of required terms under the California ARL.

8                               b.     ***Amazon Prime Video Channel Subscription (Shudder)***

9          170.     Furthermore, on August 29, 2020 – approximately *ten and a half months* after Mr.

10   Sonnenschein first signed up for his free trial to the "Shudder" Prime Video Channel on or around

11   October 15, 2019 – Defendant automatically renewed Mr. Sonnenschein's Shudder subscription

12   and charged Mr. Sonnenschein's Payment Method in the amount of $5.99, the full standard

13   monthly rate then associated with Amazon's paid monthly Shudder Prime Video Channel

14   subscription.  Thereafter, on or around September 29, 2020, Defendant again automatically

15   renewed Mr. Sonnenschein's Shudder subscription at the full standard rate for the subsequent

16   month without his knowing consent.  Thus, between October 15, 2019 and September 29, 2020,

17   Defendant charged, in connection with his Shudder Prime Video Channel subscription, a total of at

18   least $11.98 in unauthorized renewal fees to Mr. Sonnenschein's Payment Method without his

19   knowing or affirmative consent:

| Billing Date | Amount |
|:---:|:---:|
| 10/15/2019 | $0.00 |
| 08/29/2020 | $5.99 |
| 09/29/2020 | $5.99 |
| | **Total: $11.98** |

25          171.     Following initial enrollment in his free trial to Shudder in October of 2019, Mr.

26   Sonnenschein did not expect and thus did not become aware of the unauthorized renewal charges

27   Defendant had been posting to his Payment Method on a monthly basis, until after he incurred the

28

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

101

second monthly charge in or around September 2020.  Upon becoming aware of such charges, Mr. Sonnenschein promptly took action to cancel his Shudder Subscription.  However, as shown above, this realization came too late for Mr. Sonnenschein to avoid financial injury.

172.     Mr. Sonnenschein's confusion and surprise with respect to Defendant's billing practices during the life of his Amazon Add-On Subscriptions is the direct result of Defendant's failure to place Mr. Sonnenschein on notice of the recurring nature of his Music Unlimited and Shudder Subscriptions, along with other pertinent and required automatic renewal offer terms. Because Defendant failed to disclose this material information in the manner required by statute, Mr. Sonnenschein was unable at the point of sale to accept Defendant's offers or knowingly enter into the purchase agreements.

173.     Defendant's pre- and post-purchase disclosures fail to comply with the ARL, which deems products provided in violation of the statute to be an unconditional gift to consumers.  *See* Cal. Bus. & Prof. Code § 17603.

174.     As a direct result of Defendant's unlawful conduct described above, Mr. Sonnenschein suffered economic injury.  Specifically, Defendant's ARL violations concerning the Amazon Add-On Subscriptions caused Mr. Sonnenschein's financial injury because Mr. Sonnenschein reasonably relied on Defendant's conspicuous disclosures of the Checkout Pages and the Acknowledgment Emails (and, as a natural corollary, the omissions and/or the inconspicuousness of the disclosures contained therein) in deciding whether to purchase his Amazon Subscriptions in the first place and whether to continue paying for them after that (*i.e.*, by not cancelling the auto-renewal).

175.     Had Defendant complied with the ARL by adequately disclosing – and obtaining Mr. Sonnenschein's affirmative consent to – the requisite Amazon Subscription terms on the Checkout Pages at the point of Mr. Sonnenschein's initial purchase in or around 2019, Mr. Sonnenschein would have been able to read and review the auto renewal terms prior to purchase and he would have not subscribed to Amazon's Music Unlimited or Prime Video Channel Subscriptions in the first place, or would have subscribed on materially different terms, thereby

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

102

avoiding financial injury of any kind as a result of Defendant's ARL violations. Similarly, had Defendant complied with the ARL by adequately disclosing the terms associated with his Amazon Subscriptions in the post-checkout Acknowledgment Emails (*i.e.*, after initial enrollment in each Amazon Subscription, but before any subsequent automatic renewal charge of Mr. Sonnenschein's Payment Method), Mr. Sonnenschein would have been able to read and review the auto renewal terms prior to another automatic renewal, and he would have cancelled his Amazon Subscriptions prior to the expiration of the subscription periods in which he learned such information, thereby avoiding all or part of the aggregate automatic renewal charges Mr. Sonnenschein incurred in connection with each Amazon Subscription from the time of his enrollment in 2017 to the present. But Defendant did not adequately disclose the required automatic renewal terms in either the Checkout Pages or the Acknowledgment Emails, depriving Mr. Sonnenschein of the opportunity to make informed decisions as to the recurring transactions.

176.    The facts giving rise to Mr. Sonnenschein's claims are materially the same as the Class he seeks to represent.

## **CLASS ACTION ALLEGATIONS**

177.    ***Class Definition***: Plaintiffs bring this action on behalf of themselves and all others similarly situated, as a class action pursuant to Federal Rule of Civil Procedure 23. The classes Plaintiffs seek to represent are defined as follows:

(a)    ***Oregon Class***.  All persons in Oregon who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, incurred fee(s) in connection with Defendant's Amazon Subscription offerings (the "Oregon Class").

(b)    ***Oregon Subclass.***  All members of the Oregon Class who, within the applicable statute of limitations periods, up to and including the date of final judgment in this action, incurred fee(s) in connection with their enrollment in a free trial to any of Defendant's Amazon Subscription offerings (the "Oregon Subclass").

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

103

(c)     ***California Class***.  All persons in California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, incurred fee(s) in connection with Defendant's Amazon Subscription offerings (the "California Class").

(d)     ***Nationwide Class***.  All persons in the United States who, within the applicable statute of limitations periods, up to and including the date of final judgment in this action, incurred fee(s) in connection with Defendant's Amazon Subscription offerings (the "Nationwide Class").

