THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK DALY, ELENA NACARINO, SUSAN SYLVESTER, and MICHAEL SONNENSCHEIN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

AMAZON.COM, INC. and AMAZON.COM SERVICES LLC,

Defendants.

Case No.: 2:22-cv-00910-RSM

**DEFENDANTS AMAZON.COM, INC.'S AND AMAZON.COM SERVICES LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

NOTE ON MOTION CALENDAR:
December 2, 2022

ORAL ARGUMENT REQUESTED



FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101

## TABLE OF CONTENTS

PAGE

INTRODUCTION ..... 1

A. Amazon Offers Paid Subscription Services And Discloses Their Terms. ..... 2

B. Plaintiffs Used And Then Cancelled Amazon Subscription Services. ..... 5

C. After Three Attempts, Plaintiffs Still Fail to Plead Viable Claims. ..... 7

LEGAL STANDARD ..... 7

ARGUMENT ..... 8

A. Plaintiffs Lack Standing To Pursue Claims Related To Unpurchased Services. ..... 8

1. Plaintiffs Lack Article III Standing To Assert Claims Based On Statements They Never Read And Services They Never Paid For. ..... 8

2. Plaintiffs Lack Statutory Standing For Services They Never Paid For. ..... 12

B. Plaintiffs' Failed To Provide Adequate Pre-Suit Notice. ..... 13

C. Plaintiffs Do Not Properly Allege Misrepresentations On Which They Relied. ..... 14

1. Amazon's Alleged Misrepresentations Are True. ..... 14

2. Plaintiffs Have No Claims For Alleged Misrepresentations They Never Read. ..... 16

3. Plaintiffs Do Not Allege Any Other Misrepresentations In Compliance With Rule 9(b)'s Heightened Pleading Standards. ..... 17

D. The Complaint Fails To Provide Fair Notice Of The Basis For Plaintiffs' UTPA, UCL, Conversion, And Unjust Enrichment Causes of Action. ..... 18

1. Plaintiffs Allege No Specific Facts To Support Claims Related To Services They Never Used. ..... 19

2. Plaintiffs Provide No Notice Of The Basis For Their Claims Related To Kindle Unlimited And Amazon Prime Video Channels. ..... 19

3. Plaintiffs' Unjust Enrichment And Conversion Claims Are Threadbare. ..... 21

E. Plaintiffs' Claims Should be Dismissed *With Prejudice*. ....................................23

CONCLUSION.......................................................................................................................23

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**


*Alexander v. Siemens Healthineers*,
No. C21-0148-JCC, 2022 WL 656202 (W.D. Wash. Mar. 4, 2022) .................................8, 23

*Alhadeff v. Meridian on Bainbridge Island, LLC*,
167 Wn.2d 601, 220 P.3d 1214 (2009)........................................................................21

*Arnold v. Hearst Magazine Media, Inc.*,
No.: 19-cv-1969-WQH-MDD, 2020 WL 3469367 (S.D. Cal. June 25, 2020).......................19

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1998) .........................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................... *passim*

*Brown ex rel. Richards v. Brown*,
157 Wn. App. 803, 239 P.3d 602 (2010)..........................................................................21

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007).............................................................................13

*Dunson v. Cordis Corp.*,
No. 16-cv-03076-SI, 2016 WL 3913666 (N.D. Cal. July 20, 2016) .....................................17

*Egbukichi v. Wells Fargo Bank, NA*,
184 F. Supp. 3d 971 (D. Or. 2016) .................................................................................13

*Ekin v. Amazon Servs., LLC*,
84 F. Supp. 3d 1172 (W.D. Wash. 2014)..........................................................................22

*Empire Health Found. v. CHS/Cmty. Health Sys. Inc.*,
370 F. Supp. 3d 1252 (E.D. Wash. 2019)........................................................................21

*Ferrie v. Woodford Research, LLC*,
No. 3:19-cv-05798-RBL, 2020 WL 3971343 (W.D. Wash. July 14, 2020).....................14, 18

*Frenzel v. AliphCom*,
No. 14-cv-03587-WHO, 2014 WL 7387150 (N.D. Cal. Dec. 29, 2014)................................14

*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*,
198 Wn.2d 768, 500 P.3d 119 (2021)...............................................................................16

*Golden v. Home Depot, U.S.A, Inc.*,
No. 1:18-cv-00033-LJO-JLT, 2018 WL 2441580 (E.D. Cal. May 31, 2018)..........................9

## TABLE OF AUTHORITIES
(CONTINUED)

CASES PAGE(S)

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ....................17, 18

*Harborview Fellowship v. Inslee*,
521 F. Supp. 3d 1040 (W.D. Wash. 2021)....................7

*In re Ferrero Litig.*,
794 F. Supp. 2d 1107 (S.D. Cal. 2011)....................12

*Johns v. Bayer Corp.*,
No. 09CV1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ....................12

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................17

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ....................12

*Lanovaz v. Twinings N. Am., Inc.*,
No. C-12-02646-RMW, 2013 WL 675929 (N.D. Cal. Feb. 25, 2013)....................13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................8

*Nw. Env't Advocs. v. U.S. Dep't of Com.*,
322 F. Supp. 3d 1093 (W.D. Wash. 2018)....................8

*Okwu v. McKim*,
682 F.3d 841 (9th Cir. 2012) ....................23

*Oregon Laborers-Emps. Health & Welfare Tr. Fund. v. Philip Morris, Inc.*,
17 F. Supp. 2d 1170 (D. Or. 1998), *aff'd*, 185 F.3d 957 (9th Cir. 1999)....................13

*Pierce v. NovaStar Mort., Inc.*,
422 F. Supp. 2d 1230 (W.D. Wash. 2006)....................8

*Punian v. Gillette Co.*,
No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016)....................15

*Ruszecki v. Nelson Bach USA Ltd.*,
No. 12-cv-495-L(NLS), 2015 WL 6750980 (S.D. Cal. June 25, 2015) ....................13

*Seattlehaunts, LLC v. Thomas Fam. Farm, LLC*,
No. C19-1937 JLR, 2020 WL 5500373 (W.D. Wash. Sept. 11, 2020) ....................17

## TABLE OF AUTHORITIES
(CONTINUED)

**CASES** **PAGE(S)**

*Stiley v. Block*,
130 Wn.2d 486, 925 P.2d 194 (1996) (en banc)....14, 16

*Tabler v. Panera LLC*,
No. 19-CV-01646-LHK, 2019 WL 5579529 (N.D. Cal. Oct. 29, 2019)....9, 12

*Turnier v. Bed Bath & Beyond Inc.*,
517 F. Supp. 3d 1132 (S.D. Cal. 2021)....19

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)....17

*Walsh v. Microsoft Corp.*,
63 F. Supp. 3d 1312 (W.D. Wash. 2014)....8

*Warth v. Seldin*,
422 U.S. 490 (1975)....8

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021)....19, 21

*Wilson v. Frito-Lay N. Am., Inc.*,
961 F. Supp. 2d 1134 (N.D. Cal. 2013)....9, 12