178.   Specifically excluded from the Classes and Subclass are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

179.   Plaintiffs reserve the right to amend the definition of the Classes and Subclass if discovery or further investigation reveals that the Classes and/or Subclass should be expanded or otherwise modified.

180.   ***Numerosity.***  Members of the Classes and Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, the California Class comprises at least millions of consumers throughout California, and the Oregon Class and Subclass each comprise at least hundreds of thousands or millions of consumers throughout Oregon.  The precise number of members of the Classes and Subclass and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class and Subclass members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

181.   ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class and Subclass members and predominate over questions affecting only individual Class and Subclass members.  Common legal and factual questions include, but are not limited to, the following:

(a)     ***The Oregon Class and Subclass:*** (i) whether Defendant's Amazon Subscriptions constitute "Automatic renewal[s]" and/or "Continuous service[s]" within the

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

104

meaning of ORS 646A.293(1) and (4); (ii) whether Defendant failed to present the automatic

renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before

the subscription or purchasing agreement was fulfilled and in visual proximity to the request for

consent to the offer, in violation of ORS 646A.295(1)(a); (iii) whether Defendant charged Plaintiff

Daly's and Oregon Class members' Payment Method for an automatic renewal or continuous

service without first obtaining their affirmative consent to the automatic renewal offer terms or

continuous service offer terms in violation of ORS 646A.295(1)(b); (iv) whether Defendant failed

to provide an acknowledgment that included the automatic renewal or continuous service offer

terms and information on how to cancel in a manner that is capable of being retained by Plaintiff

Daly and the Oregon Class, in violation of ORS 646A.295(1)(c); (v) whether the goods and

services provided by Defendant to consumers pursuant to the Amazon Subscriptions are deemed

"unconditional gifts" in accordance with ORS 646A.295(5); (vi) whether Defendant's failure to

comply with the Oregon ARL as alleged herein violated the UTPA's prohibitions of engaging in

unlawful practices in the course of its business, vocation, or occupation under ORS 646.608(1)(ttt);

(vii) whether Defendant's conduct was proscribed by the FOL pursuant to ORS 646.644(2), which

prohibits a person from "mak[ing] a free offer to a consumer, or impos[ing] a financial obligation

on the consumer as a result of the consumer's acceptance of a free offer, unless the person

provides the consumer with clear and conspicuous information regarding the terms of the free offer

before the consumer agrees to accept the free offer"; (viii) whether Defendant's conduct was

proscribed by the FOL pursuant to ORS 646.644(4), which provides that a "person may not

impose a financial obligation on a consumer as a result of the consumer's acceptance of a free

offer unless the consumer's affirmative consent to the terms of the free offer as set forth in

subsection (2) of this section is obtained"; (ix) whether Defendant's failure to comply with the

Oregon FOL as alleged herein violated the UTPA's prohibitions of engaging in unlawful practices

in the course of its business, vocation, or occupation under ORS 646.608(1)(sss); (x) whether

Defendant's use or employment of the unlawful practice(s) alleged herein was willful and/or

reckless or knowing; (xi) whether Plaintiff Daly and members of the Oregon Class and Subclass

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

105

suffered ascertainable loss of money or property as a result of Defendant's conduct; (xii) whether Plaintiff Daly and members of the Oregon Class and Subclass are entitled to recover statutory damages of $200 per violation pursuant to ORS 646.638(1) and ORS 646.638(8); (xiii) whether Plaintiff Daly and the Oregon Class and Subclass are entitled to recover punitive damages and/or equitable relief under ORS 646.638(1); (xiv) whether Plaintiff Daly and the Oregon Class and Subclass are entitled to attorneys' fees and costs under ORS 646.638(3); and (xv) whether Defendant should be enjoined from further engaging in the misconduct alleged herein.

(b)     ***The California Class:*** (i) whether Defendant's Amazon Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof. Code § 17601(a); (ii) whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (iii) whether Defendant charged Plaintiffs' and Class members' Payment Method for an automatic renewal or continuous service without first obtaining their affirmative consent to the automatic renewal offer terms or continuous service offer terms in violation of Cal. Bus. & Prof. Code § 17602(a)(2); (iv) whether Defendant failed to provide an acknowledgment that included the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiffs and the Class, in violation of Cal. Bus. & Prof. Code § 17602(a)(3); (v) whether the goods and services provided by Defendant are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code § 17603; (vi) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (v) whether Plaintiffs and the Class are entitled to damages and/or restitution; (vi) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (vii) whether Plaintiffs and the Class are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

106

(c)    *The Nationwide Class:* (i) whether Defendant's conduct alleged herein constitutes conversion, unjust enrichment, negligent misrepresentation, and/or fraud; (ii) whether Plaintiffs and the Class are entitled to damages and/or restitution; and (iii) whether Defendant should be enjoined from further engaging in the misconduct alleged herein.

182.    *Typicality.*  The claims of Plaintiffs are typical of the claims of the proposed Classes and Subclass in that Plaintiffs and members of the proposed Classes and Subclass sustained damages as a result of Defendant's uniform wrongful conduct, based upon, *inter alia*, Defendant's failure to adequately disclose and obtain Plaintiffs' and the Class and Subclass members' affirmative consent to the automatic renewal offer terms associated with the Amazon Subscriptions before charging their Payment Methods.

183.    *Adequacy*.  Plaintiffs will fairly and adequately protect Class and Subclass members' interests.  Plaintiffs have no interests antagonistic to Class and Subclass members' interests, and Plaintiffs have retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

184.    *Superiority*.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes and Subclass; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

185.    Defendant has acted or failed to act on grounds generally applicable to the Classes and Subclass, thereby making appropriate final injunctive relief with respect to the Classes and Subclass as a whole.