*Wiseley v. Amazon.com, Inc.*,
709 F.App'x 862 (9th Cir. 2017)....22, 23

**STATUTES AND RULES**

Cal. Bus. & Prof. Code § 17200.... *passim*

Cal. Bus. & Prof. Code § 17500.... *passim*

Cal. Bus. & Prof. Code § 17600....1, 20, 21

Cal. Civ. Code § 1750.... *passim*

Cal. Civ. Code § 1770....14, 18

Cal. Civ. Code § 1780....16

Cal. Civ. Code § 1782....13

Fed. R. Civ. P. 8.... *passim*

## TABLE OF AUTHORITIES
(CONTINUED)

**STATUTES AND RULES** **PAGE(S)**

Fed. R. Civ. P. 9 ........ 2, 17, 24

Fed. R. Civ. P. 12 ........ 7, 19

Or. Rev. Stat. § 646.638 ........ 13

Or. Rev. Stat. § 646.644 ........ 1, 20, 21

Or. Rev. Stat. § 646A.295 ........ 1, 20, 21

## INTRODUCTION

Plaintiffs are consumers who claim to have been misled into subscribing to four Amazon services—Amazon Prime, Kindle Unlimited, Amazon Music Unlimited, and Amazon Prime Video Channels—because Amazon allegedly formatted the notice of the subscription terms in a defective or misleading way. Plaintiffs sought out these services, gave Amazon their contact and payment information, and clicked to subscribe. The pages where Plaintiffs enrolled identified the terms of the subscriptions, including how much the services would cost and how to cancel at any time. Amazon also sent Plaintiffs emails confirming their subscriptions. After using these services for months or years to receive fast and free shipping on retail goods, listen to an unlimited selection of music and books, and stream television shows, Plaintiffs chose to end their subscriptions. Plaintiffs allege that they were unaware that Amazon would charge them for these subscriptions, not because Amazon did not disclose the terms of its services, but because Amazon did not present the terms in a specific location, color, or font size.

The crux of Plaintiffs' First Amended Complaint ("FAC") (Dkt. 14) is that Amazon's disclosures of its subscription services allegedly fail to comply with California's and Oregon's Automatic Renewal Laws (Bus. & Prof. Code §§ 17600 *et seq.*, Or. Rev. Stat. § 646A.295) (together "ARLs"), and Oregon's Free Offer Law (Or. Rev. Stat. § 646.644) ("FOL"), and therefore Amazon also is purportedly liable under various common law misrepresentation and statutory consumer protection theories. But these claims must be dismissed either because Plaintiffs lack standing to assert those claims or because, as pled, those claims do not specify what is illegal about Amazon's promotion of those services. The deficiencies in the FAC can be summarized as follows:

<u>First</u>, Plaintiffs seek to represent consumers who purchased twelve different Amazon subscription services, but Plaintiffs do not allege that they ever paid for, used, or were in any way misled or harmed by eight of those services, *i.e.*, Amazon Prime Video, Amazon Prime Book Box, Amazon Kids+, Audible, ComiXology Unlimited, Amazon Subscription Boxes, Blink for Home, or Amazon Photos. For example, Plaintiff Daly, the only representative of the Oregon Class and Subclass, claims to have paid for and used only one of the twelve services. Plaintiffs lack standing to assert claims related to services to which they never personally subscribed.

Second, Plaintiffs fail to adequately allege claims for violating the Consumers Legal Remedies Act ("CLRA"), violating the California False Advertising Law ("FAL"), negligent misrepresentation, fraud, or the "unfairness" prong of the California Unfair Competition Law ("UCL"). All of those claims sound in fraud and are therefore subject to heightened pleading standards under Rule 9(b). Yet Plaintiffs do not even attempt to allege with specificity what Amazon misrepresented, what Plaintiffs saw and relied on, or how they suffered injury as a result.

Third, Plaintiffs do not provide sufficient detail about the disclosures and sign-up pages, confirmation emails, or cancellation pages of any service, including the services they used, to give Amazon fair notice of the grounds for Plaintiffs' UTPA, UCL, conversion, and unjust enrichment claims. Plaintiffs show only some disclosures related to a few of the challenged services, and they fail to describe Amazon's online cancellation processes for all but one of the services. And even for those few disclosures that the FAC identifies, Plaintiffs fail to explain which statements about which services are misleading or deficient and purportedly give rise to their claims.

This is Plaintiffs' third failed attempt at pleading viable claims. Accordingly, Amazon asks the Court to dismiss all claims in Plaintiffs' FAC with prejudice, except the UTPA and UCL claims regarding Amazon Prime and Amazon Music Unlimited. For ease of reference, Amazon summarizes the requested relief in a table at the end of this brief.

## BACKGROUND

### A. Amazon Offers Paid Subscription Services And Discloses Their Terms.

Amazon.com, Inc. provides e-commerce and digital services, including subscriptions to digital content such as music and videos. FAC ¶¶ 14, 22, 65-70. Amazon also offers subscriptions to services such as free delivery with Amazon Prime, and physical goods such as monthly book deliveries with Amazon Prime Book Box.[1] *Id.* ¶ 22; Declaration of Brian Buckley in support of Defendant Amazon.com, Inc.'s Motion to Dismiss FAC ("Buckley Decl.") ¶ 2. Amazon.com Services LLC is a wholly owned subsidiary of Amazon.com, Inc. which provides website features

[1] Amazon Prime Book Box is in the process of being discontinued, and there is no longer an option to sign up for that service. This motion and accompanying declaration refer to Amazon Prime Book Box and its Checkout Page as they existed just before this case was filed in June 2022. Buckley Decl. ¶ 2.

and other products and services to consumers who shop on amazon.com or use Amazon products or services. (Collectively, Amazon.com, Inc. and Amazon Services, LLC will be referred to as "Amazon.")

Consumers sign up and pay for these subscription services through different webpages, or in some cases using mobile applications (apps). FAC ¶¶ 65-70, 72. While the pages on which consumers confirm their subscriptions to a particular service (collectively, the "Checkout Pages") generally require the consumer to select a particular subscription plan and provide contact and payment details, the design and appearance of each subscription process is different. *Compare id.* ¶ 69 (displaying Checkout Pages for Amazon Prime), *with id.* ¶ 70 (Checkout Page for Amazon Music Unlimited), *and with* Buckley Decl. Ex. A (Checkout Page for Amazon Prime Book Box). Some services offer some consumers a free trial, though those same services may also offer other consumers a straight-to-paid subscription. *Id.* ¶ 69.

For example, Amazon Prime is a service that, among other benefits, provides faster and free deliveries of physical retail purchases for $14.99 per month or $139 per year. FAC ¶¶ 3 n.4, 76. Consumers subscribe through an Amazon Prime Checkout Page. *Id.* ¶ 69. At one time, as Plaintiffs allege, the Amazon Prime Checkout Page advertised at the top, "We're giving you Prime benefits FREE for 30 days," followed by "After your FREE trial, Prime is just $12.99/month." *Id.* The middle of the page displayed fields for the consumer to enter payment and billing information. *Id.* A yellow button stating, "Start your 30 day free trial" appeared at the bottom of the page, directly above the following text: "By signing up, you agree to the Amazon Prime Terms and authorize us to charge your default payment method or another payment method on file after your 30 day free trial. **Your Amazon Prime membership continues until cancelled. If you do not wish to continue for $12.99/month + any taxes, you may cancel any time by visiting Your Account.** For customers in Hawaii, Puerto Rico, and Alaska please visit the Amazon Prime Shipping Benefits page to check various shipping options." *Id.* (emphasis original). The consumer was then required to click the yellow button to begin the subscription. *Id.*

Amazon also offers some consumers straight-to-paid subscriptions. At one time, the Amazon Prime Checkout Page for straight-to-paid consumers said, "Join Amazon Prime" followed

by "Start an Amazon Prime membership for $14.99/month to experience the benefits that millions of Prime members enjoy." *See* FAC ¶ 69. Though it contained some similar design elements to the free-trial-offer Checkout Page, the yellow call-to-action button on the straight-to-paid page stated, "Activate Prime benefits" and did not offer a free trial. *Id.*