186.    Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiffs and members of the Classes and Subclass will likely retain the benefits of Defendant's wrongdoing.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

107

187.     Based on the foregoing allegations, Plaintiffs' claims for relief include those set forth below.

**COUNT I**

**Violations of Oregon's Unlawful Trade Practices Act ("UTPA"),
ORS 646.608(1)(ttt)**
(*On Behalf Of The Oregon Class*)

188.     Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

189.     Plaintiff Mark Daly brings this claim individually and on behalf of the members of the proposed Oregon Class against Defendant.

190.     The Oregon Unlawful Trade Practices Act ("UTPA"), which was enacted in 1971 and is codified at ORS 646.605-646.656, is remedial statutory scheme enacted as a comprehensive statute for the protection of consumers from unlawful trade practices.  The UTPA prohibits unlawful practices in the course of the person's business, vocation, or occupation with respect to both general and specific conduct.  Specifically proscribed conduct is set forth under Section 646.608(1), which has 79 subsections and many of which refer to other provisions of the Oregon Revised Statutes.  *See* ORS 646.608(1)(a)–(aaaa).

191.     The UTPA authorizes private civil actions.  Pursuant to Section 646.638(8)(a) of the UTPA, "a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608 … may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater."  ORS 646.638(1); *see also* ORS 646.638(8).  In a class action, plaintiffs may recover statutory damages only if they suffered an ascertainable loss "as a result of a reckless or knowing use or employment" of an unlawful trade practice.  ORS 646.638(8)(a).

192.     Defendant is a "Person" as defined in ORS 646.605(4).

193.     The Amazon Subscriptions are goods as defined by ORS 646.605(6)(a), because the constitute products that may be obtained primarily for personal, family, or household uses.

194.     "The UTPA prohibits businesses from charging customers other types of fees when

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

108

they are not disclosed in the particular way that the law requires." *Stewart v. Albertson's, Inc.*, 308 Or. App. 464, 492 n.17, *review denied*, 368 Or. 138 (2021); *Scharfstein v. BP West Coast Products, LLC*, 292 Or. App. 69, 89, *review denied*, 363 Or. 815 (2018) (same); *see also Miller v. WinCo Foods, LLC*, 2020 WL 6693149, at *7 (D. Or. Sept. 3, 2020), *report and recommendation adopted*, 2020 WL 6685697 (D. Or. Nov. 12, 2020); *Russell v. Ray Klein, Inc.*, 2019 WL 6137455, at *4 (D. Or. Nov. 19, 2019); *Tri-W. Const. Co. v. Hernandez*, 43 Or. App. 961, 972 (1979); *Sanders v. Francis*, 277 Or. 593, 598-99 (1977); *Rollins v. Wink Labs, Inc.*, 2021 WL 1976082, at *5 (D. Or. Feb. 22, 2021).

195.    As explained below, at all relevant times, Defendant violated, and continues to violate, the UTPA's proscription against engaging in unlawful conduct by charging customers certain types of fees without first disclosing the required pre-purchase information and obtaining authorization in the particular way that the law requires.

196.    Specifically, Defendant's actions are "unlawful" within the meaning of the UTPA because it violated the Oregon's Automatic Renewal Law (the "Oregon ARL"), ORS §§ 646A.292-646A.295, in direct violation of Section 646.608(1)(ttt) of the UTPA.  In particular, following consumers' (including Plaintiff Daly's and Oregon Class members') initial enrollments in the Amazon Subscriptions, Defendant automatically charges subscription fees to consumers' Payment Methods, notwithstanding Defendant's uniform and systematic failure to provide legally required information at the point of purchase.  As is explained in the above paragraphs of this complaint, which are incorporated herein by reference, by doing so, Defendant violates multiple provisions of Oregon's ARL.

197.    Defendant's noncompliance with the Oregon ARL is a direct violation of UTPA. *See* ORS 646.608(1)(ttt) ("(1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following: … (ttt) Violates a provision of ORS 646A.295 (Prohibited actions).").

198.    Defendant violated, and continues to violate, the ARL because, at all relevant times, it failed, and continue to fail, to:  (a) provide the auto-renewal terms associated with the Amazon

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

109

Subscriptions in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity to the request for consent to the offer, in violation of ORS 646A.295(1)(a); (b) obtain the affirmative consent of Plaintiff Daly and the Oregon Class to those terms before charging their Payment Methods, in violation of ORS 646A.295(1)(b); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of ORS 646A.295(1)(c).  Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Amazon Subscriptions, in violation of ORS 646A.295(2).

199.    Each of these acts and practices constitutes an independent violation of the Oregon ARL, and thus an independent violation of the Section 646.608(1) of the UTPA.

200.    As discussed above, Defendant was prohibited from making the automatic renewal charges to Plaintiff Daly's and Oregon Class members' Payment Methods without first adequately disclosing to the consumer the automatic renewal offer terms associated with the Amazon Subscriptions and obtaining the consumer's affirmative consent to the agreement containing those terms.  *See* ORS 646A.295(1)(a)-(b) ("(1) It is unlawful for a person that makes an automatic renewal or continuous service offer to a consumer in this state to do any of the following:  (a) Fail to present the automatic renewal offer terms … in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity … to the request for consent to the offer.  (b) Charge the consumer's [Payment Method] for an automatic renewal … without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms"); *see also* ORS 646A.295(4) ("The requirements of this section must be met prior to the completion of the initial order for the automatic renewal or continuous service[.]").  Nevertheless, Defendant failed to do either before charging Plaintiff Daly and Oregon Class members in connection with the Amazon Subscriptions, in violation of the Oregon ARL.