Unlike Amazon Prime, the Book Box service did not offer a free trial to any consumer. *See* Buckley Decl. Ex. A. The desktop Checkout Page for Book Box told the consumer which subscription plan they had selected and the cost per interval, for example, "$19.99/box delivered every 1 month(s) plus applicable taxes." *Id.* Beneath the selected plan, the page told consumers about cancellation: "You can cancel anytime, in Your Memberships and Subscriptions." *Id.* It displayed the subscription cost again on the right of the page, along with the day the next subscription period would begin. *Id.* Beneath that, a yellow button said "Start subscription," with this text directly beneath it: "By signing up, you agree to Amazon's Conditions of Use and Amazon Book Box Terms and Conditions and authorize us to charge your default payment method or another payment method on file after any applicable free trial. **Your subscription continues until canceled. If you do not wish to continue for $19.99/box delivered every 1 month(s) plus any taxes, you may cancel anytime by visiting Your Memberships and Subscriptions. You will not be charged until the Amazon Book Box box ships to you, which may be later than the renewal date.**" *Id.* (emphasis original). The consumer could begin the subscription by clicking the "Start subscription" button. *Id.*

After a consumer begins a subscription to Amazon's services or digital content, Amazon emails the consumer acknowledging their enrollment (an "Acknowledgment Email"). These Acknowledgement Emails also vary in design by service. *Compare* FAC ¶ 83 (sample email acknowledging subscription to Amazon Prime), *with id.* ¶ 84 (sample email acknowledging subscription to Amazon Music Unlimited). Acknowledgment Emails display the price for the subscription, the duration of any free trials, and methods of cancellation. *See, e.g.*, *id.* ¶ 83. If the consumer wishes to end the subscription, he or she may cancel through that particular service's account settings, as described in each service's Checkout Page and Acknowledgment Email. *See, e.g.*, *id.* ¶¶ 69, 70, 83, 84.

**B. Plaintiffs Used And Then Cancelled Amazon Subscription Services.**

Plaintiffs are consumers who chose to purchase certain subscription services from Amazon. Plaintiff Mark Daly resides in Oregon, while Plaintiffs Elena Nacarino, Susan Sylvester, and Michael Sonnenschein reside in California. FAC ¶¶ 10–13. Mr. Daly subscribed to Amazon Prime on Amazon's website in March 2022. *Id.* ¶ 97. Ms. Nacarino signed-up for Amazon Prime on Amazon's website in or about late 2019 or early 2020. *Id.* ¶ 122. Ms. Sylvester subscribed to Amazon's Kindle Unlimited service in 2019. *Id.* ¶ 145. Mr. Sonnenschein subscribed to Amazon Music Unlimited in 2017 and Amazon Prime Video Channels in 2019. *Id.* ¶ 168. All four Plaintiffs provided Amazon a payment method, subscribed on the respective service's Checkout Pages with notice of the autorenewal terms, and received the respective service's Acknowledgment Email. *Id.* ¶¶ 97, 100, 122, 125, 145, 148, 169, 171.

Plaintiffs all allege that they ultimately chose to cancel their Amazon service subscriptions. FAC ¶¶ 110, 133, 149, 172. Mr. Sonnenschein does not allege that he had difficulty canceling any subscription. *Id.* ¶¶ 174, 176. Only Ms. Nacarino alleges that she had difficulty canceling through Amazon's online process. *Id.* ¶ 134. Mr. Daly and Ms. Sylvester allege that they had difficulty canceling by phone; they do not allege any facts related to Amazon's online cancellation processes. *Id.* ¶¶ 111, 153-60.

Plaintiffs assert claims not only based on four Amazon subscription services they used, but also related to eight services *they did not use*. FAC ¶ 3. No Plaintiff purports to have subscribed to Amazon Prime Video, Amazon Prime Book Box, Amazon Kids+, Audible, ComiXology Unlimited, Amazon Subscription Boxes, Blink for Home, or Amazon Photos ("Unpurchased Services"). In the FAC, Plaintiffs describe Checkout Pages only for Amazon Prime and Amazon Music Unlimited, and those pages show different terms and aesthetic designs. *See id.* ¶¶ 69, 70. Plaintiffs similarly describe Acknowledgment Emails only for Amazon Prime and Amazon Music Unlimited, and these emails likewise contain different terms and design layouts. *See id.* ¶¶ 83, 84. Yet Plaintiffs challenge Amazon's subscription practices for all twelve services based on the conclusory and unsupported allegation that all of the subscription processes and terms are "substantially the same." *Id.* ¶ 78. Without alleging facts to support that conclusion, Plaintiffs

vaguely allege that eleven of the twelve services have "functionally and aesthetically similar" Checkout Pages. *See* FAC ¶ 71 (omitting Blink for Home from the list of enumerated services). Plaintiffs allege that all twelve services violate various consumer protection statutes and create common law causes of action, but the gravamen of the FAC is that Amazon allegedly does not comply with the California and Oregon ARLs and Oregon FOL. *Id.* ¶ 9. The following table summarizes Plaintiffs' allegations (or lack thereof) in the FAC regarding each accused Amazon service:

| | ***Checkout Page*** | ***Acknowledgment Email*** | ***Online Cancellation*** |
|---|---|---|---|
| ***Amazon Prime*** | FAC ¶ 69 | FAC ¶ 83 | FAC ¶¶ 78, 134 |
| ***Kindle Unlimited*** | None | None | None |
| ***Amazon Music Unlimited*** | FAC ¶ 70 | FAC ¶ 84 | None |
| ***Amazon Prime Video Channels*** | None | None | None |
| ***Amazon Prime Video*** | None | None | None |
| ***Amazon Prime Book Box*** | None | None | None |
| ***Amazon Kids+*** | None | None | None |
| ***Audible*** | None | None | None |
| ***ComiXology Unlimited*** | None | None | None |
| ***Amazon Subscription Boxes*** | None | None | None |
| ***Blink for Home*** | None | None | None |
| ***Amazon Photos*** | None | None | None |

**C. After Three Attempts, Plaintiffs Still Fail to Plead Viable Claims.**

Three of the four Plaintiffs filed a prior lawsuit nearly identical to this one. On May 5, 2021, Plaintiffs Nacarino, Sylvester, and Sonnenschein filed a complaint in the Northern District of California, asserting substantially the same allegations as the FAC. *See* Buckley Decl., Ex. B. On June 24, 2022, Amazon moved to dismiss that complaint. *See* Buckley Decl., Ex. C. In response, on June 28, 2022, the three Plaintiffs voluntarily withdrew their California complaint. The next day, Plaintiffs filed suit in this Court, alleging underlying facts essentially identical to those in the California complaint, adding Plaintiff Daly, and adding a nationwide class and an Oregon sub-class. On August 31, 2022, Amazon moved to dismiss Plaintiffs' initial complaint. Dkt. 12. Rather than oppose that motion, on September 21, 2022, Plaintiffs filed the FAC. As addressed below, despite three tries, the FAC fails to address any of the shortcomings in Plaintiffs' prior pleadings; as such, Plaintiffs' deficient claims should be dismissed *with prejudice*.

## LEGAL STANDARD

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. Once a party challenges subject matter jurisdiction, the "plaintiff bears the burden of proving the existence of subject matter jurisdiction." *Harborview Fellowship v. Inslee*, 521 F. Supp. 3d 1040, 1046 (W.D. Wash. 2021). When a moving party presents affidavits or other evidence disputing the truth of the allegations, "the district court may review evidence beyond the complaint" and "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The court need not presume the truthfulness of the plaintiff's allegations in a factual attack under Rule 12(b)(1)." *Id.* (citing *Safe Air*, 373 F.3d at 1039).