201.    Thus, Defendant "failed to disclose the legally required information and assessed

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

110

a . . . fee in violation of the UTPA." *Scharfstein v. BP W. Coast Prod., LLC*, 292 Or. App. 69, 90 (2018).  "In doing so, [Defendant] illegally charged [their] customers [recurring subscription fees], thereby causing the ascertainable loss." *Id.*; *see also Stewart v. Albertson's, Inc.*, 308 Or. App. 464, 492 n.17, *review denied*, 368 Or. 138 (2021); *Miller v. WinCo Foods, LLC*, 2020 WL 6693149, at *7 (D. Or. Sept. 3, 2020), *report and recommendation adopted*, 2020 WL 6685697 (D. Or. Nov. 12, 2020); *Rollins v. Wink Labs, Inc.*, 2021 WL 1976082, at *5 (D. Or. Feb. 22, 2021); *Russell v. Ray Klein, Inc.*, 2019 WL 6137455, at *4 (D. Or. Nov. 19, 2019); *Wright v. Kia Motors Am. Inc.*, 2007 WL 316351, at *3 (D. Or. Jan. 29, 2007); *Tri-W. Const. Co. v. Hernandez*, 43 Or. App. 961, 972 (1979); *Sanders v. Francis*, 277 Or. 593, 598-99 (1977).

202.    Moreover, pursuant to the ARL, all products received from Defendant in violation of the ARL "shall for all purposes be deemed unconditional gift[s] to the consumer[s.]"  ORS 646A.295(5).  In other words, once Defendant tendered, and Plaintiff Daly and Oregon Class members were provided access to, the "goods, wares, merchandise or products" of the Amazon Subscriptions (*i.e.*, their benefits) vis-à-vis their activation, Plaintiff and Class members assumed title and ownership over such goods as their property, at which point Plaintiff and Class members were vested with the right to "use or dispose of them in any manner the[y] see[] fit without any obligation to [Defendant.]"  *Id.*

203.    Thus, by ultimately revoking Plaintiff Daly's and other similarly situated Class members' access to such goods once recurring payments were eventually stopped, Defendant wrongfully deprived Plaintiff Daly and Oregon Class members of their property.

204.    Thus, Plaintiff Daly has sustained an ascertainable loss of money *and* property as a result of Defendant's use or employment of methods, acts, or practices declared unlawful by ORS 646.608(1)(ttt) (*i.e.*, Defendant's conduct in violation of Oregon's ARL).

205.    Because Defendant illegally charged Plaintiff Daly and the Oregon Class unlawful fees in connection with the Amazon Subscriptions, Plaintiff and Class members are entitled to recover statutory damages of $200 per violation of the UTPA under ORS 646.608(1)(ttt).  *See* ORS 646.638(1) and (8)(a) (class members can recover "actual damages or statutory damages of $200,

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

111

1  whichever is greater").

2      206.    In the alternative, Defendant's unlawful conduct as described above caused Plaintiff

3  Daly's and Oregon Class members' ascertainable loss because Defendant's acts and practices were

4  intended to deceive Plaintiff and the Class, and – as a result of Plaintiff Daly's and Oregon Class

5  members' reasonable reliance on Defendant's omissions of material offer terms required to be

6  disclosed by the Oregon ARL – have resulted, and will continue to result, in damages to Plaintiff

7  Daly and the Oregon Class in the form of ascertainable loss on money and property.

8      207.    As a direct and proximate result of Defendant's unlawful practices described herein,

9  Defendant has received, and continues to hold, unlawfully obtained property and money belonging

10 to Plaintiff Daly and the Oregon Class in the form of recurring payments collected from Plaintiff

11 and Class members in connection with their Amazon Subscriptions.  Defendant has profited from

12 its unlawful acts and practices in the sum total amount of such recurring payments that were

13 collected by Defendant during the relevant time period, and any and all interest accrued thereon.  If

14 Defendant had complied with the Oregon ARL, Defendant would not have made the unlawful

15 charges, and would not have obtained these monies from Plaintiff Daly and the Oregon Class.

16     208.    As alleged above, Defendant's violations of the UTPA under ORS 646.608(1)(ttt)

17 as described above were willful, as well as reckless and/or knowing, because, at the time Defendant

18 committed the violations at issue, Defendant knew or should have known that its actions violated

19 the Oregon UTPA.  *See, e.g.*, *supra*.

20     209.    Accordingly, Plaintiff Daly, individually and on behalf of similarly situated Oregon

21 consumers, seeks all monetary and non-monetary relief permitted by law under ORS 646.605 *et*

22 *seq.*, including ORS 646.636 and ORS 646.638(1) and (8), including equitable relief, actual

23 damages or statutory damages of $200 per violation (whichever is greater), and pre- and-post

24 judgment interest, along with any other appropriate equitable relief deemed necessary or proper.

25     210.    Further, Plaintiff Daly and the Oregon Class seek recovery of punitive damages

26 from Defendant because Defendant's conduct was reprehensible.  Defendant inflicted economic

27 injury upon Plaintiff and the proposed Class in an intentional manner by, for instance, creating or

28

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

causing to exist dark patterns on the Amazon Platform in order to: (1) trick users into unwittingly signing up for recurring bills in connection with the automatically renewing Amazon Subscriptions; and (2) prevent user unsubscription from the Amazon Subscriptions by adopting complex cancellation procedures to increase the friction in the subscription cancellation process. In other words, the user interface and experience of the Amazon Platform is fundamentally designed to enhance accidental sign-ups and prevent intentional cancellation, thereby ensuring continued revenues from consumers by trapping them in the ongoing subscription purchase.

211. Defendant utilized its singular control over the Amazon Subscriptions to induce Plaintiff Daly and the Oregon Class to purchase the Amazon Subscriptions over alternative automatic renewal programs for music and television streaming offered by competitors that feature similar benefits and content and are sold at similar and/or lesser price points.