A motion to dismiss under Rule 12(b)(6) should be granted where there is either no legally cognizable theory or a lack of sufficient facts alleged to support a cognizable theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1998). To survive a motion to dismiss, a complaint must present factual allegations sufficient to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also* Fed. R. Civ. P. 8. Those allegations must include enough facts to state a claim that is "plausible on its

face." *Twombly*, 550 U.S. at 547. "[C]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pierce v. NovaStar Mort., Inc.*, 422 F. Supp. 2d 1230, 1233 (W.D. Wash. 2006) (quoting *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998)). While leave to amend is often liberally granted, "a court can still order [a] dismissal with prejudice." *Alexander v. Siemens Healthineers,* No. C21-0148-JCC, 2022 WL 656202, at *4 (W.D. Wash. Mar. 4, 2022).

## ARGUMENT

### A. Plaintiffs Lack Standing To Pursue Claims Related To Unpurchased Services.

#### 1. Plaintiffs Lack Article III Standing To Assert Claims Based On Statements They Never Read And Services They Never Paid For.

All of Plaintiffs' claims related to the Unpurchased Services must be dismissed because Plaintiffs do not have Article III standing to assert claims for services they never interacted with, paid for, or used. Article III requires that plaintiffs allege that they suffered a concrete and particularized injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiffs who seek to serve as class representatives must allege and ultimately prove that they personally have been injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Plaintiffs have the burden to establish standing. *See Nw. Env't Advocs. v. U.S. Dep't of Com.*, 322 F. Supp. 3d 1093, 1096 (W.D. Wash. 2018). Accordingly, courts in this District have held that claims relating to unpurchased products must be dismissed for lack of standing because of the lack of any conceivable injury. *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1317–18 (W.D. Wash. 2014) (citing *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1001 (9th Cir. 2001)).

Plaintiffs do not allege that they ever saw any advertisements, statements, or disclosures relating to the Unpurchased Services. *See* FAC ¶¶ 97-182. Nor do Plaintiffs allege that they subscribed to or used the Unpurchased Services or were charged for those services. All claims stemming from the Unpurchased Services should be dismissed on that basis alone.

Plaintiffs cannot escape dismissal by merely alleging that the subscription and cancellation processes for the eight Unpurchased Services are "substantially similar" to the processes for the

four subscriptions they did purchase. Products are substantially similar only if "the resolution of the asserted claims will be *identical* between the purchased and unpurchased products." *Golden v. Home Depot, U.S.A, Inc.*, No. 1:18-cv-00033-LJO-JLT, 2018 WL 2441580, at *14–15 (E.D. Cal. May 31, 2018) (emphasis added). "If the misleading aspect of both the purchased and unpurchased products can be examined without a 'context-specific analysis of each product's label,' the products are substantially similar." *Id.*; *see also Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL 5579529, at *10 (N.D. Cal. Oct. 29, 2019) ("When a complaint fails to adequately allege how products a plaintiff purchased are in fact substantially similar to products that the plaintiff challenges, the Court must dismiss the complaint to the extent it seeks to bring claims on the basis of unpurchased products."). Boilerplate claims that products are "substantially similar" are insufficient, even at the pleading stage. *See Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1142 (N.D. Cal. 2013) ("To meet the plausibility standard of Rule 8, Plaintiffs have to say more, especially when they are asserting standing as to Products they did not purchase—otherwise their pleadings amount to unacceptably bare legal conclusions.").

In *Wilson*, the court dismissed with prejudice the plaintiffs' claims related to unpurchased products for which the plaintiffs "simply provide[d] a list of Non–Purchased Products, [and] attach[ed] barely-legible labels" because the court refused to "assume that each of these subtly different Products is like all the others." 961 F. Supp. 2d 1134, 1141-42. Here, despite the fact that Unpurchased Services are markedly *dissimilar*, Plaintiffs show even less, failing to attach screenshots for any of them. Plaintiffs' claims undeniably require a context-specific analysis of the signup, acknowledgment, and cancellation processes for each of the subscription services that Plaintiffs challenge.

Indeed, Plaintiffs tacitly admit that the twelve Amazon services they challenge are distinct and have different advertisement and enrollment processes. *Compare* FAC ¶ 69 *with id.* ¶ 70. The subscriptions range from physical goods (Amazon Prime Book Box), to photo storage (Amazon Photos), to home security camera recording (Blink), to membership benefits programs (Amazon Prime), to digital content (Audible). FAC ¶ 3, n.4–15. These goods and services cater to different customers with different expectations. For example, Amazon Prime Book Box was a subscription

service for recurring monthly deliveries of a curated selection of children's books. Buckley Decl. ¶ 2. By contrast, Amazon Prime Video Channels gives consumers access to digital television content. FAC ¶¶ 3 n.6, 22. While both services are advertised as recurring services, it would be impossible for a reasonable consumer to assume that Book Box "would naturally conclude upon expiration of the trial period"—as Mr. Sonnenschein purportedly believed with respect to Amazon Prime Video Channels (*see id.* ¶ 168 n.94)—because *Book Box did not offer a trial period* and because physical deliveries of books would continue to appear at the consumer's door each month.

The subscription signup processes themselves also materially differ.[2] For example, to sign up for Amazon Book Box, a consumer must create the reader's profile, select the frequency of delivery, preview the book selections, and make any desired changes before checking out. Buckley Decl. ¶ 2, Ex. A. The Checkout Page then displays those choices:

**Figure 1: Amazon Book Box Checkout Page**




The Amazon Prime Checkout Page looks and operates very differently. *See* FAC ¶ 69. Unlike Book Box, Prime offers a free trial. While Book Box advertised the cost of the subscription

---

[2] Even within a single service the advertisements or marketing varies. Plaintiffs admit that Amazon "has, from time to time, altered the text featured on the Amazon Subscription Checkout Pages …." FAC ¶ 71 n. 83. Furthermore, Plaintiffs admit that these Checkout Pages are not the exclusive way consumers enroll, because consumers can sign up for "a monthly or annual renewal term, or for a free trial, straight-to-paid, or discounted-rate student or family subscription." *Id.* ¶ 72; *see also, e.g.*, *id.* ¶ 69 n. 81 (consumers are presented with a different Amazon Prime Checkout Page when subscribing at a promotional price).

in red text in the middle of the page, Amazon Prime advertises the cost of the subscription at the top of the page beneath the text advertising the free trial:

**Figure 2: Amazon Prime Checkout Page**




Both of these checkout experiences are clear and easy to understand, but the differences in the two signup processes materially impact Plaintiffs' claims. For example, and as discussed further below, Plaintiffs allege that Amazon misrepresented its subscription prices by not including the words "applicable fees and taxes" when Amazon advertises the monthly price for Amazon Prime and again in the Acknowledgment Email. FAC ¶¶ 76 n. 84, 89. Amazon denies that this is a "misrepresentation," but even if it were, the same claim could not be asserted against the Book Box Checkout Page, which lists taxes next to the advertised price. *See* Buckley Decl. Ex. A. Because Plaintiffs' claims are predicated on how Amazon's processes "look and feel," and how they would be understood by a reasonable consumer, even minor variations across those processes matter to the viability of Plaintiffs' claims.