212. Under ORS 646.638(3), Plaintiff Daly and Oregon Class members are also entitled to recover their reasonable attorney fees from Defendant for Defendant's violations of Oregon law as detailed herein.

## COUNT II
### Violations of Oregon's UTPA, ORS 646.608(1)(sss)
### (*On Behalf Of The Oregon Subclass*)

213. Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

214. Plaintiff Mark Daly brings this claim individually and on behalf of the members of the proposed Oregon Subclass against Defendant.

215. "The UTPA prohibits businesses from charging customers other types of fees when they are not disclosed in the particular way that the law requires." *Stewart v. Albertson's, Inc.*, 308 Or. App. 464, 492 n.17, *review denied*, 368 Or. 138 (2021); *Scharfstein v. BP West Coast Products, LLC*, 292 Or. App. 69, 89-90, *review denied*, 363 Or. 815 (2018) (same); *see also Miller v. WinCo Foods, LLC*, 2020 WL 6693149, at *7 (D. Or. Sept. 3, 2020), *report and recommendation adopted*, 2020 WL 6685697 (D. Or. Nov. 12, 2020); *Russell v. Ray Klein, Inc.*, 2019 WL 6137455, at *4 (D. Or. Nov. 19, 2019); *Wright v. Kia Motors Am. Inc.*, 2007 WL

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

113

316351, at *3 (D. Or. Jan. 29, 2007); *Tri-W. Const. Co. v. Hernandez*, 43 Or. App. 961, 972 (1979); *Sanders v. Francis*, 277 Or. 593, 598-99 (1977). At all relevant times, Defendant violated, and continues to violate, the UTPA's proscription against engaging in unlawful conduct by charging customers certain types of fees without first disclosing the required pre-purchase information and obtaining authorization in the particular way that the law requires.

216. Specifically, Defendant's actions are "unlawful" within the meaning of the UTPA because it violated the Oregon's Free Offer Law ("FOL"), ORS 646.644, in direct violation of Section 646.608(1)(sss) of the UTPA. In particular, following consumers' (including Plaintiff Daly's and Oregon Class members') initial enrollments in the Amazon Subscriptions, Defendant automatically charges fees to consumers' Payment Methods, notwithstanding Defendant's uniform and systematic failure to provide legally required information at the point of purchase. As explained below, by doing so, Defendant violates multiple provisions of Oregon's FOL.

217. Defendant's noncompliance with the FOL is a direct violation of UTPA. *See* ORS 646.608(1)(sss) ("(1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following: … (sss) Violates a provision of ORS 646.644 (Free offer).").

218. Defendant violated, and continues to violate, the FOL under ORS 646.644(2) because, at all relevant times, it failed, and continue to fail, to "provide[] the consumer with clear and conspicuous information regarding the terms of the free offer before the consumer agrees to accept the free offer, including at a minimum:" (i) "[i]dentification of all … enrollments in a membership, subscription or service contract, that the consumer will receive or incur a financial obligation for as a result of accepting the free offer[,]" in violation of ORS 646.644(2)(a); (ii) "[t]he cost to the consumer of any financial obligation the consumer will incur if the consumer accepts the free offer, including any fees or charges[,]" in violation of ORS 646.644(2)(b); (iii) "[a] statement[] … that by accepting the free offer, the consumer will become obligated for … enrollment in a membership, subscription or service contract, unless the consumer takes affirmative action to cancel the free offer or otherwise reject … the enrollment in a membership,

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

114

subscription or service contract[,]" in violation of ORS 646.644(2)(d); (iv) "the consumer's right to cancel the free offer using procedures specifically identified for that purpose that, at a minimum, enable the consumer to cancel by calling a toll-free telephone number or to cancel in a manner substantially similar to that by which the consumer accepted the free offer[,]" in violation of ORS 646.644(2)(e); (v) "[t]he time period during which the consumer must cancel in order to avoid incurring a financial obligation as a result of accepting the free offer[,]" in violation of ORS 646.644(2)(f); and (vi) "the consumer's right to receive a credit on goods or services received as a result of accepting the free offer when the goods or services are returned or rejected, and the time period during which the goods or services must be returned or rejected for the purpose of receiving a credit[,]" in violation of ORS 646.644(2)(g).

219.    Further, Defendant violated, and continues to violate, the FOL under ORS 646.644(4) because it has, at all relevant times, imposed financial obligations on consumers, including Plaintiff Daly and the Oregon Subclass as a result of their acceptance of a free offer without first obtaining their affirmative consent to the terms of the free offer as set forth in ORS 646.644(2). *See* ORS 646.644(4) ("A person may not impose a financial obligation on a consumer as a result of the consumer's acceptance of a free offer unless the consumer's affirmative consent to the terms of the free offer as set forth in subsection (2) of this section is obtained.").

220.    Thus, Defendant "failed to disclose the legally required information [or obtain the requisite affirmative consent] and assessed a . . . fee in violation of the UTPA." *Scharfstein v. BP W. Coast Prod., LLC*, 292 Or. App. 69, 90 (2018). "In doing so, [Defendant] illegally charged [their] customers [recurring subscription fees], thereby causing the ascertainable loss." *Id.*; *see also Miller v. WinCo Foods, LLC*, 2020 WL 6693149, at *7 (D. Or. Sept. 3, 2020); *Russell v. Ray Klein, Inc.*, 2019 WL 6137455, at *4 (D. Or. Nov. 19, 2019); *Stewart v. Albertson's, Inc.*, 308 Or. App. 464, 492 n.17 (2021); *Rollins v. Wink Labs, Inc.*, 2021 WL 1976082, at *5 (D. Or. Feb. 22, 2021); *Wright v. Kia Motors Am. Inc.*, 2007 WL 316351, at *3 (D. Or. Jan. 29, 2007); *Tri-W. Const. Co. v. Hernandez*, 43 Or. App. 961, 972 (1979); *Sanders v. Francis*, 277 Or. 593, 598-99 (1977).