Plaintiffs also allege misrepresentations about Amazon's cancellation policies, FAC ¶ 284, but the text of those disclosures also differs across the various Checkout Pages. Amazon Prime's Checkout Page states in bold, "**Your Amazon Prime membership continues until cancelled. If you do not wish to continue for $12.99/month + any taxes, you may cancel any time by visiting Your Account.**" *Id.* ¶ 69 (emphasis original). Book Box's Checkout Page states, "**Your subscription continues until canceled. If you do not wish to continue for $19.99/box delivered**

**every 1 month(s) plus any taxes, you may cancel anytime by visiting Your Amazon Memberships and Subscriptions.**" Buckley Decl. Ex. A (emphasis in original). While these disclosures are clear and conspicuous on both Checkout Pages, the format, font, font color, language on the call-to-action buttons, and other key elements of these Checkout Pages are different and not "substantially similar."

Plaintiffs also cannot hide behind the false generalization that the subscription processes are "aesthetically and functionally similar" for all Amazon subscriptions. *See* FAC ¶ 71.[3] Without more, this conclusory allegation is insufficient. *See Wilson*, 961 F. Supp. 2d at 1140 (the court cannot simply assume that the labels for unpurchased products were actionable; plaintiffs must explain how they are substantially similar to purchased products). Plaintiffs must "allege *how* products a plaintiff purchased are in fact substantially similar." *See Tabler*, 2019 WL 5579529, at *10 (emphasis added). Plaintiffs do not even try to describe what elements of each Unpurchased Service are substantially similar to the four services they used, or how those particular elements support their claims. Because Plaintiffs admit that the Unpurchased Services are not the same, and were not advertised or marketed in the same way, Plaintiffs have no standing to assert causes of action related to the Unpurchased Services.

**2. Plaintiffs Lack Statutory Standing For Services They Never Paid For.**

To assert claims under the UCL, FAL, and CLRA, and to serve as class representatives, Plaintiffs must establish that they suffered an economic injury by losing "money or property." Cal. Bus. & Prof. Code §§ 17204, 17535; *see Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326 (2011); *see also Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL 476688, at *4 (S.D. Cal. Feb. 9, 2010) (granting motion to dismiss UCL and CLRA claims for lack of standing as to products plaintiff did not purchase); *see also In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011) (granting motion to dismiss UCL, FAL, and CLRA claims where plaintiffs did not rely on statements made on the defendant's website). Similarly, to assert claims under the UTPA, and to serve as class representatives, Plaintiffs must establish that they suffered an "ascertainable loss

[3] Plaintiffs omit Blink for Home from their list of "functionally and aesthetically similar" services. *See id.*

of money or property, real or personal." Or. Rev. Stat § 646.638(1); *see Oregon Laborers-Emps. Health & Welfare Tr. Fund. v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1180 (D. Or. 1998), *aff'd*, 185 F.3d 957 (9th Cir. 1999) ("Plaintiffs have not alleged that they are consumers of defendants' products and thus, I find that they lack standing to maintain claims under the Oregon UTPA."); *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 978 (D. Or. 2016) (granting motion to dismiss UTPA claim where plaintiffs did not pay any allegedly improper fees and costs).

Plaintiffs do not and cannot plausibly allege that they lost money or property for services to which they never subscribed. For the same reasons discussed just above, Plaintiffs have not alleged that they suffered any economic injury with respect to the Unpurchased Services. *See, e.g.*, *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2013 WL 675929, at *2 (N.D. Cal. Feb. 25, 2013) ("One generally cannot expand the scope of his or her claims to include a product not purchased or advertisements not relied upon. … [t]he statutory standing requirements of the UCL and CLRA are narrowly prescribed and do not permit such generalized allegations.") (internal citation omitted); Or. Rev. Stat § 646.638(1); *see Oregon Laborers-Emps. Health & Welfare Tr. Fund.*, 17 F. Supp. 2d at 1180 (dismissing Oregon UTPA claim where Plaintiffs did not allege that they were consumers of the relevant products).

**B. Plaintiffs' Failed To Provide Adequate Pre-Suit Notice.**

Plaintiffs' CLRA claims related to ComiXology, Blink, Prime Video Channels, and Book Box independently fail because Plaintiffs did not provide adequate pre-suit notice for those claims. A plaintiff seeking monetary relief under the CLRA must give notice of the alleged violations at least 30 days before filing suit and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770." Cal. Civ. Code § 1782(a). Failure to provide adequate pre-suit notice is fatal to a claim. *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949-50 (S.D. Cal. 2007). To provide adequate notice, Plaintiffs must specifically mention *each product* for which they intend to bring a lawsuit. *See Ruszecki v. Nelson Bach USA Ltd.*, No. 12-cv-495-L(NLS), 2015 WL 6750980, at *5-6, (S.D. Cal. June 25, 2015) (dismissing with prejudice claims under the CLRA for products not mentioned in the pre-suit notice, even though the plaintiff included a catch-all statement that "all of YOUR products" violated the

CLRA); *see also Frenzel v. AliphCom*, No. 14-cv-03587-WHO, 2014 WL 7387150, at *12 (N.D. Cal. Dec. 29, 2014) (dismissing CLRA claims based on the first and third generations of a product when the notice only alleged violations based on the second generation). Here, Plaintiffs' pre-suit notice did not identify ComiXology, Blink, Prime Video Channels, or Book Box. *See* FAC ¶ 270; Buckley Decl. Ex. D. Because Plaintiffs did not provide adequate notice with respect to those claims, they should be dismissed with prejudice.

**C. Plaintiffs Do Not Properly Allege Misrepresentations On Which They Relied.**

The thrust of Plaintiffs' FAC is that Amazon violated the ARLs and FOL by allegedly violating certain statutory formatting and disclosure requirements. Plaintiffs then try to transform that claim into something sinister by tacking on various causes of action that sound in fraud. Those four fraud-based causes of action are for alleged violations of the FAL (Count IV), violations of the CLRA (Count V), negligent misrepresentation (Count VIII), and fraud (Count IX). Plaintiffs also style a fifth cause of action—their UCL claim incorporating the California ARL allegations (Count III)—as "unfair," such that it too sounds in fraud. For each of those five claims, Plaintiffs identify only two specific alleged misrepresentations: (1) that the phrase "$12.99/month" on the Amazon Prime Checkout Page does not disclose that the consumer might owe taxes on the subscription, FAC ¶ 76 n.84, and (2) that the phrase "cancel [the Amazon Subscriptions] anytime" does not say that "customers must cancel their Amazon Subscriptions prior to the next charge." *Id.* ¶ 284. Those claims fail for three independent reasons:

**1. Amazon's Alleged Misrepresentations Are True.**

Falsity is an essential element of Plaintiffs' FAL, CLRA, misrepresentation, and fraud claims, and their "unfairness" argument under the UCL. *See* Cal. Bus. & Prof. Code § 17500 (requiring a violation of the FAL to be "untrue or misleading"); Cal. Civ. Code §§ 1770(a)(5), (a)(9) (defining a CLRA violation when goods are advertised to have characteristics "that they do not have" or when sold not "as advertised"); *Ferrie v. Woodford Research, LLC*, No. 3:19-cv-05798-RBL, 2020 WL 3971343, at *11 (W.D. Wash. July 14, 2020) (claims of negligent misrepresentation "have fraud as an essential element"); *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996) (en banc) ("falsity" is one of the nine elements of fraud, all which must be

established by clear and convincing evidence); *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (holding UCL unfair prong cause of action does not survive where the "cause of action under the unfair prong of the UCL overlaps entirely with [a plaintiff's] claims" alleging fraud that also do not survive). The FAC itself reveals that Amazon's two allegedly false statements are in fact true.