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

115

221.    Defendant also violated the FOL under ORS 646.644(5) because, as alleged above, *see supra*, it has "fail[ed] or refuse[d] to cancel the free offer [where] consumer[s have] used, or made reasonable efforts to attempt to use, one of the procedures required by subsection (2)(e) of this section." ORS 646.644(5).  By way of example, Plaintiff attempted to cancel his Amazon Subscription by calling the toll-free number associated with Defendant's customer service line (*i.e.*, one the procedures explicitly required by ORS 646.644(2)(e)) to notify Defendant that he did not authorize – and to request a refund of – the monthly charges he incurred in April and May of 2022.  However, Defendant's customer service representative told Plaintiff's that it was unable to cancel his Prime subscription for him and denied Plaintiff's refund request.  Ultimately, Mr. Daly was only able to cancel his Prime subscription and avoid incurring further renewal charges by circumventing Amazon altogether and going through his financial institution to cancel the Payment Method associated with his Amazon Subscription.  Defendant's "fail[ure] or refus[al] to cancel the free offer" despite Plaintiff's "reasonable efforts to attempt to use[] one of the procedures required by [ORS 646.644(2)(e)]" is a violation of the FOL under ORS 646.644(5).

222.    Inasmuch, Plaintiff and Subclass members have sustained an ascertainable loss of money as a result of Defendant's use or employment of methods, acts, or practices declared unlawful by ORS 646.608(1)(sss) (*i.e.*, Defendant's conduct in violation of Oregon's FOL).

223.    Because Defendant illegally charged Plaintiff and the Subclass unlawful fees in connection with their enrollments in free trials to the Amazon Subscriptions, Plaintiff and Subclass members are entitled to recover statutory damages of $200 per violation of the UTPA under ORS 646.608(1)(sss). *See* ORS 646.638(1) and (8)(a) (class members can recover "actual damages or statutory damages of $200, whichever is greater").

224.    As alleged above, Defendant's violations of the UTPA under ORS 646.608(1)(sss) as described above were willful, as well as reckless and/or knowing, because, at the time Defendant committed the violations at issue, Defendant knew or should have known that its actions violated the Oregon UTPA. *See supra*.

CLASS ACTION COMPLAINT
CASE NO.
116
BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

225.     Accordingly, Plaintiff Daly, individually and on behalf of members of the proposed Oregon Subclass, seeks all monetary and non-monetary relief permitted by law under ORS 646.605 *et seq.*, including ORS 646.636 and ORS 646.638(1) and (8), including equitable relief, actual damages or statutory damages of $200 per violation (whichever is greater), and pre- and post judgment interest, along with any other appropriate equitable relief deemed necessary or proper.

226.     Under ORS 646.638(3), Plaintiff Daly and Oregon Subclass members are also entitled to recover their reasonable attorney fees from Defendant for Defendant's violations of Oregon law as detailed herein.

## COUNT III
### Violations of California's Unfair Competition Law ("UCL"),
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (*On Behalf Of The California Class*)

227.     Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

228.     Plaintiffs Nacarino, Sylvester, and Sonnenschein (the "California Plaintiffs") bring this claim individually and on behalf of the members of the proposed California Class against Defendant.

229.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

230.     As alleged in more detail below, Amazon's acts and practices alleged herein are "unlawful" within the meaning of the UCL because they violated the following laws, regulations, and rules, including the Automatic Renewal Law (the "California ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, as well as the CLRA, FAL, and all other consumer protection statutes and common laws as asserted in Counts III through IX below.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

117

Violations of California's Automatic Renewal Law

231.     Additionally, at all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unlawful conduct as a result of its violations of the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.*, as alleged in the above paragraphs of this complaint, which are incorporated herein by reference.

232.     Specifically, Defendant failed, and continues to fail, to:  (a) provide the auto-renewal terms associated with its Amazon Subscriptions "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain the affirmative consent of Plaintiffs and the Class to those terms before charging their Payment Methods, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).  Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Amazon Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

233.     Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

234.     All products received from Defendant in violation of the ARL, Cal. Bus. Prof. Code §§ 17602, *et seq.*, constitute "unconditional gifts."  *See* Cal. Bus. Prof. Code § 17603.

235.     As a direct and proximate result of Defendant's unlawful and/or unfair practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiffs and the Class in the form of payments made by Plaintiffs and the Class for their Amazon Subscriptions.  Defendant has profited from its unlawful and/or unfair acts and practices in the amount of those business expenses and interest accrued thereon.  Thus, Plaintiffs have suffered injury in fact and lost money or property as a result of Amazon's violations of California's ARL.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

118

236.     Amazon was prohibited from making these charges and taking Plaintiffs' money without the required affirmative consent.  If Amazon had complied with the law, Amazon could not have made the charges, and would not have obtained this money from Plaintiffs.

Violations of Other Statutes and Common Laws

237.     Furthermore, as alleged below, Defendant has committed unlawful and/or unfair business practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiffs and the Class.

238.     Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

239.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

240.     Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

241.     Plaintiffs and the members of the Class have suffered a substantial injury in fact and lost money by virtue of Defendant's acts of unfair competition, which caused them to purchase the Amazon Subscriptions.  Had Defendant complied with its disclosure obligations under the ARL, Plaintiffs and members of the Class would not have purchased their Amazon Subscriptions or would have cancelled their Amazon Subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees.  Thus, Plaintiffs and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

119

242.    Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct.  The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices associated with the Amazon Subscriptions are still used by Defendant today.