First, Plaintiffs claim that the Amazon Prime Checkout Page falsely advertised a price of "$12.99/month," when in fact the recurring monthly price was $12.99 *plus taxes*. *See* FAC ¶¶ 76 n.84, 89. But Amazon never stated or suggested that Prime memberships will not be taxed, and no reasonable consumer would assume that the lack of an express reference to taxes means that an internet purchase is tax-free. And even if an unreasonable consumer thought there would be no taxes associated with Prime, Amazon dispels any ambiguity by expressly stating that taxes apply. Directly beneath the call-to-action button to start the Prime subscription, Amazon told consumers in bold font, "**If you do not wish to continue for $12.99/month + *any taxes*, you may cancel at any time by visiting Your Account.**" *Id.* ¶ 69 (italics added). In short, Amazon accurately advertised the price of a Prime subscription and the existence of taxes. Plaintiffs also fail to allege that this alleged misrepresentation applies to any service other than Amazon Prime.

Second, Plaintiffs claim that Amazon falsely tells consumers that they can "cancel [their Amazon Subscriptions] anytime." *Id.* ¶¶ 258, 284. But that fundamentally misstates what Amazon actually says. The two Checkout Pages that Plaintiffs identify do far more than merely state that consumers can "cancel anytime." The Prime Checkout Page states, "**Your Amazon Prime membership continues until cancelled. If you do not wish to continue for $12.99/month + any taxes, you may cancel any time by visiting Your Account.**" *Id.* ¶ 69 (emphasis in original). The Music Unlimited Checkout Page states, "Your subscription continues until cancelled. Cancel renewal any time by visiting Your Amazon Music Settings." *Id.* ¶ 70 (blue emphasis in original). Plaintiffs suggest that these disclosures are somehow "contradicted" by Amazon's policies because "customers must cancel their Amazon Subscriptions prior to the next charge." *Id.* ¶ 258. But that is precisely what the disclosures say: a subscription "***continues until cancelled***." *Id.* ¶¶ 69, 70 (emphasis added). What could that language mean except that, until the consumer cancels, she

will be charged? The statement that the consumer can "cancel any time" is accurate, and if she does cancel before the next charge is due then she will not be charged. In short, like the first alleged misrepresentation Plaintiffs identify, the "cancel any time" disclosure is not false.

**2. Plaintiffs Have No Claims For Alleged Misrepresentations They Never Read.**

Plaintiffs' FAL, CLRA, misrepresentation, and fraud claims, and their UCL "unfairness" argument, also require Plaintiffs to have suffered injury because they received, read, and relied on the alleged misrepresentations. *See* Cal. Bus. & Prof. Code §§ 17204, 17535 (permitting a person who has lost money or property "as a result of" a violation of the UCL or FAL, respectively, to bring an action); Cal. Civ. Code § 1780 (permitting a person who suffered damage "as a result of" a violation of the CLRA to bring an action); *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 198 Wn.2d 768, 800 n.13, 500 P.3d 119 (2021) (for negligent misrepresentation, plaintiff must prove that "the plaintiff relied on the false information" and "the plaintiff's reliance was reasonable") (internal citation omitted); *Stiley*, 130 Wn.2d. at 505 (two elements of fraud are "plaintiff's reliance on the truth of the representation" and "plaintiff's right to rely upon it"). Plaintiffs do not allege they relied on any specific statements or disclosures. *See e.g.*, FAC ¶¶ 119, 142, 165180 (alleging reliance only on "conspicuous disclosures" without describing them).

In fact, Plaintiffs admit that they did *not* read any of the subscription disclosures on the Checkout Pages, and that fact alone requires dismissal of their misrepresentation-based claims. All four Plaintiffs allege that, had the Amazon Checkout Pages been designed differently, the Plaintiffs "would have been able to read and review the auto renewal terms prior to purchase." *See* FAC ¶¶ 10, 119 (Daly), ¶¶ 11, 143 (Nacarino), ¶¶ 12, 166 (Sylvester), ¶¶ 13, 181 (Sonnenschein). The two alleged misrepresentations that Plaintiffs identify are part of the autorenewal terms. *Id.* ¶¶ 69, 70. Plaintiffs specifically state that they did not know they had enrolled in a continuing subscription. *Id.* ¶ 101 (Daly), ¶ 126 (Nacarino), ¶ 149 (Sylvester), ¶ 172 (Sonnenschein). In other words, Plaintiffs expressly state that they did *not* see or read the subscription disclosures that they now claim were misleading. While Plaintiffs cursorily allege that they "relied on [Amazon's] statements and omissions to their detriment," (*e.g.*, *id.* ¶ 260), that conclusory allegation (which simply parrots the elements of their causes of action) cannot be squared with the specific facts they

allege. *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). Plaintiffs cannot have it both ways; they cannot claim that no reasonable consumer would read Amazon's terms (and that they personally did not), while also claiming that they were misled by those same terms.[4] And of course, Plaintiffs cannot have relied on alleged misrepresentations about products they never purchased, and as such, their misrepresentation claims related to the Unpurchased Services fail as well.

### 3. Plaintiffs Do Not Allege Any Other Misrepresentations In Compliance With Rule 9(b)'s Heightened Pleading Standards.

The Rule 9(b) heightened pleading requirements for claims sounding in fraud are well-known and well-established. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see* Fed. R. Civ. P. 9(b). That applies not only to fraud claims but also any claims that sound in fraud, such as FAL, CLRA, and negligent misrepresentation claims, and UCL claims premised on a fraud theory. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding UCL and CLRA claims to Rule 9's pleading standard); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1090 (N.D. Cal. 2017) (dismissing UCL, CLRA, and FAL claims under Rule 9's pleading standard); *Dunson v. Cordis Corp.*, No. 16-cv-03076-SI, 2016 WL 3913666, at *7 (N.D. Cal. July 20, 2016) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."); *Seattlehaunts, LLC v. Thomas Fam. Farm, LLC*, No. C19-1937 JLR, 2020 WL 5500373, at *5 (W.D. Wash. Sept. 11, 2020) (Claims "for fraud and negligent misrepresentation sound in fraud and are therefore subject to the heightened pleading standards of Rule 9(b)"). Plaintiffs specify no other statements that are false, let alone ones that they read and relied on.

Plaintiffs' generalized references to Amazon's disclosures do not come close to satisfying Rule 9(b). For example, to support their fraud cause of action, Plaintiffs claim that Amazon

[4] Plaintiffs added some case law to the FAC to support their argument that actual reliance is not a necessary element of a UTPA claim. *See* FAC ¶ 118 n.90. But Amazon is not moving to dismiss the UTPA claims based on lack of reliance. As further discussed in Section C below, Plaintiffs' UTPA claim fails for independent reasons, including a failure to allege sufficient facts under Rule 8(a) to put Amazon on notice of the bases of Plaintiffs' claims.

"provided Plaintiffs and Nationwide Class members with false or misleading material information and failed to disclose material facts about the Amazon subscriptions." FAC ¶ 292. That catch-all phrase does not identify any specific misstatements, let alone who read them, when they were read, where they were published, and how they were misleading. This deficiency is particularly acute for the Unpurchased Services that Plaintiffs never used. Plaintiffs obviously cannot specifically allege how they were misled with respect to a subscription service that they never used. Even for the four Amazon services that Plaintiffs allegedly *did* use, as discussed above, they only identify allegedly false language in the Checkout Pages for Amazon Prime and Amazon Music Unlimited. *See id.* ¶¶ 69, 70. Plaintiffs allege nothing false or misleading about the Kindle Unlimited or Prime Video Channels disclosures or signup processes.