243.    Plaintiffs and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiffs' and the Class's Payment Methods in connection with their Amazon Subscriptions during the four years preceding the filing of this Complaint.  Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiffs and the Class, from whom they were unlawfully taken.

244.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and members of the California Class seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant.

245.    The California Plaintiffs, individually and on behalf of similarly situated California consumers, bring this action as private attorneys general and to vindicate and enforce an important right affecting the public interest.  Plaintiffs and the California Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

## COUNT IV
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(*On Behalf Of The California Class*)**

246.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

247.    The California Plaintiffs brings this claim individually and on behalf of the members of the proposed California Class against Defendant.

248.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,  …in any advertising device … or in any other manner or means

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

120

whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

249.    Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California and the general public concerning Defendant's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading.  Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

250.    Defendant's statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendant's Amazon Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments.  For instance, Defendant's representation on the Checkout Pages of the Amazon Website that members can "cancel [their Amazon Subscriptions] anytime" is contradicted by their policy set forth elsewhere in the Amazon Website that customers must cancel their Amazon Subscriptions prior to the next charge.  In light of Defendant's disclosure of the former and silence as to the latter on the Checkout Pages for the Amazon Subscriptions, the representations and omissions on the Checkout Pages constitute false and deceptive advertisements.

251.    Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

252.    Plaintiffs and the members of the California Class were deceived by Defendant's statements and omissions made online when they signed up and started paying for their Amazon Subscriptions, and other California consumers and members of the public were also or are likely to be deceived as well.  Any reasonable consumer would be misled by Defendant's false and

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

121

misleading statements and material omissions.  Plaintiffs and other members of the Class did not learn of Defendant's cancellation and automatic payment policies until after they had already signed up and started paying for Defendant's Amazon Subscription.  They relied on Defendant's statements and omissions to their detriment.

253.    Plaintiffs and the California Class lost money or property as a result of Defendant's FAL violations because they would not have purchased the Amazon Subscriptions on the same terms if the true facts were known about the product and the Amazon Subscriptions do not have the characteristics as promised by Defendant.

254.    The California Plaintiffs, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

### COUNT V
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***
**(*On Behalf Of The California Class*)**

255.    Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

256.    The California Plaintiffs bring this claim individually and on behalf of the members of the proposed California Class against Defendant.

257.    Plaintiffs and the members of the California Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiffs and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

258.    Defendant's selection and/or subscription offers and the video, music, and other products pertaining thereto are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b).  The purchases by Plaintiffs and the California Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

122

259.     The acts and practices of Defendant as described above were intended to deceive Plaintiffs and the California Class as described herein, and have resulted, and will result, in damages to Plaintiffs and the California Class.  These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions deceiving that the Amazon Subscriptions have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

260.     Plaintiffs and the California Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were induced to purchase Amazon Subscriptions and/or pay renewal fees they would not have otherwise purchased and/or paid.  Had Defendant fully and clearly disclosed the terms associated with the Amazon Subscriptions, Plaintiffs and the Class would have not subscribed to the Amazon Subscriptions, or they would have cancelled their Amazon Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription period.

261.     Plaintiffs, on behalf of themselves and all other members the California Class, seek an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

262.     In compliance with the provisions of California Civil Code § 1782, Plaintiff Nacarino sent written notice to Defendant on September 8, 2021, informing Defendant of her intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, and advised Defendant that it was in violation of the CLRA and demanded that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiff Nacarino and "all other persons similarly situated."  The letter was delivered to Defendant on September 13, 2021, as reflected by the proof of delivery issued by the United States Postal Service.  Defendant did not take action to rectify the injuries caused by their unlawful conduct as

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

123

described in the 9/8/21 letter and above on a class-wide basis within 30 days of receipt of the letter. Accordingly, Plaintiffs Nacarino, Sylvester, and Sonnenschein, individually and on behalf of the proposed California Class, seek monetary damages from Defendant as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

## COUNT VI
### Conversion
### (*On Behalf Of The Nationwide Class*)

263. Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

264. Plaintiffs brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

265. As a result of charges made by Defendant to Plaintiffs' and Nationwide Class members' Payment Methods without authorization and in violation of common law, Defendant has taken money that belongs to Plaintiffs and the Nationwide Class.

266. The amount of money wrongfully taken by Defendant is capable of identification.

267. Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice.

268. As a result of Defendant's actions, Plaintiffs and members of the Nationwide Class have suffered damages.

## COUNT VII
### Unjust Enrichment / Restitution
### (*On Behalf Of The Nationwide Class*)

269. Plaintiffs re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

270. Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

271. Plaintiffs and the Nationwide Class conferred benefits on Defendant by purchasing the Amazon Subscriptions.

272. Defendant has been unjustly enriched in retaining the revenues derived from

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

124

Plaintiffs and the Nationwide Class's purchases of the Amazon Subscriptions. Retention of those moneys under these circumstances is unjust and inequitable because Defendant's failure to disclose material terms of the purchase agreement, in violation of common law, induced Plaintiffs and the Nationwide Class to purchase the Amazon Subscriptions. These omissions caused injuries to Plaintiffs and the Nationwide Class because they would not have purchased the Amazon Subscriptions at all, or on the same terms, if the true facts were known.

273. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and the Nationwide Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Nationwide Class for their unjust enrichment, as ordered by the Court.