Plaintiffs' CLRA claim has another fatal deficiency. Not only are CLRA claims subject to heightened pleading standards, *see Hadley*, 243 F. Supp. 3d at 1090, but the CLRA specifies the types of misleading statements that are actionable. Plaintiffs claim that Amazon makes false statements about "characteristics, uses, and/or benefits," and that Amazon advertises the services "without the intent to sell them as advertised." *See* FAC ¶ 267 (alleging violation of Cal. Civ. Code §§ 1770(a)(5), (a)(9)). But Plaintiffs say nothing about what specific characteristics, uses, or benefits Amazon falsely advertises, or what products or services Amazon allegedly intended to sell not "as advertised."

Plaintiffs' negligent misrepresentation claim also fails as a matter of law. To support that claim, Plaintiffs must allege an affirmative representation, *not* merely an omission. *See Ferrie*, 2020 WL 3971343, at *11. But Plaintiffs two asserted misrepresentations—allegedly failing to say "plus taxes" for Prime and allegedly failing to say that customers must cancel before the next recurring charge is due—are purported *omissions*. Even if Amazon had committed those omissions (which, again, it did not), they cannot support a negligent misrepresentation claim.

**D. The Complaint Fails To Provide Fair Notice Of The Basis For Plaintiffs' UTPA, UCL, Conversion, And Unjust Enrichment Causes of Action.**

Plaintiffs' UTPA-ARL (Count I), UTPA-FOL (Count II), UCL (Count III), conversion (Count XI), and unjust enrichment (Count VII) causes of action also should be dismissed because

Plaintiffs do not describe what disclosures were applicable to most of the challenged services at each step of the process, and how that gives rise to Plaintiffs' claims.[5] A proper complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see* Fed. R. Civ. P. 8(a). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Rule 8 "require[s] well-pleaded facts, not legal conclusions." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021). *See also Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132, 1140 (S.D. Cal. 2021) (dismissing complaint where there were "insufficient factual allegations to show [d]efendant did not comply with section 17602(a)(2) or 17602(a)(3)"); *Arnold v. Hearst Magazine Media, Inc.*, No.: 19-cv-1969-WQH-MDD, 2020 WL 3469367, at *8 (S.D. Cal. June 25, 2020) (dismissing complaint where plaintiff "fail[ed] to allege facts from which the Court can identify any violation of the Automatic Renewal Law").

**1. Plaintiffs Allege No Specific Facts To Support Claims Related To Services They Never Used.**

For the same reasons that Plaintiffs' claims about the Unpurchased Services fail for lack of standing (as addressed above), those claims also fail under Rule 8. While Amazon submits that even the few screenshots included in the FAC clearly and conspicuously show all required terms, the FAC offers no facts whatsoever with respect to all the other subscriptions that Plaintiffs challenge. As such, Amazon has no notice, fair or otherwise, regarding the grounds for Plaintiffs' claims related to the Unpurchased Services.

**2. Plaintiffs Provide No Notice Of The Basis For Their Claims Related To Kindle Unlimited And Amazon Prime Video Channels.**

Even for the services Plaintiffs allegedly used, they provide very few specifics regarding the allegedly deficient disclosures. *See* FAC ¶¶ 69, 70, 78, 83-85. Plaintiffs identify only the Checkout Pages and Acknowledgment Emails for two services, Amazon Prime and Amazon Music

[5] In the alternative, if the Court declines to dismiss these claims, at a minimum it should order the Plaintiffs to provide a more definite statement. Fed. R. Civ. P. 12(e).

Unlimited, but they provide no images of Amazon's easy-to-use online cancellation process. *Id.* And while Plaintiffs included screenshots for these two services in the FAC, they inexplicably fail to provide any screenshots for Kindle Unlimited and Amazon Prime Video Channels, the two other services they allegedly used. Without that, Plaintiffs do not describe any of the Checkout Pages, Acknowledgment Emails, or online cancellation processes for those two services.

For Kindle Unlimited and Amazon Prime Video Channels, Plaintiffs merely parrot the elements of their autorenewal claims. For example, with respect to the Kindle Unlimited Checkout Page, Ms. Sylvester states:

> "[T]he relevant screens and buttons presented to Ms. Sylvester did not clearly and conspicuously state that her free trial Amazon Subscription would automatically renew every month until she cancelled; they did not state the recurring charges that would be charged to Ms. Sylvester's Payment Method as part of the automatic renewal plan, explain that the amount of the charge would change, or disclose the amount to which the charge would change; and they did not describe the full cancellation policy that applied to her purchase."

FAC ¶ 146. With respect to Prime Video Channels, Mr. Sonnenschein repeats this language almost verbatim, changing only his name and the name of the subscription. *See id.* ¶ 169. These descriptions repeat nearly word-for-word the automatic renewal statute. *See* Cal. Bus. & Prof. Code § 17601(b)(1)-(4). It is axiomatic that such tactics are insufficient to adequately plead a claim. *Twombly*, 550 U.S. at 555.

Notably, Mr. Sonnenschein and Ms. Sylvester both received Acknowledgment Emails from Amazon. *See* FAC ¶¶ 148, 171. But they conspicuously chose not to quote or describe those emails, or attach them to the FAC. Thus, Amazon and the Court are left to guess what is allegedly deficient about those Acknowledgment Emails.

Their cancellation claims fare no better. Although Ms. Sylvester tried to cancel over the telephone, neither California nor Oregon law requires Amazon to allow cancellation by phone. While these ARL statutes provide that the cancellation mechanism may be a "a toll-free telephone number, electronic mail address, [or] a postal address," the statutes do not require these modes of cancellation. *See* Cal. Bus. & Prof. Code § 17602(c); Or. Rev. Stat. §§ 646A.295(2), 646.644(2)(e). Amazon need only provide one "cost-effective, timely and easy-to-use" cancellation mechanism,

and for orders placed online there must be an online cancellation option. Cal. Bus. & Prof. Code § 17602(c); Or. Rev. Stat. §§ 646A.295(2), 646.644(2)(e). Amazon maintains that the Customer Service phone number Ms. Sylvester used is in fact simple and effective (FAC ¶ 12), but even if it were not, Plaintiffs must allege that Amazon offers no easy alternative way to cancel. Plaintiffs acknowledge that Amazon has an online cancellation mechanism. *Id.* ¶¶ 11, 13, 134. But Plaintiffs do not describe what, if anything, was allegedly flawed or deficient with that online cancellation process. Nor could they. Amazon's cancellation processes are easy to use, as evidenced by Mr. Sonnenschein's effective cancellation of his two subscriptions. *See id.* ¶¶ 174, 176.

In sum, these allegations do not describe any of the elements of Amazon's Checkout Pages, Acknowledgment Emails, or online cancellation processes, let alone connect the dots to explain how those elements purportedly violate nine different state laws. *See Whitaker*, 985 F.3d at 1177 (dismissing under Rule 8 a complaint based on inaccessible service counters because it "failed to answer basic questions: Were the service counters too low? Or too high? Were they positioned in an area that was inaccessible for another reason?"). Therefore, the FAC cannot support any cause of action related to Kindle Unlimited and Amazon Prime Video Channels.

**3. Plaintiffs' Unjust Enrichment And Conversion Claims Are Threadbare.**

Plaintiffs' conversion and unjust enrichment allegations are equally conclusory and insufficient. A transaction that the plaintiff "authorized" does not give rise to a viable conversion claim. *Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wn.2d 601, 619, 220 P.3d 1214 (2009); *see also Brown ex rel. Richards v. Brown*, 157 Wn. App. 803, 817–18, 239 P.3d 602 (2010) ("Money may become the subject of conversion, but only if the party charged with conversion wrongfully received the money, or if that party had an obligation to return the money to the party claiming it."). Similarly, a plaintiff has no claim for unjust enrichment if she entered into a valid contract with the defendant. *See Empire Health Found. v. CHS/Cmty. Health Sys. Inc.*, 370 F. Supp. 3d 1252, 1262–63 (E.D. Wash. 2019) ("[P]arties to a valid, binding contract may not claim unjust enrichment on the same matters governed by that contract.").