## COUNT VIII
### Negligent Misrepresentation
#### (*On Behalf Of The Nationwide Class*)

274. Plaintiffs hereby re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

275. Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

276. As discussed above, Defendant misrepresented in its advertisements and related statements made in connection with the sign-up and purchase processes for the Amazon Subscriptions that, for instance, subscribers can "cancel anytime." Defendant also misrepresented the recurring price associated with the Amazon Subscriptions, the advertisements and related statements made in connection with which omitted applicable taxes and fees, misleading Plaintiffs and Class Members as to the precise amount of money that would be withdrawn from their Payment Methods in connection with the Amazon Subscriptions. Thus, Defendant omitted, failed to disclose, and intentionally concealed from such advertisements and related statements material facts concerning billing, cancellation, and automatic payment terms, policies, and requirements.

277. At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

125

278.    At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Amazon Subscriptions and their associated terms.

279.    The negligent misrepresentations and omissions made by Defendant, upon which Plaintiffs and Nationwide Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Nationwide Class members to purchase and enroll in Defendant's Amazon Subscription programs.

280.    Plaintiffs and Nationwide Class members would not have purchased the Amazon Subscriptions if the true facts had been known.

281.    The negligent actions of Defendant caused damage to Plaintiffs and Nationwide Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT IX
### Fraud

282.    Plaintiffs hereby re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

283.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

284.    As discussed above, Defendant provided Plaintiffs and Nationwide Class members with false or misleading material information and failed to disclose material facts about the Amazon Subscriptions and their associated automatic renewal terms, including terms regarding Defendant's cancellation policy, price, and related billing practices and policies.  These misrepresentations and omissions were made by Defendant with knowledge of their falsehood.

285.    The misrepresentations and omissions made by Defendant, upon which Plaintiffs and Nationwide Class members reasonably and justifiably relied, were intended to induce, and actually induced, Plaintiffs and Class members to purchase the Amazon Subscriptions.

286.    The fraudulent actions of Defendant caused damage to Plaintiffs and Nationwide Class members, who are entitled to damages and other legal and equitable relief as a result.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

126

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.    For an order certifying the proposed Classes and Subclass, naming Plaintiff Daly as representative of the Oregon Class and Oregon Subclass, naming Plaintiffs Nacarino, Sylvestor, and Sonnenschein as representatives of the California Class, naming all Plaintiffs as representatives of the Nationwide Class, and appointing Plaintiffs' attorneys as Class Counsel to represent the Classes and Subclass;

b.    For an order declaring Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiffs and members of the Classes and Subclass on all counts asserted herein;

d.    For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.    For an order awarding Plaintiffs and the Classes and Subclass their reasonable attorneys' fees, expenses, and costs of suit.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

127

1    Dated: June 29, 2022                        Respectfully submitted,

2

3                                               **CARSON NOEL PLLC**
                                                By:_____*/s/ Wright A. Noel*___
4                                                          Wright A. Noel

5                                               Wright A. Noel (State Bar No. 25264)
                                                20 Sixth Avenue NE
6                                               Issaquah, WA 98027
                                                Telephone: (425) 837-4717
7                                               Facsimile: (425) 837-5396
                                                Email: wright@carsonnoel.co]
8

9                                               *Local Counsel for Plaintiffs and the Putative Class*

10                                              **BURSOR & FISHER, P.A.**
                                                By:_____*/s/ Philip L. Fraietta*_____
11                                                         Philip L. Fraietta

12                                              Philip L. Fraietta *
                                                Frederick J. Klorczyk III *
13                                              888 Seventh Avenue
                                                New York, NY  10019
14                                              Telephone:  (646) 837-7150
                                                Facsimile:  (212) 989-9163
15                                              Email: pfraietta@bursor.com
                                                       fklorczyk@bursor.com
16

17                                              **BURSOR & FISHER, P.A.**
                                                Neal J. Deckant *
18                                              Julia K. Venditti *
                                                1990 North California Boulevard, Suite 940
19                                              Walnut Creek, CA  94596
                                                Telephone:  (925) 300-4455
20                                              Facsimile:  (925) 407-2700
                                                Email: ndeckant@bursor.com
21                                                      jvenditti@bursor.com

22                                              *\* Pro Hac Vice Application Forthcoming*
                                                *Attorneys for Plaintiffs and the Putative Class*
23

24

25

26

27

28
_____
CLASS ACTION COMPLAINT                                    BURSOR & FISHER, P.A.
CASE NO.                                                    888 SEVENTH AVENUE
                                                           NEW YORK, NY 10019

1

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

2

I, Wright Noel, declare as follows:

3

1.      I am an attorney at law licensed to practice in the State of Washington and a

4

member of the bar of this Court.  I am a Partner at Carson Noel PLLC, counsel of record for

5

Plaintiffs Elena Nacarino, Susan Sylvester, and Michael Sonnenschein in this action.  Plaintiff

6

Nacarino alleges that she resides in San Francisco, California; Plaintiff Sylvester alleges that she

7

resides in Elk Grove, California; and Plaintiff Sonnenschein alleges that he resides in Los Angeles,

8

California.  I have personal knowledge of the facts set forth in this declaration and, if called as a

9

witness, I could and would competently testify thereto under oath.

10

2.      The Complaint filed in this action is filed in the proper place for trial under

11

California Civil Code Section 1780(d) because Defendant maintains its principal place of business

12

in this District.  Additionally, this District is also proper place for trial under Cal. Civ. Code §

13

1780(d) in that a substantial portion of the events alleged in the Complaint occurred in this District,

14

namely, Defendant distributed, advertised, and sold the Amazon Subscriptions to Plaintiffs from its

15

headquarters in this State and District, and the misrepresentations, omissions, and injures as alleged

16

herein originated from this District.

17

I declare under the penalty of perjury under the laws of the State of Washington and the

18

United States that the foregoing is true and correct and that this declaration was executed at

19

Issaquah, Washington, this 29th day of June, 2022.

20

21

_/s/ Wright Noel_
Wright Noel

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

129