Courts routinely bind consumers to terms and transactions through online "clickwrap" agreements, including clickwrap agreements for Amazon's products specifically. *See, e.g.*,

*Wiseley v. Amazon.com, Inc.*, 709 F.App'x 862, 864 (9th Cir. 2017) ("The notices on Amazon's checkout and account registration pages, which alerted [the plaintiff] that clicking the corresponding action button constituted agreement to the hyperlinked COU, were in sufficient proximity to give him a 'reasonable opportunity to understand' that he would be bound by additional terms."); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1173 (W.D. Wash. 2014) (consumers were bound by text on webpage and linked agreements by clicking the action button demonstrating their consent). The FAC makes no claim that Plaintiffs did not sign up for their subscriptions—which requires consenting to Amazon's terms—only that the disclosures and processes related to those subscriptions were allegedly deficient. Even if those allegations could support a UTPA or UCL claim under the autorenewal laws, they cannot support claims for conversion or unjust enrichment.

Plaintiffs claim that Amazon is liable for conversion because "[a]s a result of charges made by Defendant to Plaintiffs' and Nationwide Class members' Payment Methods without authorization and in violation of common law, Defendant has taken money that belongs to Plaintiffs and the Nationwide Class." FAC ¶ 273; ¶ 280 (alleging unjust enrichment based on "failure to disclose material terms of the purchase agreement, in violation of common law, [that] induced Plaintiffs and the Nationwide Class to purchase the Amazon Subscriptions."). But that does not place Amazon on notice of *how* it supposedly failed to obtain Plaintiffs' consent or authorization. To the contrary, Plaintiffs admit that the Amazon Prime Checkout Page disclosed that, after the free trial ends, "Prime is just $12.99/month." FAC ¶ 69. Amazon also disclosed that after the free trial ended, Amazon would automatically charge the recurring amount to the consumer's credit card. *Id.* Amazon then asked the consumer if she wanted to start her free trial on those terms, and she accepted by clicking the yellow call-to-action button. *Id.* The transaction is even more obvious for straight-to-paid consumers, who chose to "[s]tart an Amazon Prime membership for $14.99/month" after entering their payment information and choosing to "Activate Prime benefits," on a page that never referenced any free trial. *Id.* Similarly, the FAC alleges that consumers chose to subscribe to Amazon Music Unlimited by clicking a large, yellow button that

said they were choosing to "Sign-up and pay." FAC ¶ 70. Plaintiffs thus assented to binding contracts with Amazon and authorized these transactions. *See Wiseley*, 709 F.App'x at 864.

As discussed above, Plaintiffs provided screenshots of Checkout Pages only for Amazon Prime and Amazon Music Unlimited. It would be impossible for Amazon or the Court to analyze whether Plaintiffs somehow failed to consent to subscriptions for the other services they challenge (and eight of those services they admittedly never used). To plead viable claims for conversion and unjust enrichment, Plaintiffs must describe how—despite voluntarily seeking out Amazon's subscription services, entering payment information, and clicking to subscribe—they did not authorize these transactions. Plaintiffs do not even attempt to make that showing.

**E. Plaintiffs' Claims Should be Dismissed *With Prejudice*.**

Because Plaintiffs Nacarino, Sylvester, and Sonnenschein failed to address the above-mentioned deficiencies in three consecutive complaints, and Plaintiff Daly failed to address these deficiencies in two consecutive complaints, the Court should order dismissal of the claims subject to this motion with prejudice and without leave to amend. *See Okwu v. McKim*, 682 F.3d 841, 846 (9th Cir. 2012) (affirming dismissal with prejudice in part because plaintiff had "not identified any amendment consistent with the facts she has already alleged that would give her a viable claim"); *Alexander,* 2022 WL 656202, at *4 (dismissing an action with prejudice in part because, although the plaintiff failed to timely file an amended complaint, the proposed amended complaint was materially the same as the initial complaint). With full notice of Amazon's arguments (based on two prior dismissal motions), Plaintiffs still have been unable to plead cognizable claims or make factual allegations sufficient to support those claims. They are not entitled to a fourth attempt.

## CONCLUSION

Amazon respectfully requests that the Court dismiss most of Plaintiffs' claims, with prejudice and without leave to amend for the reasons set forth above. Because the four Plaintiffs challenge twelve different Amazon subscription services in the FAC, and each Plaintiff used different services, it can be difficult to parse which claims Amazon seeks to dismiss in this motion. For the Court's ease of reference, the following chart sets forth the claims and services for which Amazon seeks dismissal and the grounds on which the Court can and should dismiss each:

| ***Counts*** | ***Amazon Prime*** | ***Kindle Unlimited*** | ***Amazon Music Unlimited*** | ***Amazon Prime Video Channels*** | ***Unpurchased Services*** |
|---|---|---|---|---|---|
| ***I: UTPA-ARL*** | | Rule 8 | | Rule 8 | Lack of standing; Rule 8 |
| ***II: UTPA-FOL*** | | Rule 8 | | Rule 8 | Lack of standing; Rule 8 |
| ***III: UCL-Unlawful Prong*** | | Rule 8 | | Rule 8 | Lack of standing; Rule 8 |
| ***III: UCL-Unfairness Prong*** | Rule 9; truth; no reliance | Rule 9; no reliance | Rule 9; truth; no reliance | Rule 9; no reliance | Lack of standing; Rule 9; no reliance |
| ***IV: FAL*** | Rule 9; truth; no reliance | Rule 9; no reliance | Rule 9; truth; no reliance | Rule 9; no reliance | Lack of standing; Rule 9; no reliance |
| ***V: CLRA*** | Rule 9; truth; no reliance | Rule 9; no reliance | Rule 9; truth; no reliance | Rule 9; no reliance | Lack of standing; Rule 9; no reliance |
| ***VI: Conversion*** | Rule 8 | Rule 8 | Rule 8 | Rule 8 | Lack of standing; Rule 8 |
| ***VII: Unjust Enrichment*** | Rule 8 | Rule 8 | Rule 8 | Rule 8 | Lack of standing; Rule 8 |
| ***VIII: Negligent Misrepresentation*** | Rule 9; truth; no reliance | Rule 9; no reliance | Rule 9; truth; no reliance | Rule 9; no reliance | Lack of standing; Rule 9; no reliance |
| ***IX: Fraud*** | Rule 9; truth; no reliance | Rule 9; no reliance | Rule 9; truth; no reliance | Rule 9; no reliance | Lack of standing; Rule 9; no reliance |

Because Ms. Sylvester claims to have used only the Kindle Unlimited service, and all claims related to that service should be dismissed, Amazon respectfully requests that Ms. Sylvester and her claims be dismissed from the case entirely, with prejudice and without leave to amend.

Dated: October 14, 2022

FENWICK & WEST LLP

By: */s/ Brian D. Buckley*

Brian D. Buckley, WSBA No. 26423
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511
Email: bbuckley@fenwick.com

Jedediah Wakefield (admitted *pro hac vice*)
Kimberly Culp (admitted *pro hac vice*)
Garner Kropp (admitted *pro hac vice*)
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350
Email: jwakefield@fenwick.com
kculp@fenwick.com
gkropp@fenwick.com

*Counsel for Defendants*
AMAZON.COM, INC. and
AMAZON.COM SERVICES LLC